No. 24-581

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

YELP INC.,

*Plaintiff-Appellant*,

v.

KEN PAXTON, ATTORNEY GENERAL OF THE STATE OF TEXAS,
in his official capacity,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of California
Case No. 3:23-cv-04977-TLT
The Honorable Trina L. Thompson

## APPELLANT YELP INC.'S BRIEF

Adam S. Sieff
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017
(213) 633-6800
adamsieff@dwt.com

Thomas R. Burke
DAVIS WRIGHT TREMAINE LLP
50 California Street, 23rd Floor
San Francisco, California 94111
(415) 276-6500
thomasburke@dwt.com

Ambika Kumar
Sara A. Fairchild
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
(206) 757-8030
ambikakumar@dwt.com
sarafairchild@dwt.com

Eric Feder
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500 East
Washington, D.C., 20005
(202) 973-4200
ericfeder@dwt.com

*Attorneys for Plaintiff-Appellant Yelp Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Plaintiff-Appellant Yelp Inc. (Yelp) states that it has no parent corporation.  Blackrock, Inc. and The Vanguard Group, Inc. own 10% or more of Yelp's stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF CONTENTS........................................................................................ ii

TABLE OF AUTHORITIES ................................................................................ iv

INTRODUCTION ..................................................................................................1

JURISDICTIONAL STATEMENT .......................................................................4

ISSUES PRESENTED............................................................................................4

STATEMENT OF THE CASE................................................................................5

      A.    Factual Background...................................................................................5

           1.    Yelp's Efforts to Deter Misleading Information About Entities Offering Pregnancy-Related Services. ..................................................................................5

           2.    Paxton's Efforts to Silence Yelp................................7

      B.    Procedural History..................................................................................10

      C.    The District Court's Decision .................................................................12

      D.    Outcome of Texas Litigation..................................................................14

STANDARD OF REVIEW ..................................................................................14

SUMMARY OF ARGUMENT .............................................................................15

ARGUMENT ........................................................................................................17

I.    The District Court Erred by Abstaining Under *Younger*...............................17

      A.    *Younger* Abstention Does Not Insulate State Actions Brought in Bad Faith from Federal Review. ........................................................18

      B.    The Evidence Establishes Bad Faith Sufficient to Avoid *Younger* Abstention............................................................................20

1. Paxton Is Prosecuting Yelp "Without a Reasonable Expectation of Obtaining a Valid Conviction." ........................ 21

2. Paxton Targeted Yelp in Retaliation for Expressing Dissent. ................................................................ 31

II. The District Court Erred by Dismissing the Case Without Giving Yelp the Opportunity to Further Develop the Factual Record. ............................ 36

III. The District Court Erred by Failing to Reach and Find Satisfied the Preliminary Injunction Factors. ....................................... 41

    A. Yelp Demonstrated That Paxton's Conduct Violates the First Amendment. ........................................ 41

    B. Yelp Demonstrated the Remaining Factors Support Relief. ............... 43

CONCLUSION ........................................................ 45

CIRCUIT RULE 28-2.6 STATEMENT OF RELATED CASES ........................... 46

FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS .............................. 47

CERTIFICATE OF SERVICE ............................................... 48

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Am. Acad. of Pain Mgmt. v. Joseph*,
  353 F.3d 1101 (9th Cir. 2004) ...................................................................27

*Arevalo v. Hennessy*,
  882 F.3d 763 (9th Cir. 2018) .....................................................................20

*Ashcroft v. ACLU*,
  542 U.S. 656 (2004)....................................................................................44

*B&G Foods N. Am., Inc. v. Embry*,
  29 F.4th 527 (9th Cir. 2022) ......................................................................40

*Backpage.com, LLC v. Dart*,
  807 F.3d 229 (7th Cir. 2015) .....................................................................29

*Baffert v. Cal. Horse Racing Bd.*,
  332 F.3d 613 (9th Cir. 2003) ...............................................................18, 19

*Bantam Books, Inc. v. Sullivan*,
  372 U.S. 58 (1963)......................................................................................29

*Bartnicki v. Vopper*,
  532 U.S. 514 (2001)..............................................................................23, 41

*Bishop v. State Bar of Tex.*,
  736 F.2d 292 (5th Cir. 1984) .....................................................................25

*Bose Corp. v. Consumers Union of U.S., Inc.*,
  466 U.S. 485 (1984)....................................................................................26

*Bradford v. Vento*,
  48 S.W.3d 749 (Tex. 2001).........................................................................24

*Bruton v. Gerber Products Co.*,
  703 F. App'x 468 (9th Cir. 2017) ...............................................................27

*Buckley v. Valeo*,
  424 U.S. 1 (1976)........................................................................................43

*Bullfrog Films, Inc. v. Wick*,
  847 F.2d 502 (9th Cir. 1988) .......................................................29, 42

*Cal. Dep't of Soc. Servs. v. Leavitt*,
  523 F.3d 1025 (9th Cir. 2008) .....................................................15, 37

*Clevenger v. Dresser*,
  746 F. App'x 645 (9th Cir. 2018) ........................................................19

*Cohens v. Virginia*,
  19 U.S. 264 (1821).................................................................................40

*Cook v. Harding*,
  879 F.3d 1035 (9th Cir. 2018) .....................................................17, 25

*Cornell v. Off. of Dist. Att'y*,
  616 F. Supp. 3d 1026 (C.D. Cal. 2022) ..............................................19

*Council for Periodical Distribs. Ass'n v. Evans*,
  642 F. Supp. 552 (M.D. Ala. 1986), *aff'd*, 827 F.2d 1483 (11th Cir. 1987)......19

*CRST Van Expedited, Inc. v. Werner Enters., Inc.*,
  479 F.3d 1099 (9th Cir. 2007) ..............................................................21

*CTS, Inc. v. CFTC*,
  149 F.3d 679 (7th Cir. 1998) ................................................................26

*Cullen v. Fliegner*,
  18 F.3d 96 (2d Cir 1994) .......................................................................19

*Desert Palace, Inc. v. Costa*,
  539 U.S. 90 (2003).................................................................................35

*Dex Media W., Inc. v. City of Seattle*,
  696 F.3d 952 (9th Cir. 2012) ................................................................27

*Dobbs v. Jackson Women's Health Organization*,
  597 U.S. 215 (2022).......................................................................7, 8, 33

*Doe v. Boys Clubs of Greater Dallas, Inc.*,
  907 S.W.2d 472 (Tex. 1995) .................................................................23

*Edwards v. District of Columbia*,
　755 F.3d 996 (D.C. Cir. 2014)..............................................................27

*Elrod v. Burns*,
　427 U.S. 347 (1976)............................................................................43

*Fla. Star v. B.J.F.*,
　491 U.S. 524 (1989)..............................................................23, 41, 42

*Flowers v. Seki*,
　87 F.3d 1318, 1996 WL 311473 (9th Cir. 1996)................................19

*Frampton v. City of Baton Rouge*,
　2022 WL 90238 (M.D. La. Jan. 7, 2022) ...........................................19

*Fund Tex. Choice v. Paxton*,
　2023 WL 2558143 (W.D. Tex. Feb. 24, 2023) ...............................8, 33

*Gilbert v. GM Corp.*,
　2006 WL 1714040 (Tex. App. June 22, 2006)....................................24

*Gilbertson v. Albright*,
　381 F.3d 965 (9th Cir. 2004) .............................................................12

*Greisen v. Hanken*,
　925 F.3d 1097 (9th Cir. 2019) ...........................................................42

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
　328 F.3d 1122 (9th Cir. 2003) ...........................................................36

*Harris v. Quinn*,
　573 U.S. 616 (2014)............................................................................25

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*,
　599 U.S. 166 (2023)............................................................................39

*Holland v. United States*,
　348 U.S. 121 (1954)............................................................................35

*Hunt v. City of Los Angeles*,
　638 F.3d 703 (9th Cir. 2011) .............................................................26

*IMDb.com Inc. v. Becerra*,
   962 F.3d 1111 (9th Cir. 2020) ................................................................25

*Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelson*,
   799 F.2d 547 (9th Cir. 1986) .....................................................14, 38

*Junior Sports Mags. Inc. v. Bonta*,
   80 F.4th 1109 (9th Cir. 2023) .............................................................15

*Kenneally v. Lungren*,
   967 F.2d 329 (9th Cir. 1992) ..............................................................15

*Kern v. Clark*,
   331 F.3d 9 (2d Cir. 2003) ...................................................................38

*Khachatryan v. Blinken*,
   4 F.4th 841 (9th Cir. 2021) ................................................................21

*Lacey v. Maricopa County*,
   693 F.3d 896 (9th Cir. 2012) ..............................................................42

*Laine v. County of Contra Costa*,
   2022 WL 19975414 (N.D. Cal. Sept. 2, 2022)....................................35

*Laub v. U.S. Dep't of Interior*,
   342 F.3d 1080 (9th Cir. 2003) ..............................................15, 36, 37

*Leonard v. Ala. State Bd. of Pharm.*,
   61 F.4th 902 (11th Cir. 2023) .............................................................20

*Levitt v. Yelp! Inc.*,
   765 F.3d 1123 (9th Cir. 2014) ............................................................27

*Lewellen v. Raff*,
   843 F.2d 1103 (8th Cir. 1988) ........................................18, 19, 20, 34

*Lewellen v. Raff*,
   851 F.2d 1108 (8th Cir. 1988) ............................................................20

*Lowe v. SEC*,
   472 U.S. 181 (1985)............................................................................26

*Makaeff v. Trump Univ., LLC,*
715 F.3d 254 (9th Cir. 2013) ................................................................26

*Miami Herald Publ'g Co. v. Tornillo,*
418 U.S. 241 (1974)......................................................................29, 42

*Miller v. Thane Int'l, Inc.,*
519 F.3d 879 (9th Cir. 2008) ...............................................................27

*Mother & Unborn Baby Care of N. Tex., Inc. v. State,*
749 S.W.2d 533 (Tex. App. 1988)......................................................7, 23

*N.Y. Times Co. v. Sullivan,*
376 U.S. 254 (1964)...............................................................................25

*N.Y. Times Co. v. United States,*
403 U.S. 713 (1971)...............................................................................41

*Nationwide Biweekly Admin., Inc. v. Owen,*
873 F.3d 716 (9th Cir. 2017) ........................................................14, 15

*Near v. Minnesota,*
283 U.S. 697 (1931)...............................................................................42

*Netflix, Inc. v. Babin,*
88 F.4th 1080 (5th Cir. 2023) ........................................................*passim*

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,*
491 U.S. 350 (1989)...............................................................................17

*Nobby Lobby, Inc. v. City of Dallas,*
970 F.2d 82 (5th Cir. 1992) .................................................................21

*Pac. Shores Props., LLC v. City of Newport Beach,*
730 F.3d 1142 (9th Cir. 2013) .....................................................32, 33

*Pennhurst State Sch. & Hosp. v. Halderman,*
465 U.S. 89 (1984).................................................................................3

*PFLAG Inc. v. Off. of the Att'y Gen.,*
No. D-1-GN-24-001276 (Tex. Dist. Ct. Travis Cty. Mar. 1, 2024) ..................33

*Reese v. BP Exploration, Inc.*,
    643 F.3d 681 (9th Cir. 2011) ...............................................................27

*Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*,
    845 F.3d 1268 (9th Cir. 2017) ...........................................................28

*Robertson v. Wegmann*,
    436 U.S. 584 (1978)..............................................................................18

*Sampson v. Cnty. of L.A. by & though L.A. Cnty. Dep't of Child. & Fam. Servs.*, 974 F.3d 1012 (9th Cir. 2020).................................................42

*Seattle-First Nat'l Bank v. NLRB*,
    638 F.2d 1221 (9th Cir. 1981) ......................................................35, 36

*Shaw v. Delta Airlines, Inc.*,
    463 U.S. 85 (1983)................................................................................17

*Shaw v. Garrison*,
    467 F.2d 113 (5th Cir. 1972) ...............................................................34

*Smith v. Daily Mail Publ'g Co.*,
    443 U.S. 97 (1979)................................................................................23

*Smith v. Hightower*,
    693 F.2d 359 (5th Cir. 1982) ........................................................21, 41

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997) .............................................................27

*Sprint Commc'ns, Inc. v. Jacobs*,
    571 U.S. 69 (2013)................................................................................40

*Stanley v. Schriro*,
    598 F.3d 612 (9th Cir. 2010) ...............................................................15

*State v. Yelp Inc.*,
    No. 2519-335 (Tex. Dist. Ct. Bastrop Cty. Feb. 28, 2024) .................14

*Steffel v. Thompson*,
    415 U.S. 452 (1974)..............................................................................39

*Stevens v. Corelogic, Inc.*,
  899 F.3d 666 (9th Cir. 2018) ...........................................................37, 38

*Susan B. Anthony List v. Driehaus*,
  573 U.S 149 (2014)...............................................................3, 17, 40

*Top Rank, Inc. v. Gutierrez*,
  236 F. Supp. 2d 637 (W.D. Tex. 2001) .............................................23

*Torries v. Hebert*,
  111 F. Supp. 2d 806 (W.D. La. 2000) ..............................................18

*Trump v. Vance*,
  140 S. Ct. 2412 (2020).....................................................................18

*Twitter, Inc. v. Paxton*,
  56 F.4th 1170 (9th Cir. 2022) .........................................................33

*United States v. Philip Morris*,
  566 F.3d 1095 (D.C. Cir. 2009).......................................................27

*United States v. Rux*,
  412 F.2d 331 (9th Cir. 1969) ..........................................................35

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977).........................................................................32

*W. Va. State Bd. of Educ. v. Barnette*,
  319 U.S. 624 (1943).........................................................................29

*Warsoldier v. Woodford*,
  418 F.3d 989 (9th Cir. 2005) ..........................................................43

*Wells Fargo & Co. v. Wells Fargo Express Co.*,
  556 F.2d 406 (9th Cir. 1977) ..........................................................36

*Where Do We Go Berkeley v. Cal. Dep't of Transp.*,
  32 F.4th 852 (9th Cir. 2022) ...........................................................41

*Wilson v. Thompson*,
  593 F.2d 1375 (5th Cir. 1979) .........................................................39

*Younger v. Harris*,
  401 U.S. 37 (1971) ..................................................................*passim*

**Statutes**

28 U.S.C.
  § 1291 ..............................................................................4
  § 1292(a) ..........................................................................4
  § 1331 ..............................................................................4
  § 1343(a) ..........................................................................4
  § 1367(a) ..........................................................................4
  § 2201(a) ..........................................................................4

42 U.S.C.
  § 1983 ....................................................................4, 39, 40
  § 1988 ..............................................................................4

Cal. Bus. & Profs. Code § 2253(b) ..............................................28

Tex. Bus. & Com. Code
  § 17.46(a) ........................................................................24
  § 17.46(b)(2) ....................................................................23
  § 17.46(b)(3) ....................................................................23
  § 17.46(b)(8) ..............................................................23, 24
  § 17.46(b)(24) ..................................................................23
  § 17.47(a) ........................................................................11

**Rules**

Fed. R. App. P. 4(a)(1)(A) ..........................................................4

**Constitutional Provisions**

U.S. Const., amend. I ..............................................................*passim*

**Other Authorities**

168 Cong. Rec. S4013 (2022) ......................................................22

Br. of Tex. et al. as Amici in Supp. of Pet.,
  *303 Creative LLC v. Elenis*, 2021 WL 5053177 (U.S. filed Oct. 28, 2021) ......30

Br. of Am. Assoc. of Pro Life Obstetricians & Gynecologists, Am. Coll. of
    Pediatrics, & Christian Med. Assoc. as Amici Curiae,
    *NIFLA v. Becerra*, 2018 WL 447347 (U.S. filed Jan. 16, 2018)....................6, 22

Br. of Tex. et al. as Amici in Supp. of Pet.,
    *NIFLA v. Becerra*, 2018 WL 461049 (U.S. filed Jan. 16, 2018)....................7, 28

Br. of Tex. et al. as Amici in Supp. of Pet,
    *NRA of Am. v. Vullo*, 2023 WL 3725142 (U.S. filed May 23, 2023)................30

Leo Tolstoy, *Anna Karenina* (1878) .........................................................................34

R.G. Ratcliffe, *The Televangelism of Ken Paxton*,
    Texas Monthly (Dec. 2016).................................................................................32

## INTRODUCTION

This appeal arises from Texas Attorney General Ken Paxton's campaign to punish a California company, Yelp Inc., for making truthful statements about anti-abortion "crisis pregnancy centers" (CPCs), which offer some pregnancy-related services but not abortion care or referrals. Days after surviving impeachment, Paxton—a vocal abortion opponent and former CPC board member—threatened to and (after Yelp filed this lawsuit) did sue Yelp for stating on it website that CPCs "typically provide limited medical services and may not have licensed medical professionals onsite," a statement Paxton concedes is "literally true," and one Yelp made after widespread reports that CPCs deceive people about their services. None of the other twenty-three attorneys general who complained about Yelp's statement joined Paxton's suit. Paxton identified no evidence suggesting the statement misled a single consumer, conducted only a cursory "investigation" that comprised reviewing correspondence with a single unidentified CPC, and pursued Yelp nine months after coercing it to replace the statement with one he publicly deemed "accurate." The district court, despite finding "strong circumstantial evidence" that Paxton acted in bad faith, denied Yelp's motion to preliminarily enjoin Paxton's unconstitutional actions, disregarded Yelp's requests for discovery, and dismissed the case under *Younger v. Harris*, 401 U.S. 37 (1971). This Court should reverse.

*First*, the district court erred by denying Yelp a preliminary injunction. *Younger* has no application where a state prosecution is pursued in bad faith—whether because it is objectively meritless or because it retaliates against constitutionally protected speech. Both are true here. Paxton *admitted* Yelp's statement—which it did not make in the course of sales, advertising, or other activity reasonably subject to the Texas Deceptive Trade Practices Act (DTPA)—is "literally true." And he offered *no* interpretation that could possibly render the statement misleading, arguing only (without evidence) that a consumer *might* think a specific CPC has certain attributes merely because Yelp states that they "typically" do. The First Amendment protects Yelp's truthful statements about an issue of substantial public concern. Far from supporting any legitimate exercise of power, the record shows—and the district court found "strong circumstantial evidence" of—a pattern of retaliation against Yelp for its truthful public statements about abortion, and a beleaguered politician seeking retribution for those statements.

*Second*, the district court erred by failing to afford Yelp *any* opportunity to develop a factual record. Despite the "strong circumstantial evidence" corroborating Yelp's "persuasive" "allegations of bad faith," the district court faulted Yelp for failing to provide "enough concrete evidence." 1-ER-8; 1-ER-11. But it also denied Yelp the opportunity to adduce that evidence by rejecting its repeated requests for

2

discovery or an evidentiary hearing.  At a minimum, this Court should direct the district court to give Yelp an opportunity to develop a factual record of bad faith.

*Third*, the district court erred by failing to reach the remaining preliminary injunction factors and find that Yelp satisfied them.  Yelp is likely to prevail on the merits of its First Amendment claim, and equity and the public interest always favor an injunction where, as here, the government violates First Amendment rights.

Federal courts have the "virtually unflagging" obligation, *Susan B. Anthony List v. Driehaus*, 573 U.S 149, 167 (2014), "to vindicate federal rights," *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105 (1984).  The district court violated that precept, opening a backdoor to wide-ranging state censorship by any rogue official.  Defying *Younger*, its approach would permit a state prosecutor to chill the publication of dissenting information by nakedly characterizing his censorship as consumer protection, even with *evident* bad faith.  Neither comity nor federalism permits federal courts to countenance such a malevolent denial of constitutional rights.

The Court should reverse the district court's decision and enter a preliminary injunction stopping Paxton from further retaliating against Yelp for exercising its First Amendment rights or remand with instructions that the district court do so.

3

## JURISDICTIONAL STATEMENT

The district court had jurisdiction to hear this case under 28 U.S.C. §§ 1331, 1343(a), and 1367(a), because Yelp's claims arise under the United States Constitution and the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988, and under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), because this matter presents an actual case or controversy within the district court's jurisdiction.

The district court issued an order denying Yelp's motion for a preliminary injunction and dismissing the case on February 1, 2024. 1-ER-2–12. Yelp timely filed a notice of appeal on February 1, 2024. 4-ER-638–55; *see* Fed. R. App. P. 4(a)(1)(A). This Court has jurisdiction to hear this appeal under 28 U.S.C. § 1292(a), because the order refused a request for injunctive relief, and under 28 U.S.C. § 1291, because the dismissal of the case constitutes a final decision of the district court.

## ISSUES PRESENTED

1. Whether the district court erred by denying Yelp's preliminary injunction motion, despite "strong circumstantial" evidence of Paxton's bad faith.

2. Whether the district court erred by denying Yelp an opportunity to take discovery, hold an evidentiary hearing, or otherwise develop a full factual record to establish Paxton's bad faith, before denying the preliminary injunction request and dismissing the case.

3.     Whether the district court erred by failing to reach the preliminary injunction factors and to find those factors satisfied.

## STATEMENT OF THE CASE

**A.    Factual Background**

    **1.    Yelp's Efforts to Deter Misleading Information About Entities Offering Pregnancy-Related Services.**

Yelp owns and operates Yelp.com, a popular local search website, mobile website, and related mobile applications that allow users to share information about their communities and make informed decisions about local businesses and other local entities. 4-ER-613 ¶ 2; 4-ER-615–16 ¶¶ 15-16; 3-ER-334 ¶ 2. Members of the public may read and write reviews on Yelp and access other information about local businesses, services, and other entities. 4-ER-613 ¶ 2; 4-ER-615–16 ¶¶ 15-16; 3-ER-334 ¶ 2. Yelp users have contributed more than 265 million cumulative reviews. 4-ER-613 ¶ 2; 4-ER-616 ¶ 16; 3-ER-334 ¶ 3.

Yelp devotes significant resources to deter and eliminate false, fraudulent, immaterial, and misleading reviews. 4-ER-616–17 ¶¶ 17-19; 3-ER-334–35 ¶ 4. It uses sophisticated software to weed out suspicious reviews, such as those that might result from a conflict of interest, improper solicitation, or that may be otherwise unreliable or irrelevant. 3-ER-334–35 ¶ 4. And it provides more information where helpful to dispel consumer deception or confusion. 3-ER-335 ¶ 6.

That was the impetus for the events here.  Reports from 2018 alerted Yelp to efforts by CPCs to divert consumers seeking abortions away from abortion-care providers.  3-ER-336 ¶ 9; *see also* 3-ER-393–95 (Robin Marty, *How Google Maps Leads Women Seeking Abortions Astray*, Gizmodo (Feb. 12, 2018)).  Studies from top medical schools found that CPCs achieve this diversion by providing misleading information, *see* 3-ER-398–99; 3-ER-404–07, using "sophisticated strategies to draw in women who are seeking abortion services," 3-ER-411–12.

Consistent with these conclusions, studies show CPCs generally do not provide unlimited reproductive healthcare, are not licensed medical clinics, and are often staffed by laypeople, not licensed professionals.  *See* 3-ER-416; 3-ER-426; 3-ER-432 (citing study showing "only 26% and 16% of CPCs have a registered nurse or physician on staff, respectively"); 3-ER-441; 3-ER-443; 3-ER-511; 3-ER-575; 3-ER-578.  Indeed, abortion opponents—including CPCs—admit that CPCs provide "limited medical services." Br. of Am. Assoc. of Pro Life Obstetricians & Gynecologists, Am. Coll. of Pediatrics, & Christian Med. Assoc. as Amici Curiae, *NIFLA v. Becerra*, 2018 WL 447347, at *5–6, 10, 14, 20 (U.S. filed Jan. 16, 2018) ("*NIFLA v. Becerra* Amicus Br."); *see also, e.g.*, 3-ER-547–50; 3-ER-560; 3-ER-563; 3-ER-567 (disclaimers on CPC websites that they offer limited medical services).

6

Once alerted to the issue, Yelp manually evaluated pages for pregnancy-related services and, where appropriate, categorized those that do not offer abortion services or referrals as "Crisis Pregnancy Centers." 3-ER-336 ¶ 10. Following the decision in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), Yelp added a "Consumer Notice" on CPC pages nationwide informing consumers that CPCs "typically provide limited medical services and may not have licensed medical professionals onsite." 3-ER-337 ¶¶ 13–14 (First Notice). Yelp did this to address the concerns described in reviews on Yelp and raised by the California Attorney General, *see* 3-ER-544–45, that many consumers do not understand CPCs' role or the nature of their services, 3-ER-337–38 ¶¶ 13–15.

### 2.    Paxton's Efforts to Silence Yelp.

Paxton knows that Yelp's First Notice is true. One of his predecessors successfully prosecuted a CPC under the same deceptive trade practices statute he relies on here for advertising itself in the "Abortion Information & Services" and "Clinics – Medical" sections of the Yellow Pages. *See Mother & Unborn Baby Care of N. Tex., Inc. v. State*, 749 S.W.2d 533 (Tex. App. 1988); *see also* Br. of Tex. et al. as Amici in Supp. of Pet., *NIFLA v. Becerra*, 2018 WL 461049, at \*14 (U.S. filed Jan. 16, 2018) (Paxton stating that CPCs "differ markedly" from full-service reproductive healthcare clinics because of their more limited services).

7

Paxton's opposition to abortion, however, is central to his political platform; he opposes all abortions, even when legal, and his website lists dozens of actions to suppress information about and access to abortion. *See* 3-ER-530–42; 2-ER-243–47. When the Supreme Court decided *Dobbs*, he created a holiday to "celebrate" the decision. 3-ER-533. Another court found that Paxton has used his powers to project his own view of abortion into other states, with the intent to limit access to legal abortions and information about them. *Fund Tex. Choice v. Paxton*, 2023 WL 2558143, at *5–7 (W.D. Tex. Feb. 24, 2023) (Paxton chilled abortion-related speech in states where abortion is legal).

On February 7, 2023, just after Yelp published the First Notice, Paxton joined a letter signed by twenty-three other state attorneys general claiming the First Notice was "misleading" and designed "to discourage women and families from accessing [CPCs'] services." *See* 4-ER-614 ¶ 4; 4-ER-626–32; 3-ER-374. The letter criticized Yelp's purported attempt to "discredit" and "discriminate against" CPCs, characterizing its actions as part of a "dangerous axis of corporate and government power," 4-ER-626–27; 3-ER-373–74; and faulted Yelp for failing to affix any comparable notice to "abortion facilities operated by Planned Parenthood and related organizations," 4-ER-627; 3-ER-374, even though Yelp has not seen (and Paxton has not identified) any studies, media reports, or other credible evidence indicating

widespread efforts to mislead or confuse consumers about those facilities' services, *see* 3-ER-337–38 ¶ 15.

Yelp responded the next day, citing research showing that the First Notice "is accurate and not misleading." 3-ER-338 ¶ 16; 3-ER-382–83. Solely to address these unfounded concerns and avoid litigation, Yelp immediately revised the (truthful) First Notice to state that "Crisis Pregnancy Centers do not offer abortions or referrals to abortion providers." 3-ER-383 (Second Notice). Yelp continues to publish the original statement on other parts of its platform. 2-ER-167–68 ¶¶ 2–6. On February 14, 2023, Paxton confirmed his view that the Second Notice is "accurate"—even though it implicitly acknowledges that CPCs offer only limited medical services, as Yelp originally stated. 2-ER-171 (copy of Second Notice); 3-ER-514 (Tex. Att'y Gen. Ken Paxton, Press Release, Paxton Condemns Yelp for Discriminating Against Crisis Pregnancy Centers (Feb. 14, 2023)). The other twenty-three state attorneys general who signed the February 7, 2023, letter took no action. In fact, its lead author, Kentucky Attorney General Daniel Cameron, praised Yelp's response. 3-ER-569–72.

In April 2023, Paxton's office claims to have corresponded with an unidentified Texas CPC that had contacted it about the First Notice. 2-ER-88–89 ¶¶ 5–8. This was, according to his office, the only "investigation" undertaken. *Id.* At no time did Paxton send Yelp investigative demands, informal requests for

9

information, or other communications regarding any investigation or potential enforcement action.  2-ER-203 ¶¶ 2–4.

On May 27, 2023, the Texas House of Representatives impeached and suspended Paxton for alleged bribery and abuse of office.  *See* 2-ER-228–36; 2-ER-238–41.  Throughout the suspension, the office appears to have taken no additional action, as the investigator "stopped working on this case to focus on other investigatory work."  2-ER-90 ¶ 13.  The investigator only "became aware that OAG was likely to file suit against Yelp" "[o]n or around September 1, 2023."  *Id.*

Paxton returned to office on September 18, 2023, after the Texas Senate narrowly voted to acquit him of all charges.  Four days later, in his first public act after reinstatement, Paxton sent Yelp a "notice of intent to file suit," claiming the publication of the First Notice violated the DTPA and subjected Yelp to potentially millions of dollars in damages.  *See* 3-ER-386.

### B.    Procedural History

On September 27, 2023, Yelp filed this action, seeking a declaration and injunction stopping Paxton from penalizing it for publishing truthful speech about CPCs.  4-ER-612–37.  The next day, Paxton filed a petition in Texas to curb Yelp's speech nationwide.  3-ER-516–27.  The Petition asks the Texas court to enjoin Yelp from "[m]isrepresenting the status or amount of licensed medical professionals onsite in pregnancy resource centers" or "the services offered by pregnancy resource

centers"; and from "[p]osting any further false and/or misleading disclaimers or representations regarding pregnancy resource centers," without any geographic limit. 3-ER-526 ¶ 32.[1] The Petition seeks civil penalties of $10,000 per alleged violation, and $250,000 per alleged violation for consumers aged 65 or older. 3-ER-526 ¶ 33. Paxton states he expects to recover more than $1,000,000. 3-ER-518 ¶ 3.

On October 2, 2023, Yelp filed a motion for preliminary injunction. 3-ER-312. On October 16, 2023, Paxton opposed and moved to dismiss, arguing he was not subject to personal jurisdiction in the Northern District of California, that the district court was required to abstain under *Younger*, and that Yelp's First Amendment claims fail. 2-ER-285–310; 2-ER-258–84. In response, Yelp explained that *Younger* did not require abstention because Paxton had acted in bad faith. *See* 2-ER-143–65; 2-ER-91–116. Yelp requested, should the district court find the evidence insufficient, "discovery to further develop the factual record of the Attorney General's bad faith and retaliatory motivations," followed by "an evidentiary hearing." 2-ER-165; *see also* 2-ER-116.

During the November 7, 2023, hearing on Yelp's preliminary injunction motion, Paxton's counsel admitted that the First Notice "is a literally true statement,"

---

[1] Apparently filed in a rush, the Petition claims "Yelp has been given notice of the alleged unlawful conduct described below at least seven days before filing suit, as may be required by subsection 17.47(a) of the DTPA," 3-ER-519 ¶ 11, which was false, 3-ER-338 ¶ 18; 3-ER-386.

but maintained that it was "misleading" because of "contextual issues," and suggested the First Notice could also be considered "literally false" if it appeared on the page of a "specific crisis pregnancy center" that did have "licensed medical professionals on site." 2-ER-18; 2-ER-20–21. Also at the hearing, Yelp repeatedly emphasized that if the district court found insufficient evidence of bad faith, it sought jurisdictional discovery. *See* 2-ER-38–41 (if the court "is not inclined to grant the preliminary injunction, Yelp would request discovery.… to show bad faith … so that the Court could refrain from abstaining under *Younger*"); *see also* 2-ER-63–64 ("We think the bad faith is evident on the face of the record, but if the Court has any reservations, we would welcome the opportunity to take discovery.").

## C. The District Court's Decision

On February 1, 2024, the district court issued an order denying Yelp's preliminary injunction motion and "reluctantly" dismissing the case under *Younger*. 1-ER-2. The court did not adopt Paxton's personal jurisdiction arguments or apply the factors for granting a preliminary injunction. *See* 1-ER-5; 1-ER-11-12.

The court acknowledged that "abstention is inappropriate when the 'state proceeding is motivated by a desire to harass or is conducted in bad faith.'" 1-ER-7 (quoting *Gilbertson v. Albright*, 381 F.3d 965, 983 (9th Cir. 2004)). Bad faith exists, the district court acknowledged, "in two circumstances: first, when it is brought without a reasonable expectation of obtaining a valid conviction, and

second, when it is brought in retaliation for or to discourage the exercise of constitutional rights." *Id.* (cleaned up). The court also acknowledged that a state official's "subjective motivation" is "critical to, if not determinative of, the inquiry," and required "concrete evidence." 1-ER-9 (cleaned up).

Surveying the record, the district court concluded that "Yelp's allegations of bad faith tell a persuasive story":

> [I]n the past, the Texas Attorney General prosecuted a CPC under the DTPA for advertising itself under "Abortion Information & Services" in the medical clinic section of the Yellow Pages. Now, Texas is pursuing Yelp under the same statute for the First Notice, which describes the *lack* of medical services at CPCs. It is pursuing Yelp even though it conceded that the Second Notice is accurate, even though it agreed at the hearing on the preliminary injunction that the First Notice is "literally true," and even though no other attorney general that initially complained about the First Notice has sued Yelp. Indeed, this is the first case Paxton pursued after surviving impeachment, which— by Yelp's account—was an apparent attempt "to score points with his base of voters." And he brought the case one day after Yelp filed its case in this Court to protect its First Amendment rights.

1-ER-9–10 (cleaned up). The district court concluded it was "not convinced that Paxton acted entirely in good faith in bringing this case against Yelp." 1-ER-11.

Applying *Younger* anyway, the district court found that "Paxton's lawsuit is not 'facially meritless'" because "[w]hether the First Notice is true or misleading under this provision [of the DTPA] is open to interpretation." 1-ER-10 (cleaned up). It also concluded that Yelp lacked sufficient "evidence of bad faith" retaliation. 1-ER-11. Despite finding Yelp's "circumstantial evidence" of bad faith retaliation

"strong," the court said it was not "concrete," concluding Yelp had therefore "not provided enough" evidence "of [Paxton's] subjective motivations." *Id.*

Having found that *Younger* abstention precluded injunctive relief, the court held that it "ha[d] no choice but to dismiss the matter." 1-ER-12. In a footnote, the court declined Yelp's request for an evidentiary hearing, holding that "the magnitude of the inquiry would make it impractical." *Id.* n.4 (quoting *Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986)). The district court did not acknowledge or address Yelp's request for discovery. *See* 2-ER-165; 2-ER-116; 2-ER-38–41; 2-ER-63–64.

### D. Outcome of Texas Litigation

On February 28, 2024, the Texas court dismissed Paxton's lawsuit against Yelp with prejudice based on a lack of personal jurisdiction. *See* Order, *State v. Yelp Inc.*, No. 2519-335 (Tex. Dist. Ct. Bastrop Cty. Feb. 28, 2024). Although Yelp has no offices anywhere in Texas and Paxton's office is in Travis County, Paxton chose to file his lawsuit elsewhere, in Bastrop County. *Id.* Paxton has until March 29, 2024, to initiate an appeal.

### STANDARD OF REVIEW

1. This Court "review[s] a district court's decision to abstain under *Younger* de novo and do[es] not defer to the view of the district judge." *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 727 (9th Cir. 2017) (citation omitted).

14

"This de novo review is applied even" when "reviewing the action of the district court in granting or denying an injunction." *Kenneally v. Lungren*, 967 F.2d 329, 331 (9th Cir. 1992).

    2.    The denial of a request for discovery to determine subject matter jurisdiction, *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1092–93 (9th Cir. 2003), like the denial of a request for an evidentiary hearing, *Stanley v. Schriro*, 598 F.3d 612, 617 (9th Cir. 2010), is ordinarily reviewed for abuse of discretion. But where, as here, the district court neglected to consider a request for discovery—or "implicitly denied the request to authorize discovery"—review is de novo because the district court "did not exercise its discretion" at all. *Cal. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).

    3.    This Court reviews the denial of a preliminary injunction for "abuse of discretion," but whether "factual findings satisfy a First Amendment legal standard … is reviewed de novo." *Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1115 (9th Cir. 2023). "Reliance on an erroneous legal standard is an abuse of discretion." *Owen*, 873 F.3d at 727.

## SUMMARY OF ARGUMENT

The district court committed three fundamental errors.

First, the court erred in denying Yelp's motion for preliminary injunction. The record shows Paxton's pursuit of charges against Yelp falls within *Younger*'s

15

exception for bad faith: the case against Yelp is objectively meritless and transparent retaliation for its protected speech. The district court applied an erroneous, unduly narrow standard for bad faith, and rested on a legally unsupported distinction between circumstantial evidence of bad faith—even determinedly "strong" circumstantial evidence—and so-called "concrete" evidence. *See infra* § I.

Second, the district court erred by denying Yelp jurisdictional discovery and refusing to hold an evidentiary hearing, despite Yelp's requests. This Court has never affirmed *Younger* dismissal where a court has denied such a request. Nor should it, where there is reason to believe that evidence of bad faith exists and is in the possession of the state official. *See infra* § II.

Third, the district court erred in failing to reach and find that the preliminary injunction factors are satisfied. Yelp demonstrated at least serious questions (and indeed a likelihood of success) that the First Amendment protects its discretion to decide what truthful, non-commercial, contextual information it provides to users; an injunction is necessary to avert the continued encumbrance of Yelp's speech about matters of public concern (including CPCs); and equity and the public interest favors injunctive relief to protect access to truthful information. *See infra* § III.

## ARGUMENT

### I. The District Court Erred by Abstaining Under *Younger.*

"[A] federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging." *Driehaus*, 573 U.S at 167 (citation & internal quotation marks omitted). And it is well settled that federal courts "have jurisdiction over suits to enjoin state officials from interfering with federal rights." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 96 n.14 (1983). *Younger* presents "an extraordinary and narrow exception" to this rule, *Cook v. Harding*, 879 F.3d 1035, 1038 (9th Cir. 2018), satisfied "only" in "exceptional circumstances." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989). Because actions concerning constitutional rights "are always a proper subject for adjudication," and because federal courts "have not the right to decline the exercise of that jurisdiction simply because the rights asserted may be adjudicated in some other forum," federal courts must "enforce the mandated constraints on abstention so that such constitutional rights may be vindicated." *Cook*, 879 F.3d at 1040 (citation omitted).

These constraints foreclose *Younger* abstention where, as here, an indicted state official impeached and under investigation for abusing his office breaks ranks with nearly two dozen peers and brings a meritless action to punish speech at odds with his politics.

## A. *Younger* Abstention Does Not Insulate State Actions Brought in Bad Faith from Federal Review.

*Younger* abstention does not apply to a constitutional challenge to a state action that is "motivated by a desire to harass or is conducted in bad faith." *Trump v. Vance*, 140 S. Ct. 2412, 2428 (2020) (citation omitted); *see also Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613, 621 (9th Cir. 2003) (same). *Younger* itself held that a court must *not* abstain from enjoining a "bad faith" prosecution if "the danger of irreparable loss" to the litigant "is both great and immediate." 401 U.S. at 45–46, 48, 50, 53–54; *accord Robertson v. Wegmann*, 436 U.S. 584, 586 n.2 (1978) ("bad faith prosecution establishes irreparable injury both great and immediate").

"Bad faith" can be established in two ways: if a prosecution is brought "without a reasonable expectation of obtaining a valid conviction," *Baffert*, 332 F.3d at 621 (citation omitted), or if it was initiated "in retaliation for or to discourage the exercise of constitutional rights," *Lewellen v. Raff*, 843 F.2d 1103, 1109 (8th Cir. 1988). Thus, in *Lewellen*, the Eighth Circuit held that *Younger* did not prevent adjudication of an attorney's claims that prosecutors charged him with witness bribery because of his race, as retaliation for vigorously defending his client in a separate case, and to thwart his campaign for state office. *Id.* at 1110; *see also, e.g.*, *Torries v. Hebert*, 111 F. Supp. 2d 806, 812, 816 (W.D. La. 2000) (refusing to abstain from skating rink's claims seeking relief from prosecution for "contributing to the delinquency of a juvenile" by playing what the government called "gangster

rap," since prosecution was "motivated at least in part" to deter playing "constitutionally protected" music).

This Court has not decided in a published opinion whether retaliatory bad faith is exempt from *Younger*. *See* 1-ER-7.[2] But the Court has recognized that "bias" against a plaintiff or a "harassing motive" can show bad faith. *Baffert*, 332 F.3d at 621. And the majority of courts to have reached the issue exclude retaliatory conduct from *Younger*'s shield. *See* 1-ER-7–8 (courts "routinely" apply retaliation test, citing *Lewellen*, 843 F.2d at 1109; *Cullen v. Fliegner*, 18 F.3d 96, 103–04 (2d Cir 1994); *Cornell v. Off. of Dist. Att'y*, 616 F. Supp. 3d 1026, 1039 (C.D. Cal. 2022)); *see also Council for Periodical Distribs. Ass'n v. Evans*, 642 F. Supp. 552, 565–67 (M.D. Ala. 1986), *aff'd*, 827 F.2d 1483, 1485 (11th Cir. 1987) (obscenity charges against magazine publishers and distributors after they filed lawsuit challenging prior restraint); *Frampton v. City of Baton Rouge*, 2022 WL 90238, at *35 (M.D. La.

---

[2] In an unpublished decision, the Court reversed a ruling refusing to find bad faith even though the state action "was brought with rather weak evidence, and without a strong basis to expect to prevail," holding that the state's "substantial bias" against the plaintiff and "speculative claims" established bad faith, even where the state "offered some evidence for its case," since "evidence alone, even if it rises to the level of probable cause, will not bar a finding of bad faith." *Flowers v. Seki*, 87 F.3d 1318, 1996 WL 311473, at *2 (9th Cir. 1996) (citing decisions in Second, Fifth and Tenth Circuits); *cf.*, *e.g.*, *Clevenger v. Dresser*, 746 F. App'x 645, 646 (9th Cir. 2018) (no bad faith in state bar disciplinary proceedings that were not initiated "without a reasonable expectation of obtaining a valid disbarment, *or to retaliate against the exercise of a constitutional right*") (citation omitted) (emphasis added).

Jan. 7, 2022) (prosecution motivated by retaliation for press release critical of police); *cf. Leonard v. Ala. State Bd. of Pharm.*, 61 F.4th 902, 911–12 (11th Cir. 2023) ("protected conduct that is being retaliated against" may show bad faith).

This makes sense. "*Younger* abstention is a jurisprudential doctrine rooted in overlapping principles of equity, comity, and federalism." *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018) (citation omitted). Where a state official's actions are taken in bad faith, "the most important comity rationale of *Younger* deference—that of respect for the State's legitimate pursuit of its substantive interests"—is "inapplicable." *Lewellen*, 843 F.2d at 1110 (citation omitted). Or, as the Fifth Circuit recently held, the state "by definition does not have any legitimate interest in pursuing a bad faith prosecution brought to retaliate for or deter the exercise of constitutionally protected rights." *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1091 (5th Cir. 2023) (refusing to abstain under *Younger* in case challenging a Texas prosecutor's actions to censor speech).

### B. The Evidence Establishes Bad Faith Sufficient to Avoid *Younger* Abstention.

The district court was "not convinced that Paxton acted *entirely* in good faith," but abstained anyway. 1-ER-11 (emphasis added). That alone was reversible error, as evidence of even partial bad faith triggers federal courts' obligation to exercise jurisdiction at the preliminary injunction stage. *See Lewellen v. Raff*, 851 F.2d 1108, 1110 (8th Cir. 1988) (to obtain preliminary injunction "plaintiff need show only that

20

the prosecution was motivated 'in part' by a purpose to retaliate against constitutionally protected conduct"); *accord Smith v. Hightower*, 693 F.2d 359, 367 n.19 (5th Cir. 1982). But bad faith was not just one motivation for Paxton's conduct, the record shows it was *the* predominant factor. Reversal is required.

### 1. Paxton Is Prosecuting Yelp "Without a Reasonable Expectation of Obtaining a Valid Conviction."

Paxton's claims against Yelp are not only objectively meritless, but frivolous, readily establishing bad faith under *Younger*.

"[T]he more objectively unreasonable a stated basis for [action] is, the more plausible is the inference … [of] bad faith." *Khachatryan v. Blinken*, 4 F.4th 841, 852–53 (9th Cir. 2021) (applying principle in context of reviewing denial of visa application); *see also CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1112 (9th Cir. 2007) ("objectively specious" nature of claim permitted court to "infer subjective bad faith"). Charges based on law that is "clearly inapplicable," or "questionable factual underpinnings," constitute persuasive evidence that the charging official "likely knew … from the beginning" that the charges were meritless and thus in bad faith. *Netflix*, 88 F.4th at 1095; *see also Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 87 (5th Cir. 1992) (finding bad faith where search and seizure of film projectors was made using "clearly inapplicable" statute).

Here, there can be no doubt that Paxton's "consumer protection" claims are knowingly without merit, not least because Paxton concedes the First Notice was

"literally true" and identifies no consumer who claims any kind of confusion. 2-ER-18; *see also* 2-ER-21.[3] Countless reports and studies—all before the district court—find that "most" CPCs "do not provide comprehensive women's reproductive healthcare," "are typically staffed by volunteers without clinical training or licensure," and "provide[] virtually no medical care," despite "misleadingly present[ing] themselves as medical facilities." 3-ER-416; 3-ER-426; 3-ER-432; 3-ER-441; 3-ER-443; 3-ER-511. Even CPCs and their allies have emphasized the "limited medical services" CPCs provide. *See NIFLA v. Becerra* Amicus Br. at *5–6, 10, 14, 20; *see also* 3-ER-547–50 (*What is a Pregnancy Center?*, Heartbeat International); 3-ER-560; 3-ER-263; 3-ER-567.[4] And Paxton never proffered evidence suggesting CPCs offer comprehensive reproductive care.

---

[3] Paxton tried but failed to "walk[] this concession back." 1-ER-10. Despite later arguing that "when you append" the First Notice "to a specific crisis pregnancy center … it's going to be literally false or literally irrelevant" if that CPC "do[es] have licensed medical professionals on-site," Paxton was forced to acknowledge that the First Notice was nevertheless "true in the abstract." 2-ER-20–21. What is "true in the abstract" is true, period—the First Notice simply provided that CPCs "***may*** not have licensed medical professionals onsite." 3-ER-337 ¶ 14 (emphasis added).

[4] The weight of this evidence compelled government officials to issue warnings to consumers. The California Attorney General, for instance, published a "Consumer Alert" on June 1, 2022 stating CPCs "often" "do not provide comprehensive reproductive healthcare," and "some" "are not licensed medical clinics.… staffed by non-medical personnel." *See* Cal. Dep't of Just., Consumer Alert, *Know The Difference: Crisis Pregnancy Centers v. Reproductive Healthcare Facilities* (June 2022) (3-ER-544–45). U.S. Sen. Elizabeth Warren warned that "CPCs rarely employ licensed physicians or offer a full range of reproductive health services." 168 Cong. Rec. S4013, S4020 (2022).

Again, Paxton knows this. His office once prosecuted a CPC under the DTPA for falsely advertising itself in the "Abortion Information & Services" and "Clinics – Medical" sections of the Yellow Pages—*and won*. *See Mother & Unborn Baby Care of N. Tex.*, 749 S.W.2d at 533. On appeal, the CPC defendant conceded that it "d[id] not actually sell abortions and medical services." *Id.* at 537. Prosecuting Yelp for expressing an entirely consistent view demonstrates Paxton's bad faith.

The First Notice's admitted and indisputable literal truth renders Paxton's claims frivolous, as the First Amendment provides absolute protection for truthful speech about matters of public concern. *See Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001); *Fla. Star v. B.J.F.*, 491 U.S. 524, 532–33 (1989); *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 105–06 (1979). Consistent with this principle, "a statement must be false to be actionable" under the DTPA. 1-ER-10 (quoting *Top Rank, Inc. v. Gutierrez*, 236 F. Supp. 2d 637, 659 (W.D. Tex. 2001)); *see also Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 480 (Tex. 1995) (absent evidence of falsity, "a DTPA action for misrepresentation cannot survive").[5] The district court

---

[5] Nor do any of the subparagraphs of the statute that Paxton cites in his Petition (*see* 3-ER-525 ¶ 30 (citing Texas Bus. & Com. Code § 17.46(b)(2), (3), (8), (24))) apply. Paxton cannot establish a claim for "disparaging the goods, services, or business of another by false or misleading representation of facts" from the publication of true information. Texas Bus. & Com. Code § 17.46(b)(2). Subsections 17.46(b)(2) and (3) concern conduct that confuses consumers about whether goods, services, or businesses are those of the defendant or its competitors; Paxton has never even made an allegation of such confusion here, and Yelp does not compete with any CPC. And subsection (b)(24) is limited, by its terms, to failures to disclose information in a

erroneously stated that "[w]hether the First Notice is true or misleading under this provision is open to interpretation[,]" but the evidence it cited "show[]s that 26% of CPCs have a registered nurse, that 16% have a registered doctor, and that 66% provide limited medical services."  1-ER-10 (citing 3-ER-432; 3-ER-575; 3-ER-578).  In other words, at most a quarter of CPCs had a registered nurse or doctor onsite, and more than two-thirds provided "limited medical services."  The First Notice is entirely consistent with those facts.

The frivolity of Paxton's claims is especially transparent because the DTPA is "clearly inapplicable" to Yelp's speech as a matter of law.  *Netflix*, 88 F.4th at 1095.  The DTPA applies only to "acts or practices in the conduct of any trade or commerce," not editorial content published by a disinterested information-sharing platform like Yelp.  Tex. Bus. & Com. Code § 17.46(a).  Yelp did not publish the First Notice in the course of buying or selling any good or service, or advertising or promoting any good or service.  Nor does Yelp offer the same services as—or otherwise compete with—CPCs, abortion clinics, or any other medical service

---

way that induces a "transaction," but Yelp is undisputedly not involved in any transactions here.  *See Gilbert v. GM Corp.*, 2006 WL 1714040, at *6 (Tex. App. June 22, 2006) (entering judgment where was "no evidence of any transaction") (citing *Bradford v. Vento*, 48 S.W.3d 749, 760 (Tex. 2001) (same holding)).  Subsection (b)(8) does not apply because Yelp's statements were truthful and not misleading.  *See supra* § I.B.1.

provider.  It simply publishes information about local businesses and communities. *See* 3-ER-334 ¶ 2.

Paxton acknowledged as much.  Unable to deny the futility of his DTPA claim, Paxton instead argued that Yelp should raise this as a "statutory defense" in Texas state court.  2-ER-281–82.  That is wrong.  *Younger* does not compel a defendant to surrender to a rogue prosecutor's haranguing judicial process initiated in bad faith under a statute "clearly inapplicable" to its accused conduct.  *Netflix*, 88 F.4th at 1095.  The possibility of "recourse in those proceedings is not a sufficient avenue to remedy the constitutional injury done by bad faith proceedings themselves," as defendants have a "right" to be "free of bad faith charges and proceedings, not to endure them until their speciousness is eventually recognized." *Bishop v. State Bar of Tex.*, 736 F.2d 292, 294 (5th Cir. 1984).  Any other rule would vitiate *Younger*'s exception for bad faith since unconstitutional retaliation is always an available state court defense.  *See Cook*, 879 F.3d at 1040 (fact that "rights asserted may be adjudicated in some other forum" not a basis to abstain under *Younger*).  And it would prove especially dangerous to speech, where the constitutional injury is the chilling effect caused by mere *exposure* to bad faith prosecution.  *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 277 (1964).

Paxton cannot escape this conclusion by calling the First Notice "commercial speech."  It is not.  "[C]ommercial speech" is that which "does no more than propose

a commercial transaction." *Harris v. Quinn*, 573 U.S. 616, 648 (2014) (citation omitted); *accord IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1122 (9th Cir. 2020) (same). Even in close cases without an immediate commercial transaction, commercial speech is found only if "the speech is an advertisement, the speech refers to a particular product, and the speaker has an economic motivation." *Hunt v. City of Los Angeles*, 638 F.3d 703, 715 (9th Cir. 2011) (citation omitted). Yelp's speech is none of those. Rather, like other statements "warning consumers of fraudulent or deceptive business practices," the First Notice addresses "a topic of widespread public interest" and receives full First Amendment protection. *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 262 (9th Cir. 2013); *see* 3-ER-335–38 ¶¶ 6–9, 13–15 (Yelp created CPC notice to prevent consumer deception). It is certainly no less protected than a Consumer Reports alert discouraging purchase of a particular loudspeaker, *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 503–14 (1984), or any other "opinion[s] about a commercial product" like an investment opportunity, *Lowe v. SEC*, 472 U.S. 181, 210 & n.58 (1985), both of which the Supreme Court held protected as non-commercial speech. *See also CTS, Inc. v. CFTC*, 149 F.3d 679, 686 (7th Cir. 1998) (market evaluations "not commercial speech because they do not propose a commercial transaction") (citing cases).

It makes no difference that Yelp—like news organizations—publishes advertisements. Even the Yellow Pages—a static business directory with nothing

like the editorial content Yelp provides—"clearly do 'more than propose a commercial transaction'" and thus receive the First Amendment's full protection. *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 959, 964–65 (9th Cir. 2012). So, too, does Yelp's platform: a robust source of consumer information, including reviews, photos, and consumer notices. *See Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1126 (9th Cir. 2014) (Yelp "provides an online forum on which its users express opinions"); *Edwards v. District of Columbia*, 755 F.3d 996, 1006–07 (D.C. Cir. 2014) (Yelp "provide[s] consumers a forum to rate the quality of their experiences").

The cases Paxton cited below merely underscore that the DTPA does not apply, much less support, his manifestly frivolous claims. None involves publication of editorial content. Instead, each involves speech in overtly commercial contexts, like public companies' statements to investors, *Reese v. BP Exploration, Inc.*, 643 F.3d 681, 691 (9th Cir. 2011); securities disclosures, *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008); product advertisements, *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1137 (9th Cir. 1997); and product labels, *Bruton v. Gerber Products Co.*, 703 F. App'x 468, 471 (9th Cir. 2017). Even when responding to Yelp's First Amendment arguments, Paxton cited cases involving statements in *advertisements*. *See* 2-ER-84 (describing *Am. Acad. of Pain Mgmt. v. Joseph*, 353 F.3d 1101 (9th Cir. 2004) and *United States v. Philip Morris*, 566 F.3d 1095 (D.C. Cir. 2009) as relating, respectively, to a physician "advertis[ing]" about board

27

certification and "representations about the efficacy, safety and quality" of an "*advertiser's* product, and other information asserted *for the purpose of persuading the public to purchase the product*") (emphasis added).

Equally egregious is Paxton's stunning suggestion that he may prosecute Yelp for not appending a similar notice to pages for abortion providers, an editorial decision he claims "elevate[s] abortion providers and disparage[s] pregnancy centers that do not provide abortions." 3-ER-521–25 ¶¶ 19–24, 28. Yelp published the First Notice after learning CPCs were misleading users about the nature of their services. *See* 3-ER-337 ¶ 14. Yelp was not aware of similar claims about abortion clinics, 3-ER-337 ¶ 15, nor would such claims be credible. Abortion clinics *must* employ medical professionals, e.g., Cal. Bus. & Profs. Code § 2253(b), and *do* (as Paxton has admitted) offer a wider range of medical services (i.e., abortion care). *See* Br. of Tex. et al. as Amici in Supp. of Pet., *NIFLA v. Becerra*, 2018 WL 461049, at *14 (characterizing abortion procedures as "medical services"). "Omitting" similar notices from Planned Parenthood location listings, for instance, was therefore not misleading, but a truthful reflection that no notice was needed to eliminate confusion. 3-ER-337–38 ¶ 15; *cf.*, *e.g.*, *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1278 (9th Cir. 2017) (failure to speak not misleading where omitted statement is not "necessary" to convey truth).

Paxton's incredulous claim to the contrary—that Yelp may be punished for publishing a "literally true" statement about CPCs because it does not also carry his preferred counterfactual criticism of the abortion clinics he disfavors—defies the most basic principles of free speech and underscores his bad faith. "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). The First Amendment thus secures a publisher's right to decide what information to disseminate, even if the government perceives its choices as biased. *See, e.g.*, *Bullfrog Films, Inc. v. Wick*, 847 F.2d 502, 510 (9th Cir. 1988) (First Amendment prohibits "government editorial oversight … in the interest of 'balance'"). Paxton may disfavor the "bias" he perceives in applying the First Notice to one category of businesses but not another, but he can no more wield baseless litigation to "suppress" Yelp's "protected" publication of truthful information, *Backpage.com, LLC v. Dart*, 807 F.3d 229, 231 (7th Cir. 2015) (citing *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 64–72 (1963)), than outright compel Yelp to publish fact-free counter warnings advancing his preferences, *see Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 247, 256–58 (1974) (First Amendment prohibits the government from correcting alleged "bias" by requiring newspapers to give speakers a "right to reply").

Paxton, again, *knows* this. He has repeatedly claimed—when it aligned with his political views—that "[a] concerted effort by government and industry to suppress speech violates America's most fundamental principles." 2-ER-255; *see also* Br. of Tex. et al. as Amici in Supp. of Pet., *303 Creative LLC v. Elenis*, 2021 WL 5053177, at *6 (U.S. filed Oct. 28, 2021) ("government cannot force individuals to be 'instruments for fostering public adherence to an ideological point of view they find unacceptable'"). Most recently, Paxton filed a brief in the Supreme Court excoriating a New York regulator who "used the threat of enforcement action" to punish entities that affiliated with the National Rifle Association "based solely on the [regulator's] disagreement with the organization's protected political speech." Br. of Tex. et al. as Amici in Supp. of Pet, *NRA of Am. v. Vullo*, 2023 WL 3725142, at *1 (U.S. filed May 23, 2023). "The government," Paxton submitted, "is not exempt from First Amendment attack if it uses a means" to advance its positions "that restricts private expression." *Id.* at *3. The New York regulator violated the Constitution, he explained, where she "sought to retaliatorily restrict the NRA's free speech" by "coercing private companies." *Id.* Now, when it suits him, Paxton does the same. His claims against Yelp are thus not only objectively frivolous, they are *knowingly* so.

### 2.     Paxton Targeted Yelp in Retaliation for Expressing Dissent.

The bad faith exception independently applies because Paxton's claims—even if they *were not* frivolous (and they are)—retaliate against Yelp for publishing protected speech he disfavors.   The district court found "strong circumstantial evidence" of retaliation, and combined with Paxton's weak defense of his actions on the merits, the court was "not convinced that Paxton acted entirely in good faith in bringing this case against Yelp."   1-ER-11.   The district court's findings required it to reject abstention, and its failure to do so was error.

The preliminary injunction record more than established a likelihood of Paxton's retaliatory motive.   His first public action after narrowly avoiding removal from office was to bring an enforcement action against a California technology company that had spoken out on a hot button political issue nationwide.   Although Paxton was one of twenty-four attorneys general to take issue with the First Notice and Yelp's efforts to correctly categorize CPCs for consumers, he is the only one who filed a lawsuit, which he did nine months after the issue first arose, and nine months after Yelp reluctantly acceded to his pressure to replace the First Notice.   In those nine months, the matter had become stale: Paxton took no action concerning the First Notice, and not a single consumer complained about it.

No evidence justified Paxton's decision to initiate the action in September 2023.   In fact, the only "evidence" explaining the enforcement action's origins—an

affidavit from Paxton's investigator—underscores its bad faith. In April 2023, two months after Yelp withdrew the First Notice, Paxton's office claims to have received a complaint about it from a single unidentified CPC.[6]  2-ER-88–89 ¶¶ 5–7. His office took no steps to investigate or otherwise pursue the complaint, however, likely because Yelp had already removed the First Notice.[7] Then just days before Paxton returned to office, the investigator "became aware that OAG was likely to file suit against Yelp." 2-ER-90 ¶ 13. This unusual sequence of events—Yelp's removal of the First Notice, a single unidentified complaint about the First Notice two months later, no investigation for months while Paxton was suspended, and zero consumer complaints, followed by a sudden announcement of intent to sue days after Paxton is reinstated—indicates arbitrary targeting directed by Paxton himself. *Cf. Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266–68 (1977) (sequence of events—and departures from normal procedure—was evidence of

---

[6] This is a material fact, given that Paxton has "served on the board of the Prestonwood Pregnancy and Family Care Center, an agency dedicated to steering women away from abortion." *See* R.G. Ratcliffe, *The Televangelism of Ken Paxton*, Texas Monthly (Dec. 2016), https://www.texasmonthly.com/news-politics/ken-paxton-texas-attorney-general-first-two-years/.

[7] The investigator's incredulous claim that he just happened to "stop[] working on this case to focus on other investigatory work" right when Paxton was suspended does not change the fact that no "investigation" proceeded until Paxton returned. 2-ER-90 ¶ 13. And in reality, it is further evidence of bad faith.

illegitimate governmental purpose); *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1158–59 (9th Cir. 2013).

Paxton's public statements further corroborate a motive to punish Yelp—and in particular Yelp's CEO—for expressing dissenting views on abortion. Upon filing suit in Texas, Paxton issued a press release announcing "Attorney General Paxton Sues Yelp Over Discrimination Against Crisis Pregnancy Centers." 2-ER-207. The press release calls out a "lengthy public statement" from Yelp's CEO vowing to "fight[] the legal battle against abortion bans" after *Dobbs*, and accuses Yelp of trying "rally the business community behind the pro-abortion cause." *Id*. Paxton repeated those justifications in his Petition, *see* 3-ER-521–22 ¶¶ 17–19, and suggested in his briefing that *Yelp*'s "politics" were "the primary motivation" for the CPC notices he challenges. 2-ER-266.

This conduct is part of a broader pattern aimed at deterring private companies from expressing and advancing viewpoints Paxton rejects. *See, e.g.*, *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1172 (9th Cir. 2022) (suit arising from Paxton's efforts to harass Twitter for banning former President Donald Trump's account); *PFLAG Inc. v. Off. of the Att'y Gen.*, No. D-1-GN-24-001276 (Tex. Dist. Ct. Travis Cty. Mar. 1, 2024) (entering TRO enjoining Paxton "from abusing the Deceptive Trade Practices Act" to harass organization that advocates for gender-affirming care). Paxton not only opposes abortion, he has consistently abused his powers to project his views

about abortion into other states and onto private parties, with the intent to limit access to legal abortions and information about them. *See, e.g.*, *Fund Tex. Choice*, 2023 WL 2558143, at *5–7. Promoting CPCs is a key part of this effort. Paxton previously demanded Google not downrank search results for CPCs, warning in a publicized letter that if Google "fail[ed] to resist th[e] political pressure" from pro-choice leaders, Paxton and his co-signing state attorneys general "will act swiftly" in retaliation. 2-ER-209; 2-ER-211–15. In this case, Yelp stood on its rights, and Paxton followed through on his threat.

Courts routinely find bad faith precludes abstention where, as here, a state official "has pursued highly questionable charges against the plaintiff apparently for the sole purpose of gaining publicity for himself." *Lewellen*, 843 F.2d at 1112 n.10; *see, e.g.*, *Shaw v. Garrison*, 467 F.2d 113, 118 (5th Cir. 1972) (*Younger* did not apply when it was "obvious" prosecution was designed to "promote[]" the prosecutor and his book). That Yelp has not cited a case with the same facts, *cf.* 1-ER-11, is neither dispositive nor surprising. *Younger* rests on the premise that state officials ordinarily act in good faith. *Cf. Netflix*, 88 F.4th at 1091. Officials who bring charges in bad faith are thus anomalous, so the facts revealing their malintent tend to be *sui generis*. *Cf.* Leo Tolstoy, *Anna Karenina* 1 (1878) ("every unhappy family is unhappy in its own way"). Some factors present in other cases, such as a series of prosecutions, are not present here. But other cases lack evidence of retaliation for divisive political

34

speech, or of a weakened state official motivated to recapture political support by exacting retribution against a corporation with strong opposing views. That other cases may have involved *different facts*, leading to *different evidence* of bad faith, does not excuse the district court's failure to credit the admittedly "strong" evidence of bad faith here. In fact, it is far more probative that Paxton cannot cite a single case legitimating the charges he asserts. *See* 2-ER-31–32.

The district court erred by unduly relying on the fact that Yelp's evidence was "circumstantial." 1-ER-11. "Circumstantial evidence," however, "is not considered inferior to direct evidence in any respect." *United States v. Rux*, 412 F.2d 331, 333 (9th Cir. 1969) (citing *Holland v. United States*, 348 U.S. 121, 140 (1954)). Indeed, "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) (citation omitted). And where, as here, a case turns on an actor's subjective intent, it is often decisive: "Since it would be extraordinary for a party directly to admit a 'bad faith' intention, his motive must of necessity be ascertained from circumstantial evidence." *Seattle-First Nat'l Bank v. NLRB*, 638 F.2d 1221, 1225 (9th Cir. 1981) (citation omitted) (circumstantial evidence could be determinative to assess "duty to bargain in good faith").[8]

---

[8] The district court cites *Laine v. County of Contra Costa*, 2022 WL 19975414, at *7 (N.D. Cal. Sept. 2, 2022), a pro se civil rights action challenging a prisoner's ongoing criminal proceedings. But there, the court, considering a motion to dismiss

The district court found that the circumstantial evidence of Paxton's bad faith was "strong," and was unconvinced that Paxton was "act[ing] entirely in good faith." 1-ER-11. That should have been—and was—more than enough to exercise jurisdiction consistent with *Younger*.

## II. The District Court Erred by Dismissing the Case Without Giving Yelp the Opportunity to Further Develop the Factual Record.

Having found Yelp failed to "provide[] enough concrete evidence of [Paxton's] subjective motivations," *id.*, the district court should have *at least* addressed Yelp's request for discovery. In failing to do so—and in failing to hold an evidentiary hearing, which Yelp also sought—the district court erred.

"[D]iscovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub*, 342 F.3d at 1093. This Court has thus reversed dismissal for failure to afford requested jurisdictional discovery where, as here, "jurisdictional facts are contested or more facts are needed." *Id.* (reversing decision denying such discovery); *see also, e.g., Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,

---

and not a preliminary injunction supported by evidence, held that a plaintiff cannot state a claim that survives *Younger* with only "conclusory allegations" of bad faith. *Id.* It says nothing about the quantum or type of evidence a plaintiff must present to establish *Younger*'s bad faith exception in the preliminary injunction context, and certainly not anything requiring "concrete evidence."

328 F.3d 1122, 1135 (9th Cir. 2003) (same); *Wells Fargo & Co. v. Wells Fargo Express Co*., 556 F.2d 406, 430 n.24 (9th Cir. 1977) (same).

Here, the district court's own findings—that Yelp adduced "strong" evidence of Paxton's bad faith, 1-ER-11—required it to exercise jurisdiction and reject *Younger*.  But at minimum, this showing obligated the district court to at least order discovery.  *Laub*, 342 F.3d at 1093.  That discovery could (and likely would) have resulted in additional evidence of bad faith.  Yelp should have had the opportunity, for example, to ask Paxton why he suddenly pursued this action after months of inaction; to identify and probe the CPC that allegedly contacted Paxton's office to complain about the First Notice months after Yelp changed it; and to cross examine Paxton's investigator about why he "stopped working on this case" while Paxton was removed from office and the circumstances under which he "became aware that OAG was likely to file suit against Yelp" shortly before Paxton was reinstated.  2-ER-90 ¶ 13.  This alone is enough to reverse the district court's decision, which this Court reviews de novo.  *Cal. Dep't of Soc. Servs.*, 523 F.3d at 1031; *see also Stevens v. Corelogic, Inc.*, 899 F.3d 666, 667 (9th Cir. 2018) (denial of discovery reviewed de novo where "district court does not exercise any substantive discretion").

For the same reasons, the district court erred by failing to conduct an evidentiary hearing.  A hearing to test the credibility of a prosecutor's assertions of good faith is critical where, as here, the facts cannot be conclusively resolved by

affidavits.  The district court recognized this, holding a hearing is proper "[w]here sharply disputed [] facts are simple and little time would be required."  1-ER-12 n.4 (alterations original) (quoting *Nelson*, 799 F.2d at 555).  But it concluded, without any reasoning, that "the magnitude of the inquiry into bad faith" would have made a hearing "impractical" here.  *Id.* (cleaned up).  Yelp could have confirmed Paxton's bad faith with even a short evidentiary hearing—as the district court did in *Netflix*, 88 F.4th at 1085 (describing a single seven-hour hearing).

Thus, for example, in *Kern v. Clark*, 331 F.3d 9 (2d Cir. 2003), the Second Circuit held the district court erred by "rel[ying] upon the affidavits of [the state officials], which stated, in conclusory terms, that [the plaintiff] was prosecuted in good faith."  *Id.* at 12.  In *Netflix*, by contrast, the district court held a single-day evidentiary hearing to conclude there was evidence of bad faith.  88 F.4th at 1085.  The Fifth Circuit affirmed this decision based on the district court's "largely credibility-based determination"—one the court could make only after holding a hearing and considering whether the prosecutor's efforts to show his actions were in good faith added up.  *Id.*  And, indeed, the Fifth Circuit based its decision in significant part on "inconsistencies" in the prosecutor's defense of the charges, and the "terse," "unilluminating," and ultimately "unsatisfying" explanations for his actions—none of which would have entered the record if the district court had dispensed with the hearing.  *Id.* at 1093–94.

The stakes for premature dismissal of a case under *Younger* without discovery or a hearing to determine a state official's bad faith are high.  The law under which Yelp brings its First Amendment claims—42 U.S.C. § 1983—was enacted as part of the Civil Rights Act of 1871 to provide an affirmative remedy for federal constitutional rights denied in former Confederate states that "could not, or would not, fully protect" them in their own judicial systems.  *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 176–77 (2023).  The remedy recognizes "the paramount role Congress has assigned to the federal courts to protect constitutional rights," *Steffel v. Thompson*, 415 U.S. 452, 472–73 (1974), and demands skepticism whenever a state actor colorably accused of violating federal rights seeks to evade federal judicial review of his conduct.  The Fifth Circuit explained the danger of letting state officials hide behind abstention:

> State officials disposed to suppress speech could easily do so by bringing oppressive criminal actions pursuant to valid statutes rather than by enacting invalid statutes or using other parts of the state legal machinery, and § 1983 would give no effective relief unless they happen to warn their victims in advance.… When a significant chilling effect on free speech is created by a bad faith prosecution, the prosecution will thus as a matter of law cause irreparable injury regardless of its outcome, and the federal courts cannot abstain from issuing an injunction.

*Wilson v. Thompson*, 593 F.2d 1375, 1383 (5th Cir. 1979) (citation omitted).

Uncodified principles of "comity" do not overcome this foundational commitment to equal justice under law.  Abstention, which appears nowhere in the

Constitution, is in direct "tension with" the Supreme Court's repeated "reaffirmation of the principle that a 'federal court's obligation to hear and decide' cases within its jurisdiction is 'virtually unflagging.'" *Driehaus*, 573 U.S at 167 (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013)); *see also Cohens v. Virginia*, 19 U.S. 264, 404 (1821) (federal court has "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given"). Yelp joins a unanimous Supreme Court in questioning the "continuing vitality" of such "prudential" justiciability doctrines, especially in cases that implicate constitutional rights. *Driehaus*, 573 U.S at 167 (declining, for now, to "resolve the continuing vitality" of one such doctrine).

Where the facts are controverted, dismissal of a case under *Younger* without allowing discovery amplifies the problem. *Cf. B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 541–42 (9th Cir. 2022) (error to prematurely dismiss § 1983 action under *Noerr-Pennington* doctrine when it was "unclear whether" the plaintiff could have established "a sham exception" based on defendants' bad faith). That is especially the case where, as here, a court finds "persuasive" allegations that a state official is acting in bad faith and with a retaliatory motive, and recognizes that, even absent discovery, the plaintiff has presented "strong circumstantial evidence" to support those allegations. The district court was required to allow Yelp to further develop the factual record sufficient to make that determination conclusively.

**III.    The District Court Erred by Failing to Reach and Find Satisfied the Preliminary Injunction Factors.**

Because it erred in abstaining under *Younger*, the district court neglected to reach the merits of Yelp's motion for preliminary injunction. It should have done so and should have issued the requested relief. Yelp showed a "likelihood of success" and at least "serious questions" on the merits, a "likelihood of irreparable injury," and that equity and the public interest support an injunction. *Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 859 (9th Cir. 2022).

**A.    Yelp Demonstrated That Paxton's Conduct Violates the First Amendment.**

"[S]tate action to punish the publication of truthful information seldom can satisfy constitutional standards." *Bartnicki*, 532 U.S. at 527 (citation omitted). The Supreme Court has never upheld state action to penalize publication of such information, whether they be state secrets, *N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971), names of juvenile delinquents, *Smith*, 443 U.S. at 105–06, identities of rape victims, *Fla. Star*, 491 U.S. at 532–41, or even information obtained through "a stranger's illegal conduct," *Bartnicki*, 532 U.S. at 535. Even where the Supreme Court has "hypothesiz[ed]" what "state interest[s] of the highest order" might justify punishing truthful publication on issues of public concern, it has confined those interests to the extreme margins of ordinary discourse, such as preventing "publication of the sailing dates of transports or the number and location of troops"

41

at sea in wartime. *Fla. Star*, 491 U.S. at 532–33 (quoting *Near v. Minnesota*, 283 U.S. 697, 716 (1931)).

Paxton does not dispute that the First Amendment bars him from punishing, preventing, or retaliating against publication of truthful information of public concern. *See also, e.g.*, *Sampson v. Cnty. of L.A. by & though L.A. Cnty. Dep't of Child. & Fam. Servs.*, 974 F.3d 1012, 1020 (9th Cir. 2020); *Greisen v. Hanken*, 925 F.3d 1097, 1114 (9th Cir. 2019); *Lacey v. Maricopa County*, 693 F.3d 896, 916 (9th Cir. 2012) (all holding that the First Amendment prohibits even threatened legal sanctions for engaging in protected speech). His putative defense instead rests on the premise that he may punish or prevent Yelp from publishing truthful information on a public issue when it prejudices his preferred viewpoint. *See* 2-ER-307; 3-ER-522–24 ¶¶ 20, 24, 28. The First Amendment, however, does not permit a government official to abide the Constitution only when it suits his political agenda. Yelp has the right to decide what to publish, even if the government perceives its choices as biased. *See Tornillo*, 418 U.S. at 250, 258 (First Amendment bars government from attacking alleged "bias and manipulative reportage" by coercing the publication of supposedly balanced content); *Bullfrog*, 847 F.2d at 510 (similar). Paxton's contrary position—effectively, "that government may restrict the speech of some elements of our society in order to enhance the relative voice of others"—

is "wholly foreign to the First Amendment." *Buckley v. Valeo*, 424 U.S. 1, 48–49 (1976).

Recognizing these protections, Paxton claimed in the district court that the consumer notice is commercial speech, and that Yelp failed to append a disclaimer to "other pregnancy-oriented entities," which, he claims, "*also* commonly lack licensed, on-site medical professional." 2-ER-307. He is wrong. *See supra* § I.B.1. No authority permits Paxton to coerce Yelp into retracting protected speech or carrying his preferred message.

### B. Yelp Demonstrated the Remaining Factors Support Relief.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Thus even a "colorable First Amendment claim" warrants a preliminary injunction. *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005). Yelp's claim is not only colorable but strong. By declaring the First Notice "false" and "misleading," Paxton seeks to punish Yelp for, and deter Yelp from, publishing truthful information on a contested matter of public concern, in transparent retaliation for exercising its rights to free speech. Yelp plans to continue communicating truthful information about CPCs. 3-ER-339–41 ¶¶ 19–23; 2-ER-167–69 ¶¶ 2–7 (Yelp is currently self-censoring). Unless a court enjoins Paxton from taking any action that deters, denies, or discourages such communications,

Yelp will need to continue self-censoring. *Id.* That self-censorship could extend to any potentially controversial topic to which Paxton turns his attention—such as businesses' policies on requirements that patrons wear a mask or be vaccinated against COVID-19, their policies with respect to gender-neutral bathrooms, or reviews of drag shows, 3-ER-340 ¶¶ 20–22, *see also* 3-ER-601–04; 3-ER-606–10 (describing Paxton's campaigns to punish these activities)—and constitutes an irreparable injury, *see Ashcroft v. ACLU*, 542 U.S. 656, 670–71 (2004) (preliminary injunction appropriate to prevent irreparable loss of First Amendment rights because "speakers may self-censor rather than risk the perils of trial").

The public interest and balance of equity overwhelmingly favors injunctive relief because the effect of the Paxton's conduct is not confined to CPCs or Yelp. *See* 2-ER-217–26 (statement of state attorneys general explaining that Yelp's First Notice, which mirrored some of their own consumer warnings, is in the public interest and truthful); 2-ER-249–51 (statement from Reporters' Committee for Freedom of the Press warning that retaliatory actions like Paxton's risk journalistic freedoms). If a rogue attorney general acting in bad faith could enjoin truthful speech about CPCs nationwide, no speech describing what is generally true is safe.

## CONCLUSION

The Court should reverse the order denying Yelp's motion for a preliminary injunction and dismissing the case, and instead enter the requested preliminary injunction, or remand to the district court with instruction to do so.

Respectfully submitted,

Adam S. Sieff
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017
(213) 633-6800
adamsieff@dwt.com

Thomas R. Burke
DAVIS WRIGHT TREMAINE LLP
50 California Street, 23rd Floor
San Francisco, California 94111
(415) 276-6500
thomasburke@dwt.com

s/ *Ambika Kumar*

Ambika Kumar
Sara A. Fairchild
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
(206) 757-8030
ambikakumar@dwt.com
sarafairchild@dwt.com

Eric Feder
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500 East
Washington, D.C., 20005
(202) 973-4200
ericfeder@dwt.com

*Attorneys for Plaintiff-Appellant Yelp Inc.*

Dated: March 12, 2024

## CIRCUIT RULE 28-2.6 STATEMENT OF RELATED CASES

I am unaware of any related cases currently pending in this Court.

**Signature**: _s/ *Ambika Kumar*_
Ambika Kumar

**Date**: March 12, 2024

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s): 24-581**

I am the attorney or self-represented party.

**This brief contains 10,649 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** __s/ *Ambika Kumar*__      **Date** March 12, 2024
        Ambika Kumar

47

**CERTIFICATE OF SERVICE**

I hereby certify that on March 12, 2024, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: March 12, 2024         s/ *Ambika Kumar*
                                    Ambika Kumar