No. 24-581

# In the United States Court of Appeals
# for the Ninth Circuit

---

YELP INC.,

*Plaintiff-Appellant*,

*v.*

KEN PAXTON, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF TEXAS,

*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Northern District of California

---

## BRIEF FOR DEFENDANT-APPELLEE

---

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

AARON L. NIELSON
Solicitor General

LANORA C. PETTIT
Principal Deputy Solicitor General
Lanora.Pettit@oag.texas.gov

J. ANDREW MACKENZIE
Assistant Attorney General

Counsel for Defendant-Appellee

# TABLE OF CONTENTS

Page

Table of Authorities ............................................................................ iii

Introduction ......................................................................................... 1

Statement of Jurisdiction .................................................................... 3

Statement of the Case ......................................................................... 4

    I.   Yelp's Misleading Consumer Notice ......................................... 4

    II.  The Response of State Regulators ............................................. 6

    III. Procedural History ..................................................................... 8

        A.  The Office of the Attorney General's State-Court
            Enforcement Action ............................................................ 8

        B.  Yelp's federal-court effort to change the forum ................. 9

Summary of the Argument ................................................................. 10

Standard of Review ............................................................................ 13

Argument ........................................................................................... 14

    I.   This Suit Belongs in Texas ...................................................... 14

        A.  Yelp failed to establish personal jurisdiction ................... 14

            1.  The Attorney General has not purposefully directed his
                activities toward California ........................................... 16

            2.  Yelp's claims do not arise out of or relate to actions of the
                Attorney General in California. ..................................... 19

            3.  Exercising personal jurisdiction over the Attorney General
                in these circumstances would be unreasonable ........... 20

        B.  The Northern District of California is not a proper venue ................. 22

    II.  The District Court Was Correct to Abstain ............................. 25

        A.  Absent an exception, *Younger* bars this dispute ............... 25

        B.  No exception applies here. ................................................. 27

            1.  The Attorney General has a reasonable expectation of
                success in his state-court DTPA enforcement action ................. 28

            2.  Yelp has not alleged any facts supporting its conclusory
                allegations about the Attorney General's subjective intent. ........ 35

i

C. Neither discovery nor an evidentiary hearing was warranted ............ 40

III. Yelp Is Not Entitled to a Preliminary Injunction ...................................... 42

Conclusion ....................................................................................................... 46

Certificate of Service........................................................................................ 47

Certificate of Compliance ................................................................................ 47

## Table of Authorities

Page(s)

**Cases:**

*All. for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ............................................................ 43

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
  559 F.3d 1046 (9th Cir. 2009) .......................................................... 42

*Amerisource Bergen Corp. v. Roden*,
  495 F.3d 1143 (9th Cir. 2007) .......................................................... 26

*Applied Underwriters, Inc. v. Lara*,
  37 F.4th 579 (9th Cir. 2022) .......................................................*passim*

*In re Babin*, No. 22-40306, 2022 WL 1658701 (5th Cir. May 25, 2022) ...........41, 42

*Baffert v. Cal. Horse Racing Bd.*,
  332 F.3d 613 (9th Cir. 2003) ............................................................ 28

*U.S. ex rel. Birnbaum v. Dolan*,
  452 F.2d 1078 (3d Cir. 1971) ............................................................. 1

*Bose Corp. v. Consumers Union of U.S.*,
  466 U.S. 485 (1984) .....................................................................34, 35

*Bristol-Myers Squibb Co. v. Connors*,
  979 F.3d 732 (9th Cir. 2020) ............................................................ 27

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*,
  582 U.S. 255 (2017) ...........................................................................16

*Bulkley & Assocs., L.L.C. v. Dep't of Indus. Rels., Div. of Occupational
  Safety & Health of the State of Cal.*, 1 F.4th 346 (5th Cir. 2021)...........................19

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ........................................................................ 18

*Calder v. Jones*,
  465 U.S. 783 (1984)...........................................................................17

*Carroll v. City of Mount Clemens*,
  139 F.3d 1072 (6th Cir. 1998) .......................................................... 27

*Cent. Hudson Gas & Elec. Corp. v. Pub. Service Comm'n*,
  447 U.S. 557 (1980)......................................................................... 39

*City of Cincinnati v. Discovery Network*,
  507 U.S. 410 (1993) ........................................................................ 34

iii

*City of Dallas v. TCI West End, Inc.*,
463 S.W.3d 53 (Tex. 2015) ..................................................................30-31

*Coal. for Econ. Equity v. Wilson*,
122 F.3d 718 (9th Cir. 1997) .................................................................. 44

*Coinbase, Inc. v. Bielski*,
599 U.S. 736 (2023) ............................................................................... 44

*Ctr. for Biological Diversity v. EPA*,
937 F.3d 533 (5th Cir. 2019) ................................................................. 14

*Daves v. Dallas County*,
22 F.4th 522 (5th Cir. 2022) ................................................................. 25

*Davis v. Cranfield Aerospace Sols., Ltd.*,
71 F.4th 1154 (9th Cir. 2023)..................................................................16

*Deburro v. Apple, Inc.*,
No. A-13-CA-784-SS, 2013 WL 5917665 (W.D. Tex. Oct. 31, 2013) .................19

*Dedication & Everlasting Love to Animals v. Pa. Bureau of Charitable
Orgs.*, 101 F. App'x 224 (9th Cir. 2004) ........................................................ 24

*Dex Media W., Inc. v. City of Seattle*,
696 F.3d 952 (9th Cir. 2012) ................................................................. 33

*Diamond "D" Const. Corp. v. McGowan*,
282 F.3d 191 (2d Cir. 2002) .......................................................2, 25, 27

*Dobbs v. Jackson*,
597 U.S. 215 (2022)................................................................................ 4

*Doe v. Boys Clubs of Greater Dallas, Inc.*,
907 S.W.2d 472 (Tex. 1995)............................................................31, 32

*Dombrowski v. Pfister*,
380 U.S. 479 (1965)..........................................................................36-37

*Dubinka v. Judges of the Superior Court*,
23 F.3d 218 (9th Cir. 1994) .................................................................. 26

*Duke v. Gastelo*,
64 F.4th 1088 (9th Cir. 2023) ......................................................... 25, 26

*Elrod v. Burns*,
427 U.S. 347 (1976) ............................................................................. 38

*Finder v. Tex. Med. Bd.*, No. 03-10-00004-CV,
2010 WL 4670510 (Tex. App.—Austin Nov. 18, 2010, pet. denied) ................ 30

*First Resort, Inc. v. Herrera*,
860 F.3d 1263 (9th Cir. 2017)...................................................... 32, 33, 34

*Frederick Douglass Found., Inc. v. District of Columbia*,
82 F.4th 1122 (D.C. Cir. 2023) ................................................ 36, 37

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*,
905 F.3d 597 (9th Cir. 2018) ............................................... 17, 18, 21

*FTC v. Standard Oil Co.*,
449 U.S. 232, 244 (1980) ............................................................ 44

*In re George*,
322 F.3d 586 (9th Cir. 2003) ...................................................... 28

*Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council
of Balt.*, 721 F.3d 264 (4th Cir. 2013) ........................................ 34

*Hartman v. Moore*,
547 U.S. 250 (2006) ....................................................... 17, 27, 43

*Hefner v. Alexander*,
779 F.2d 277 (5th Cir. 1985) ...................................................... 36

*U.S. ex rel. Hendow v. Univ. of Phoenix*,
461 F.3d 1166 (9th Cir. 2006) .................................................... 31

*Hicks v. Miranda*,
422 U.S. 332 (1975) .................................................. 12, 13, 27, 28

*Huffman v. Pursue, Ltd.*,
420 U.S. 592 (1975) ................................................................. 26

*Hunt v. City of Los Angeles*,
638 F.3d 703 (9th Cir. 2011) ...................................................... 33

*Hunt v. Erie Ins. Grp.*,
728 F.2d 1244 (9th Cir. 1984) .................................................... 20

*Ins. Co. of N. Am. v. Marina Salina Cruz*,
649 F.2d 1266 (9th Cir. 1981) ................................................ 20, 21

*Int'l Franchise Ass'n, Inc. v. City of Seattle*,
803 F.3d 389 (9th Cir. 2015) ...................................................... 13

*Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. &
Placement*, 326 U.S. 310 (1945) ................................................ 15

*J. McIntyre Mach., Ltd. v. Nicastro*,
564 U.S. 873 (2011) ................................................................. 19

*Kenneally v. Lungren*,
967 F.2d 329 (9th Cir. 1992) ...................................................... 13

*Kentucky v. Graham*,
473 U.S. 159 (1985) ................................................................. 43

v

*Kern v. Clark*,
  331 F.3d 9 (2d Cir. 2003) ......................................... 40, 41

*Khunaverdiants v. Mukasey*,
  548 F.3d 760 (9th Cir. 2008)...................................13

*Kleenwell Biohazard Waste & Gen. Ecology Consultants, Inc. v. Nelson*,
  48 F.3d 391 (9th Cir. 1995)....................................... 9

*Kugler v. Helfant*,
  421 U.S. 117 (1975)................................................ 28

*Lacey v. Maricopa County*,
  693 F.3d 896 (9th Cir. 2012) ................................. 40

*Lake v. Lake*,
  817 F.2d 1416 (9th Cir. 1987) .................................17

*Leroy v. Great W. United Corp.*,
  443 U.S. 173 (1979) ........................................*passim*

*Lowe v. SEC*,
  472 U.S. 181 (1985) .............................................. 34

*Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*,
  538 U.S. 600 (2003) ............................................... 32

*Mallory v. Norfolk S. Ry.*,
  600 U.S. 122 (2023) ...............................................17

*In re Marino*,
  949 F.3d 483 (9th Cir. 2020)................................. 44

*Maryland v. King*,
  567 U.S. 1301 (2012) ............................................ 44

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
  647 F.3d 1218 (9th Cir. 2011) .................................15

*McClesky v. Kemp*,
  481 U.S. 279 (1987) .............................................. 36

*McQuillion v. Schwarzenegger*,
  369 F.3d 1091 (9th Cir. 2004) .............................. 10

*Meredith v. Oregon*,
  321 F.3d 807 (9th Cir. 2003) ................................. 26

*Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*,
  954 F.2d 1174 (6th Cir. 1992) ............................... 18

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*,
  457 U.S. 423 (1982)................................ 1, 2, 21, 25

vi

*Miller v. Thane Int'l, Inc.*,
519 F.3d 879 (9th Cir. 2008) ...................................................................31

*Milliken v. Meyer*,
311 U.S. 457 (1940) ...................................................................................15

*Moody v. Netchoice, LLC*,
144 S. Ct. 478 (2023) ............................................................................... 35

*Morningside Church, Inc. v. Rutledge*, No. 3:20-cv-05050-MDH, 2020
WL 5077255 (W.D. Mo. Aug. 27, 2020) ..............................................19

*Morse v. Ozark County*,
609 F. App'x 359 (8th Cir. 2015) ......................................................... 14

*Mother & Unborn Baby Care of N. Tex., Inc. v. Texas*,
749 S.W.2d 533 (Tex. App.—Fort Worth 1988, writ denied) ........................... 37

*Nationwide Biweekly Admin., Inc. v. Owen*,
873 F.3d 716 (9th Cir. 2017) ..................................................................13

*NetChoice, LLC v. Paxton*,
144 S. Ct. 477 (2023) ............................................................................... 35

*Netflix, Inc. v. Babin*,
88 F.4th 1080 (5th Cir. 2023) ....................................................... *passim*

*New Motor Vehicle Bd. v. Orrin W. Fox Co.*,
434 U.S. 1345, 1351 (1977) ..................................................................... 44

*New York Times v. Sullivan*,
376 U.S. 254 (1964) ................................................................................. 35

*Nken v. Holder*,
556 U.S. 418 (2009) ........................................................................... 44-45

*O'Keefe v. Chisolm*,
769 F.3d 936 (7th Cir. 2014) ................................................................. 12

*Page v. King*,
932 F.3d 898 (9th Cir. 2019) .................................................................... 1

*Panavision Int'l, L.P. v. Toeppen*,
141 F.3d 1316 (9th Cir. 1998) .................................................................15

*Passantino v. Johnson & Johnson Consumer Prods., Inc.*,
212 F.3d 493 (9th Cir. 2000) ..................................................................13

*Perez v. Ledesma*,
401 U.S. 82 (1971) .......................................................................12, 28, 34

*Peterson v. Kennedy*,
771 F.2d 1244 (9th Cir. 1985) ............................................................... 20

vii

*Picot v. Weston*,
780 F.3d 1206 (9th Cir. 2015) ...............................................................17

*Potrero Hills Landfill, Inc. v. County of Solano*,
657 F.3d 876 (9th Cir. 2011) ................................................................ 26

*PTI, Inc. v. Philip Morris Inc.*,
100 F. Supp. 2d 1179 (C.D. Cal. 2000) ......................................21, 22

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) .............................................................. 24

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
525 U.S. 471 (1999) .............................................................................. 40

*Roe v. Wade*,
410 U.S. 113 (1973) ................................................................................ 6

*Rubio v. Capital One Bank*,
613 F.3d 1195 (9th Cir. 2010) ..............................................................31

*Ruhrgas AG v. Marathon Oil Co.*,
526 U.S. 574 (1999) .............................................................................. 14

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ................................................................16

*Seger v. Yorkshire Ins. Co., Ltd.*,
503 S.W.3d 388 (Tex. 2016) ..................................................................31

*Seven Star, Inc. v. United States*,
933 F.2d 791 (9th Cir. 1991) ................................................................ 37

*Simon v. DOJ*,
No. 18-2206, 2019 WL 6124881 (1st Cir. June 26, 2019) ................. 24

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
549 U.S 422 (2007) ...........................................................................9, 14

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997) ........................................................29, 31

*State v. Volkswagen Aktiengesellschaft*,
669 S.W.3d 399 (Tex. 2023) ................................................................... 2

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ................................................................................ 14

*Stegmaier v. Trammell*,
597 F.2d 1027 (5th Cir. 1979) .............................................................. 38

*Stormans, Inc. v. Selecky*,
586 F.3d 1109 (9th Cir. 2009) .............................................................. 42

*Stroman Realty, Inc. v. Wercinski*,
  513 F.3d 476 (5th Cir. 2008) ......................................................18, 22

*Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa
  Rica*, 614 F.2d 1247 (9th Cir. 1980) ................................................ 20

*Thomas v. Chi. Park Dist.*,
  534 U.S. 316 (2002) ........................................................................ 37

*Top Rank, Inc. v. Gutierrez*,
  236 F.Supp.2d 637 (W.D. Tex. 2001) ..........................................31, 32

*Trump v. Hawaii*,
  585 U.S. 667 (2018)......................................................................... 43

*Turner v. KTRK TV, Inc.*,
  38 S.W.3d 103 (Tex. 2000) ............................................................. 30

*Twitter, Inc. v. Paxton*,
  56 F.4th 1170 (9th Cir. 2022) ..................................................... 20, 27

*In re U.S. Dep't of Educ.*,
  25 F.4th 692 (9th Cir. 2022) ........................................................... 42

*In re United States*,
  *985 F.2d 510 (11th Cir. 1993)*........................................................ 42

*United Indus. Corp. v. Clorox Co.*,
  140 F.3d 1175 (8th Cir. 1998) ........................................................ 29

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
  425 U.S. 748 (1976).......................................................................... 32

*Walden v. Fiore*,
  571 U.S. 277 (2014) ...............................................................11, 16, 18

*Whole Woman's Health v. Jackson*,
  595 U.S. 30 (2021) ......................................................................... 25

*Winter v. Natural Res. Def. Council, Inc.*,
  55 U.S. 7 (2008) ............................................................................... 9

*Worldwide Church of God, Inc. v. California*,
  623 F.2d 613 (9th Cir. 1980) ....................................................... 26-27

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
  433 F.3d 1199 (9th Cir. 2006)....................................................... 15, 18

*Younger v. Harris*,
  401 U.S. 37 (1971) ..................................................................*passim*

**Constitutional Provisions, Rules and Statutes:**

28 U.S.C.:

§ 1291 ........................................................................................... 3

§ 1331 ........................................................................................... 3

§ 1391 .................................................................................... 23, 24

§ 1391(b) ..................................................................................... 23

§ 1391(b)(2)........................................................................... 22, 23

Fed. R. Civ. P. 4(k)(1)(A) ...............................................................15

Tex. Bus. & Com. Code:

§ 17.41-17.63................................................................................ 4

§ 17.45(6) ..............................................................................19, 24

§ 17.46(a) ................................................................................... 24

§ 17.46(b)(8) .............................................................................. 29

§ 17.61(a)................................................................................... 43

Tex. Bus. Orgs. Code § 5.201........................................................17

**Other Authorities:**

Gorkem Bostanci & Pinar Yildrium, *Does Negative Advertising Pay Off for Consumer Brands?*, Wall Street J. (Jan. 24, 2024), https://tinyurl.com/2jfc3apa.................................................................... 33

Marty Gould, *The Conflict Between Forum-Selection Clauses and State Consumer Protection Laws: Why Illinois Got It Right in* Jane Doe v. Match.com, 90 Chi.-Kent L. Rev. 671 (2015) .................................... 27

News Releases, Ken Paxton: Attorney General of Texas, https://tinyurl.com/ 4xww6z39 (last accessed April 11, 2024) ................................... 39

Notice of Appeal, *State v. Yelp, Inc.*, No. 03-24-00184-CV (Tex. App.—Austin March 20, 2024)................................................... 2, 8

Order, *State v. Yelp Inc.*, No. 2519-335 (335th Dist. Ct., Bastrop County, Tex. Feb 28, 2024) .............. 2, 8

Yelp, Inc. Form 10-K at 1 (Feb. 2023), *with* Megan Graham & Jennifer Elias, *How Google's $150 Billion Advertising Business Works*, CNBC (May 18, 2021), https://tinyurl.com/2n4ew4jj ............................... 33

# INTRODUCTION

Absent extraordinary circumstances, "interests of comity and federalism instruct" a federal court to "abstain from exercising [its] jurisdiction" when "asked to enjoin ongoing state enforcement proceedings." *Page v. King*, 932 F.3d 898, 901 (9th Cir. 2019). Applicable to both criminal and "noncriminal judicial proceedings when important state interests are involved," this practice fosters "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of a belief" that the Nation "will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431–32 (1982). Yelp nonetheless asks this Court to countenance the "extreme measure" of sidestepping this principle, *U.S. ex rel. Birnbaum v. Dolan*, 452 F.2d 1078, 1079 (3d Cir. 1971) (per curiam), based on vague allegations of animus and a disagreement over the forum in which it must litigate its disputes about the meaning of Texas's Deceptive Trade Practice Act. This will not suffice.

The Court need not—indeed, should not—even reach the abstention question upon which the district court ruled because Yelp has never established personal jurisdiction or proper venue in California to sue the Attorney General of Texas for initiating an enforcement proceeding in Texas to uphold the laws of Texas and protect Texas consumers. The only possible connection between the Attorney General's state-court enforcement action against Yelp and California is Yelp's headquarters in San Francisco. But the Supreme Court has time and again rejected the view that the *plaintiff*'s choice of where to reside—as distinguished from the *defendant*'s

litigation-relevant conduct—can form the minimum contacts necessary to establish personal jurisdiction, let alone proper venue.

If the Court *were* to reach abstention, it should conclude that Yelp falls short of the showing necessary to justify federal intervention in a state enforcement action. Yelp does not dispute that it can raise its First Amendment retaliation defense in state court. For good reason: Even a "[m]inimal respect for the state processes . . . precludes any *presumption* that the state courts will not safeguard federal constitutional rights." *Middlesex Cnty.*, 457 U.S. at 431. Yelp has not given this Court any reason to doubt that Texas's courts will uphold its rights. And any doubts Yelp might have raised would surely be put to rest by the state court's recent dismissal of the Attorney General's claims for lack of personal jurisdiction. Order, *State v. Yelp Inc.*, No. 2519-335 (335th Dist. Ct., Bastrop County, Tex. Feb 28, 2024).[1]

Yelp's allegations of bad faith on the Attorney General's part fare no better. Rather than offer concrete facts demonstrating that the "'state proceeding [wa]s brought *with no legitimate purpose*,'" *Applied Underwriters, Inc. v. Lara*, 37 F.4th 579, 596–97 (9th Cir. 2022) (quoting *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 200 (2d Cir. 2002)), Yelp asks this Court to infer malfeasance just because different state Attorneys General who were elected (or, in the case of the Interim

---

[1] The Attorney General maintains that the state trial court's jurisdictional holding misapplied *State v. Volkswagen Aktiengesellschaft*, 669 S.W.3d 399 (Tex. 2023), and has perfected an appeal. Notice of Appeal, *State v. Yelp, Inc.*, No. 03-24-00184-CV (Tex. App.—Austin March 20, 2024). But the ruling belies any notion that Yelp cannot receive a fair hearing in front of Texas courts.

2

Attorneys General of Texas, appointed) by different constituencies have different enforcement priorities. If that were sufficient, *Younger v. Harris*, 401 U.S. 37 (1971), would be a dead letter.

Finally, even if Yelp were able to run the table—demonstrating personal jurisdiction, venue, and that this is the rare case in which federal courts should intrude on state-court proceedings—it still has not shown it is entitled to a preliminary injunction. To start, it is not likely to show that its conduct giving rise to the state-court enforcement proceeding is protected by the First Amendment or that the enforcement proceeding itself is retaliatory. Nor does Yelp face irreparable harm absent a preliminary injunction. The challenged state-court action, which has now been dismissed pending appeal, will allow Yelp to litigate its First Amendment claims. The public interest and balance of harms also favor allowing the Attorney General to pursue his allegations of deceptive trade practices and permitting the state courts to operate within their spheres of jurisdiction.

## STATEMENT OF JURISDICTION

Yelp invoked the district court's jurisdiction under 28 U.S.C. § 1331. The district court dismissed Yelp's complaint on February 1, 2024. 1-ER-2–12. Yelp timely filed a notice of appeal that same day. 4-ER-638–55. This Court has jurisdiction to review the district court's judgment under 28 U.S.C. § 1291.

## STATEMENT OF THE CASE

### I. Yelp's Misleading Consumer Notice

This case arises from the Attorney General's investigation into whether Yelp violated the Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41–17.63 ("DTPA"), by giving a false or misleading representation of the goods, services, or business of another. Days after the notorious leak of the draft opinion in *Dobbs v. Jackson*, 597 U.S. 215 (2022), Yelp's CEO issued a lengthy public statement expressing his support for abortion access and promised "to take action," calling on "business leaders to use their platform and influence to help ensure that reproductive rights are codified into law." 3-ER-521 (at ¶ 18). Three months later, in August 2022, Yelp posted a "Consumer Notice" on the Yelp business page of every crisis pregnancy center in Texas, stating that these clinics "typically provide limited medical services and may not have licensed medical professionals onsite." 3-ER-337 (at ¶ 14). The notice was prominently featured at the top of each page, before any substantive business information or customer reviews.



3-ER-374.

As Yelp's Vice President of User Operations explained in her declaration below, consumer alerts are ordinarily used to flag "particularly egregious activity" designed "to mislead customers," including, for example, "large numbers of reviews coming from a single IP address or reviews from users who may be connected to a group that coordinates incentivized fake reviews." 3-ER-335 (at ¶ 6). To identify such misleading activity Yelp relies on "sophisticated software" that "us[es] hundreds of signals and billions of data points to evaluate the usefulness and reliability of *each review*." 3-ER-334–35 (at ¶ 4) (emphasis added). Yelp deems such analysis important to its business model and invests "tens of millions of dollars to develop and maintain" this software. 3-ER-334 (at ¶ 4).

Here, by contrast, Yelp posted the consumer notice on the business pages of an entire business *category*, irrespective of whether any individual page contained misleading information. It did this even though Yelp has a lot of individualized information about crisis pregnancy centers. In addition to the information gleaned from its "sophisticated software," Yelp used a team of moderators to "manually evaluate[] tens of thousands of listings for entities providing pregnancy-related services" to determine which provided abortion services. 3-ER-336 (at ¶ 10). The moderators consulted "websites, social media pages, 'About the Business' information . . . contributed to Yelp, and reviews from customers." 3-ER-336. Yelp has even refused to remove the consumer notice when crisis pregnancy centers reach out to confirm that they offer medical services from licensed medical professionals. 2-ER-088–89 (at ¶¶ 4–6); 3-ER-522 (at ¶ 23).

5

Information available to the Attorney General, and provided to the district court, reflects that many crises pregnancy centers that Yelp targeted *do* offer a range of medical services provided by licensed medical professionals. For example, in 2019, the Charlotte Lozier Institute surveyed 2,700 crisis pregnancy centers nationwide and found that 80% offered free ultrasounds, that 810 offered testing for sexually transmitted diseases, and that the centers collectively employed 10,215 licensed medical professionals. 4-ER-629. The survey further found that, in 2019, these centers spent almost $266 million to provide material assistance to nearly two million people. 4-ER-629. Yelp's own exhibit shows that 26% of crisis pregnancy centers employ a registered nurse, 16% have a registered doctor, and 66% provide limited medical services. 1-ER-010.

## II.  The Response of State Regulators

Concerned that Yelp's notice was misleading vulnerable consumers seeking pregnancy-related services, the Attorneys General of 24 States sent Yelp a letter demanding that it remove the notice and "stop discriminating against crisis pregnancy centers." 4-ER-630. The Attorneys General observed that Yelp's actions appeared to be a politically motivated response to the Supreme Court's decision overturning *Roe v. Wade*, 410 U.S. 113 (1973), rather than a business response to genuine consumer concerns. 4-ER-626 (at n.4). Although the Attorneys General never questioned that Yelp had the right to speak on its own behalf, it explained that such a right does not grant Yelp a license to engage in misleading trade practices. 4-ER-627–28.

The letter explained that "the notice flag[ged] *every* crisis pregnancy center . . . regardless of whether the center actually has licensed medical professionals onsite."

4-ER-628. Yet a survey of crisis pregnancy centers showed that many offer medical services such as free pregnancy tests, free ultrasounds, and tests for sexually transmitted diseases. 4-ER-628. That same survey also showed that many have licensed medical professionals onsite. 4-ER-628. One crisis pregnancy center even guaranteed that "a licensed medical professional conducts all of [its] services." 4-ER-628. The Attorneys General encouraged Yelp to reconsider its attempt to direct women away from such clinics, which "in many instances" are "better positioned than any other facility to deliver" needed medical services, 4-ER-629–30, just "because [Yelp] seemingly disapproves of the provider," 4-ER-630.

Though Yelp stood by its original notice, it nevertheless amended the notice the very next day "in a good faith effort to address [the] concerns" expressed in the joint letter. 4-ER-636. The corrected notification states: "This is a Crisis Pregnancy Center. Crisis Pregnancy Centers do not offer abortions or referrals to abortion providers." *Id*. Neither the Texas Attorney General nor (to his knowledge) any other Attorney General who signed the coalition letter objects to the new notice. 2-ER-076; 2-ER-019 (counsel for the Texas Attorney General confirming that "the language that Yelp is using now is perfectly acceptable in the Attorney General's view, that these centers don't provide abortions"); 3-ER-514 (press release from the Texas Attorney General confirming that Yelp had replaced its prior notice with "an accurate" one); 3-ER-572 (statement from the Kentucky Attorney General expressing appreciation for Yelp's "timely response in addressing our concerns"). The new notice is not at issue in this suit and is not the subject of any enforcement action in Texas state court.

## III. Procedural History

### A. The Office of the Attorney General's State-Court Enforcement Action

In April 2023, the Texas Attorney General's Office ("OAG") began investigating whether Yelp's prior notice violated the DTPA by giving a false or misleading representation of the goods, services, or business of another. Specific crisis pregnancy centers in Texas reached out to OAG's Consumer Protection Division and confirmed that all of their Yelp business pages had been tagged with the notices suggesting untrue information about their clinics. 2-ER-088–89 (at ¶¶ 4–8). Investigators also reviewed correspondence confirming that these centers had unsuccessfully asked Yelp to remove the notice after providing proof that they offer medical services and employ licensed medical professionals. 2-ER-088–89. Investigators searched in vain to find analogous treatment of any other business in Texas. 2-ER-089 (at ¶ 9).

Based on this investigation, OAG determined that Yelp had likely violated the DTPA by misleading Texas consumers about the availability of medical services at crisis pregnancy centers. As required by state law, OAG sent a notice of intent to file suit to Yelp's registered agent in Texas, advising Yelp that OAG would soon be filing suit in Texas state court to recover civil penalties for the period in which Yelp's misleading consumer notice was active in Texas. 4-ER-624. OAG then filed suit in a state trial court in Bastrop County, Texas, 3-ER-516–28, which later dismissed OAG's action for lack of personal jurisdiction. Order, *State v. Yelp, Inc.*, *supra* p. 2. An appeal of that decision was timely filed and remains pending. *See* Notice of Appeal, *State v. Yelp, Inc.*, *supra* p. 2 n.1.

## B. Yelp's federal-court effort to change the forum

After receiving OAG's pre-suit letter, Yelp sought to preempt OAG's state-court claims by filing this suit in the Northern District of California against the Attorney General in his official capacity. 4-ER-612–22. Yelp moved for a preliminary injunction to halt the state-court suit on the grounds that it was initiated in bad faith or in retaliation for First Amendment protected activity. 3-ER-312–32.

The Attorney General, in turn, filed a motion to dismiss on three grounds: (1) that the district court lacked personal jurisdiction over the Attorney General; (2) that venue was improper; and (3) that the district court should abstain under *Younger*. 2-ER-258–84. He further argued that the conditions for a preliminary injunction outlined in *Winter v. Natural Resources Defense Council, Inc.*, 55 U.S. 7 (2008), had not been met. 2-ER-267, 2-ER-282.[2]

After a hearing on Yelp's motion for a preliminary injunction, 2-ER-014–70, the district court decided to abstain. Because Yelp did not contest that this case falls within *Younger*'s ambit, 1-ER-006, the district court recognized that it was required to abstain unless Yelp could demonstrate that OAG's state-court enforcement action was being prosecuted in bad faith. 1-ER-007. The court found that Yelp failed to make that showing. 1-ER-009–11. In particular, the court noted that Yelp did not show that OAG's state court action is "facially meritless," which is the typical way

---

[2] Although whether to abstain under *Younger* is a prudential, rather than a jurisdictional, question, *Kleenwell Biohazard Waste & Gen. Ecology Consultants, Inc. v. Nelson*, 48 F.3d 391, 394 n.3 (9th Cir. 1995), the district court was under no obligation to decide personal jurisdiction "before abstaining under *Younger*," *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S 422, 431 (2007).

of demonstrating bad faith. 1-ER-010. The DTPA, the district court explained, prohibits "disparaging the goods, services, or business of another by providing a false *or misleading* representation of facts." 1-ER-010. (emphasis added). And the district court observed that whether Yelp's notice was true or misleading was "open to interpretation," given that Yelp's own evidence suggested that many crisis pregnancy centers offer significant medical services by licensed medical professionals. 1-ER-010.

The district court also rejected Yelp's alternative theory that the Attorney General filed suit to retaliate against Yelp for exercising its free-speech rights. The district court assumed that allegations of retaliation present a separate route around *Younger* (as opposed to showing that the to-be-enjoined enforcement action is facially meritless). 1-ER-007. The district court nonetheless concluded that Yelp was not entitled to the extraordinary relief of an anti-suit injunction because it offered little more than conclusory allegations and ad hominem attacks, as opposed to "concrete evidence" of reprisal. 1-ER-011.

Because Yelp's first theory relied entirely on legal argument and its second on innuendo unsupported by facts, the district court further declined to permit Yelp discovery or an evidentiary hearing into the Attorney General's subjective motivations in pursuing his enforcement action. 1-ER-012 (at n.4). This appeal timely followed. 4-ER-638–39.

## SUMMARY OF THE ARGUMENT

**I.** The Court may affirm based on any ground reflected in the record. *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1096 (9th Cir. 2004). And for two separate

10

albeit related reasons, it need not even reach the question whether the district court correctly abstained under *Younger*.

*First*, neither the Attorney General of Texas nor the Texas OAG is subject to the personal jurisdiction of the California courts. Because Yelp has sued the Attorney General in his official capacity, it has effectively sued OAG. And OAG is part of the executive branch of the Texas government, litigating on behalf of Texas consumers a claim that Yelp violated Texas laws by making false or misleading statements about crisis pregnancy centers in Texas and thereby caused harm to Texas consumers. The only connection OAG or the Attorney General has with California is a multi-State letter. That is insufficient to subject OAG, an arm of the executive branch of a sovereign State, to personal jurisdiction in California. So is Yelp's decision to locate there because "[t]he plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

*Second*, venue is also improper in the Northern District of California. In *Leroy v. Great Western United Corporation*, the Supreme Court concluded that a suit involving a constitutional challenge to an Idaho law that the Attorney General of Idaho had sought to enforce against a Texas company had "only one obvious locus—the District of Idaho." 443 U.S. 173, 185 (1979). That Idaho's "statute had its impact" in Texas was insufficient to establish venue there because "this reasoning would subject the Idaho officials to suit in almost every district of the country." *Id.* at 186. Under *Leroy*, venue is not proper in the Northern District of California merely because Yelp asserts that it feels the impact of OAG's lawsuit there.

11

**II.** If the Court nevertheless deems it appropriate to reach the *Younger* issue, it should affirm the district court's abstention holding. Yelp cannot dispute that, absent an exception, this is a paradigmatic case for abstention under *Younger v. Harris*, 401 U.S. 37 (1971): Yelp seeks to halt ongoing state-court enforcement of Texas's laws designed to protect consumers against fraud and other deceptive trade practices. "Since the beginning of this country's history," both courts and Congress "ha[ve], subject to few exceptions, manifested a desire to permit state courts to try [such] state cases free from interference by federal courts." *Id.* at 43. This deference reflects the "fundamental principle of federalism" inherent in the notion that States are sovereigns, *not* mere subsidiaries of the national government, and that "state courts are free to conduct their own litigation, without ongoing supervision by federal judges." *O'Keefe v. Chisolm*, 769 F.3d 936, 939 (7th Cir. 2014).

Yelp seeks to avoid this principle by invoking a narrow exception for cases in which state-court proceedings are prosecuted in bad faith. But that exception applies only when the plaintiff offers "satisfactory proof," *Hicks v. Miranda*, 422 U.S. 332, 350 (1975), that the state-court proceeding was instituted "without hope of obtaining a valid conviction," *Perez v. Ledesma*, 401 U.S. 82, 85 (1971), or a liability finding, *Lara*, 37 F.4th at 596. The district court properly held that Yelp cannot meet that standard because it has not shown OAG's claims to be "facially meritless." 1-ER-010. This Court should not expand *Younger*'s exceptions and allow a fishing expedition into the subjective motivations of the Attorney General based on "vague and conclusory" allegations, which are colored by Yelp's assessment of the merits. *Hicks*, 422 U.S. at 350.

**III.** Even if the Court concludes that it is appropriate to reach the merits of Yelp's request for a preliminary injunction, Yelp still would not be entitled to relief. Yelp has not shown a likelihood of success because it has not shown that OAG is seeking to enforce the DTPA in a way that is inconsistent with the First Amendment. Moreover, no matter how uncongenial Yelp finds it, having to litigate in Texas is not itself a First Amendment or cognizable harm under *Younger.* 401 U.S. at 46. By contrast, the State of Texas will be harmed if the Attorney General is unable to protect Texas citizens from deceptive trade practices or to vindicate Texas laws while Yelp litigates this meritless lawsuit in federal court in another State. Because none of the traditional equitable factors favors relief, the preliminary injunction should be denied even if the case is not dismissed.

## Standard of Review

This court determines jurisdiction and venue de novo. *Khunaverdiants v. Mukasey*, 548 F.3d 760, 764 (9th Cir. 2008); *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 504 (9th Cir. 2000). It likewise reviews a district court's decision to abstain under *Younger* de novo. *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 727 (9th Cir. 2017). A court's decision not to hold an evidentiary hearing or permit discovery arising from an assertion of *Younger* abstention is reviewed for abuse of discretion. *See Kenneally v. Lungren*, 967 F.2d 329, 336 (9th Cir. 1992). "Denial of a motion for a preliminary injunction is reviewed for abuse of discretion and the underlying legal principles de novo." *Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 398 (9th Cir. 2015).

13

**A R G U M E N T**

## I.   This Suit Belongs in Texas.

"[A] federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Sinochem Int'l*, 549 U.S. at 431 (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999), and citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 100–01 & n.3 (1998)). Here, there are at least two threshold problems with Yelp's case that were heavily litigated below but are conspicuously omitted from Yelp's opening brief: personal jurisdiction and improper venue. *See, e.g.*, 2-ER-041; 2-ER-073; 2-ER-259. Irrespective of whether Yelp's arguments regarding these issues are preserved,[3] they represent two additional reasons that preclude courts in this jurisdiction from considering Yelp's claims before this Court even reaches the question of whether it should abstain.

### A.   Yelp failed to establish personal jurisdiction.

To start, Yelp has not demonstrated that anything about OAG's decision to sue Yelp in Texas to protect Texas consumers and Texas crisis pregnancy centers from deceptive trade practices exposes the Attorney General to the personal jurisdiction of courts in California. "Where, as here, no federal statute authorizes personal

---

[3] *But see, e.g.*, *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 542 (5th Cir. 2019) (citing authorities from across the federal circuit courts for the proposition that arguments in favor of jurisdiction can be forfeited or waived); *Morse v. Ozark County*, 609 F. App'x 359, 361 (8th Cir. 2015) (per curiam) (declining to consider arguments in favor of jurisdiction first raised in a reply brief). If the Court permits Yelp to address these arguments for the first time in reply, the Attorney General reserves the right to seek an opportunity to respond.

14

jurisdiction, the district court applies the law of the state in which the court sits." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). As a result, personal jurisdiction over a nonresident defendant like the Attorney General turns on the reach of California's long-arm statute as limited by the Due Process Clause of the Fourteenth Amendment. Fed. R. Civ. P. 4(k)(1)(A); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analysis under state law and federal due process are the same." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc).

To satisfy due process, a defendant must be subject to either general jurisdiction within a State or have "certain minimum contacts with [a State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). General jurisdiction requires "a defendant's contacts with the forum [to be] so substantial, continuous, and systematic that the defendant can be deemed to be 'present' in that forum for all purposes." *Yahoo!*, 433 F.3d at 1205. Yelp cannot in good faith maintain that the Attorney General of Texas, who resides in McKinney, Texas, and who was elected by the people of Texas to lead an agency headquartered in Austin, Texas, is "at home" anywhere in California. As a result, this case turns on so-called specific jurisdiction, which is "based on the relationship between the defendant's forum contacts and the plaintiff's claim." *Id.*; *see also* 2-ER-106; 2-ER-155.

15

Specific jurisdiction requires a showing that the conduct underlying the lawsuit has "a substantial connection with the forum State." *Walden*, 571 U.S. at 284. Such a connection exists when (1) the defendant either purposefully directs his activities toward the forum or purposefully avails himself of the privileges of conducting activities in the forum; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice. *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1161–62 (9th Cir. 2023). Yelp bears the burden to demonstrate the first two prongs, at which point it would become the Attorney General's burden to show that the third prong nevertheless renders the exercise of personal jurisdiction unreasonable. *Id.* at 1162. "All three prongs must be met to exercise personal jurisdiction over the defendant." *Id.* Because specific personal jurisdiction is proper only when the plaintiff's claim "aris[es] out of or relat[es] to the *defendant's* contacts with the *forum*," *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (first emphasis added), none of the prongs are satisfied by Yelp's sole allegation: that "the Attorney General targeted Yelp, knowing Yelp is a California resident," 2-ER-155–56.

### 1. The Attorney General has not purposefully directed his activities toward California.

At the outset, by filing a lawsuit in another State, neither OAG nor the Attorney General has "purposefully directed" activities toward the forum or made "purposeful[] avail[ment] of the privilege of conducting activities within the forum." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting

16

*Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). "[P]urposeful availment" and "purposeful direction" are "two distinct concepts." *Id.* The former applies to claims sounding in contract while the latter applies to claims sounding in tort. *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). To the extent it is cognizable at all, Yelp's claim "is a constitutional tort." *Hartman v. Moore*, 547 U.S. 250, 262 n.9 (2006). Thus, the "purposeful direction" inquiry applies. Purposeful direction can be shown in two ways, but Yelp fails under either method.

*First*, this Court has said that "[t]he commission of an intentional tort in a state is a purposeful act that will satisfy" the purposeful-direction test. *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 604 (9th Cir. 2018). In this case, neither OAG nor the Attorney General has taken any action in California. The notice of intent to file suit and services of process were sent to Yelp's registered agent in Dallas, Texas, where Yelp has agreed to receive process. 4-ER-624; 3-ER-518; Tex. Bus. Orgs. Code § 5.201; *Mallory v. Norfolk S. Ry.*, 600 U.S. 122, 133 (2023). And though Yelp placed the misleading notice that is the subject of suit on the Yelp business pages of crisis pregnancy centers nationwide, Opening Br. 7, the Attorney General has not tried in any way to expand this enforcement action to centers in other jurisdictions.

*Second*, where the defendant's conduct "takes place *outside* the forum," it may constitute purposeful direction if the conduct "has effects inside the forum state." *Freestream Aircraft*, 905 F.3d at 604. *See generally Calder v. Jones*, 465 U.S. 783, 789 (1984). Even under this "effects" test, however, the inquiry turns on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons

17

who reside there." *Walden*, 571 U.S. at 285. In other words, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* In the end, the question is whether a defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985), or whether the relationship to the forum is instead being driven by the plaintiff.

For example, in *Yahoo!*, this Court held that "[a] cease and desist letter is not in and of itself sufficient to establish personal jurisdiction over the sender of the letter." 433 F.3d at 1208. The Court also held that service of process on Yahoo! in the state of California was insufficient to confer jurisdiction. *See id.* at 1209. And *Freestream Aircraft* reaffirmed that contacts required by a collateral litigation process do not create personal jurisdiction. 905 F.3d at 607. But this case does not even present collateral-litigation contacts because both the Attorney General's notice of intent to file suit, ER624, and his services of process, ER518, were sent to Yelp's registered agent in Dallas, Texas.

The rule that what matters is the defendant's actions, not the happenstance of where the plaintiff resides, applies with special force when a private litigant tries to hale a sovereign into court across state lines. *See, e.g.*, *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 484 (5th Cir. 2008) (rejecting personal jurisdiction over an Arizona official based on a cease-and-desist letter sent to a Texas resident); *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992);

*Morningside Church, Inc. v. Rutledge*, No. 3:20-cv-05050-MDH, 2020 WL 5077255, at *3 (W.D. Mo. Aug. 27, 2020).

Here, OAG has in no way "invok[ed] the benefits and protections of [California's] laws." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011). It just filed suit in Texas under Texas law to protect Texas against a Delaware company that operates in Texas and happens to have its headquarters in California. "[I]t does not matter" that the litigation may implicate Yelp's decisions setting "its policies in" California because the lawsuit "is limited to [Texas]-related conduct." *Bulkley & Assocs., L.L.C. v. Dep't of Indus. Rels., Div. of Occupational Safety & Health of the State of Cal.*, 1 F.4th 346, 354 (5th Cir. 2021). The DTPA applies to "trade or commerce directly or indirectly affecting the people of this state," Tex. Bus. & Com. Code § 17.45(6), not out-of-state transactions affecting non-residents, *see, e.g., Deburro v. Apple, Inc.,* No. A-13-CA-784-SS, 2013 WL 5917665, at *5 n.5 (W.D. Tex. Oct. 31, 2013).

### 2. Yelp's claims do not arise out of or relate to actions of the Attorney General in California.

The only contact between the Attorney General and California was the Attorney General's decision to join 23 other state Attorneys General in sending a letter asking Yelp to take down its original misleading consumer notice. 4-ER-626–32. That is insufficient to create jurisdiction, and it creates a mismatch between the Attorney General's contact with this forum and the gravamen of Yelp's claims.

Standing alone, the Attorney General's decision to join 23 of his peers in sending a letter to Yelp is not a contact adequate to confer jurisdiction. Leaving aside that the

letter created no ripe legal obligations that could form the basis of a claim, *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1176 (9th Cir. 2022), this Court has held "that use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the state," *Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica*, 614 F.2d 1247, 1254 (9th Cir. 1980); *see also Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985). This rule applies even if the defendant "may have committed a tort in the exchange of correspondence," *Hunt v. Erie Ins. Grp.*, 728 F.2d 1244, 1248 (9th Cir. 1984), which Yelp does not allege as to the joint letter.

More fundamentally, the DTPA lawsuit did not arise from that letter. Just the opposite: The letter prompted Yelp to correct its consumer notice and thereby "*avoid* the possibility of unnecessary litigation." 3-ER-323 (emphasis added). What's left is the Attorney General's efforts *in Texas courts* to hold Yelp accountable for its interactions with *Texas consumers.* Yelp's decision to locate in California may have "forced [the Attorney General] to send mail to that State" regarding the fraud, but it does not mean that OAG has purposefully availed itself of any benefits of operating in California, let alone that this lawsuit arose out of that letter. *Hunt*, 728 F.2d at 1248.

### 3. Exercising personal jurisdiction over the Attorney General in these circumstances would be unreasonable.

Finally, exercising jurisdiction over the Attorney General would be unreasonable because of the extreme "conflict with the sovereignty of the defendant's state." *Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1270 (9th Cir. 1981). To

20

evaluate the final prong of the specific-jurisdiction analysis, this Court considers seven factors:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Freestream*, 905 F.3d at 607. Although Yelp has more than enough contacts with Texas to justify haling it into court there, in terms of pure convenience, the second factor and the "convenience" part of the sixth factor are a wash, as litigating in a foreign State is always burdensome on the foreign party. All remaining factors favor a finding that the exercise of jurisdiction in this instance would be unreasonable.

The first factor and the "effective relief" aspect of the sixth factors weigh against Yelp for reasons that have already been discussed. Specifically, as noted above, the Attorney General has no relevant contacts in California. *See supra* pp. 16–20. Moreover, Texas courts are presumed to provide an adequate forum to "safeguard [Yelp's] federal constitutional rights," *Middlesex Cnty.*, 457 U.S. at 431—a presumption that has already been proven true once in this case, *see supra* p. 2.

Whether considered under the third or fourth factor, the "sovereign status of a defendant" also "militates against the reasonableness of jurisdiction." *Marina Salina Cruz*, 649 F.2d at 1272; *see also PTI, Inc. v. Philip Morris Inc.*, 100 F. Supp. 2d 1179, 1189 n.8 (C.D. Cal. 2000). The typical rule is that a state agency should not "have to defend [its] attempt to enforce [state] laws in courts throughout the

21

nation." *Stroman Realty*, 513 F.3d at 487. Yelp seeks to upend that rule and force States to defend against constitutional challenges throughout the country, notwithstanding each State's "strong interest" "as a sovereign" "in not having an out-of-state court evaluate the validity of its laws," *id.*, and each State's disinterest "in adjudicating disputes over other states' statutes," *PTI, Inc.*, 100 F. Supp. 2d at 1189 n.8. Yelp's proposed expansion of personal jurisdiction would "greatly diminish the independence of the states." *Stroman Realty*, 513 F.3d at 487-88.

Finally, efficiency also favors Texas. It is true that California has an interest in providing a convenient forum to its own citizens, but it is equally true that Texas's courts are better positioned than California's to interpret Texas law. *See Leroy*, 443 U.S. at 186.

*   *   *

In sum, although the district court had discretion to resolve this case on grounds of *Younger* abstention, it could (and likely should) have dismissed Yelp's claims because Yelp cannot meet any of the three elements of specific personal jurisdiction.

## B. The Northern District of California is not a proper venue.

The Court can also affirm the district court's dismissal of Yelp's lawsuit because no "events or omissions giving rise to [Yelp's] claim occurred" in the Northern District of California, making it an improper venue. 28 U.S.C. § 1391(b)(2). As with personal jurisdiction, Yelp failed to address venue in its appellate briefing. But to the extent Yelp's venue arguments are preserved, they fail for largely the same reasons as its personal-jurisdiction arguments: Rather than explain what the *defendant* has done in the challenged forum, Yelp focused entirely on its allegation that *its* "harms"

22

were "felt" in California. 2-ER-110; 2-ER-159. Again, the Supreme Court has rejected this approach.

In *Leroy v. Great Western Union Corporation*, a Texas company sued Idaho officials in Texas federal court challenging an Idaho statute that restricted activities in Texas. 443 U.S. at 177. The company's claim was based on "action that was taken in Idaho by Idaho residents"; namely, "the enactment of the statute by the legislature, the review of [the Texas corporation's] filing, the forwarding of the comment letter by [an Idaho official], and the entry of the order postponing the effective date of the tender by [an Idaho official]—as well as the future action that may be taken in the State by its officials to punish or to remedy any violation of its law." *Id*. at 185–86. Based on these facts, the Court held that the suit had "only one obvious locus—the District of Idaho." *Id*. at 185.

Yelp's San Francisco headquarters do not create proper venue for the same reason that the Idaho statute's "impact" on the plaintiff was insufficient to keep *Leroy* in Texas. The Court stated that relying on where a law's effect was *felt* would be contrary to section 1391(b) because it "would subject the Idaho officials to suit in almost every district in the country." *Id*. at 186.

Congress's 1990 amendment to section 1391 does not change that result. That amendment clarified that venue can be proper in multiple districts. *Compare id*. at 178 n.8 (quoting the pre-amendment statute), *with* 28 U.S.C. § 1391(b)(2). But *Leroy* did not turn on whether the pre-amendment statute "adopt[ed] the occasionally fictive assumption that a claim may arise in only one district." *Leroy*, 443 U.S. at 184–85. *Leroy*'s analysis instead hinged on identifying the events that matter for venue—

the regulatory and enforcement actions taken by the defendant state officials. *Id.* at 185–86. After section 1391 was amended, moreover, this Court continued to apply *Leroy* to protect state agencies from suits brought in improper venues. *See e.g.*, *Dedication & Everlasting Love to Animals v. Pa. Bureau of Charitable Orgs.*, 101 F. App'x 224 (9th Cir. 2004) (citing *Leroy* and affirming the dismissal of a First Amendment challenge to a Pennsylvania law for improper venue).

The same reasoning applies here. The events giving rise to this lawsuit occurred in Texas, not the Northern District of California. Both the Attorney General (the defendant here) and OAG (the actual plaintiff in the putatively retaliatory lawsuit) reside in Texas. *See* Tex. Bus. & Com. Code § 17.46(a) (providing that deceptive trade practices are "subject to action by the consumer protection division"). The DTPA was passed and is enforced in Texas based on conduct in Texas. The DTPA enforcement action is being litigated in Texas following an investigation that occurred in Texas.

Furthermore, if Yelp's venue argument were accepted, it would lead to the result *Leroy* sought to avoid: state officials being subject to suit in every other State. OAG investigates potential DTPA violations that affect Texas consumers. Tex. Bus. & Com. Code § 17.45(6). The subject of a DTPA investigation, however, could be headquartered anywhere. Because that is no reason to subject a state agency to suit everywhere, *Leroy*, 443 U.S. at 186, this Court can affirm the dismissal below based on improper venue, *Simon v. DOJ*, No. 18-2206, 2019 WL 6124881, at *1 (1st Cir. June 26, 2019); *accord Ranza v. Nike, Inc.*, 793 F.3d 1059, 1076 (9th Cir. 2015).

## II. The District Court Was Correct to Abstain.

If the Court reaches the issue, it should hold that the district court did not abuse its discretion by abstaining under *Younger*. As the en banc Fifth Circuit recently explained, the *Younger*-abstention doctrine is animated by two principles: "equity and comity." *Daves v. Dallas County*, 22 F.4th 522, 547 (5th Cir. 2022). Courts in equity have long been forbidden to "restrain a criminal prosecution[] when the moving party has an adequate remedy at law and will not suffer irreparable injury." *Id.* (quoting *Younger*, 401 U.S. at 43–44). But the "even more vital consideration" is comity. *Id.* "[M]any federal constitutional rights are as a practical matter asserted typically as defenses to state-law claims." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 49–50 (2021). And to show a "'proper respect for state functions[]' and avoid[] interference 'with the legitimate activities of the States,'" federal courts do not restrain state-court enforcement proceedings of either criminal or quasi-criminal laws. *Daves*, 22 F.4th at 547 (quoting *Younger*, 401 U.S. at 44); *see also Middlesex Cnty.*, 457 U.S. at 431 (extending the *Younger* principle to certain civil actions).

The district court correctly concluded that *Younger* applies to OAG's civil enforcement action, and that Yelp has not met its "heavy" burden, 1-ER-007, to "establish[] that one of the exceptions applies," *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002).

### A. Absent an exception, *Younger* bars this dispute.

This Court has "articulated a four-part test to determine when *Younger* requires that federal courts abstain." *Duke v. Gastelo*, 64 F.4th 1088, 1094 (9th Cir. 2023). The Court examines whether (1) the federal action seeks relief that would "enjoin

25

or ha[ve] the practical effect of enjoining" (2) an "ongoing state judicial proceeding" that (3) "implicates important state interests" and (4) provides "an adequate opportunity . . . to raise constitutional challenges." *Id.* (cleaned up; collecting cases). "Abstention is only appropriate when all four requirements are met," *id.* (citing *Amerisource Bergen Corp. v. Roden*, 495 F.3d 1143, 1149 (9th Cir. 2007)), but once they are met a federal court must abstain unless a "narrow exception[] to the doctrine" applies, *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 620 (1975).

Yelp concedes that *Younger* applies to its request to halt the Attorney General's state-court enforcement action. 1-ER-006; *cf.* Opening Br. 17. It must. The *point* of this lawsuit was to enjoin an ongoing state judicial proceeding. 4-ER-614 (at ¶ 6). The subsequent dismissal of that proceeding is irrelevant because: (1) the *Younger* analysis is performed "[a]t the time of the filing in federal court," *Meredith v. Oregon*, 321 F.3d 807, 817 (9th Cir. 2003), and (2) OAG "has not exhausted [its] state appellate remedies," *Dubinka v. Judges of the Superior Court*, 23 F.3d 218, 223 (9th Cir. 1994) (citing *Huffman*, 420 U.S. at 607–11). OAG's state-court action seeks "to enforce its laws against socially harmful conduct" and thereby implicates an "important state interest." *Potrero Hills Landfill, Inc. v. County of Solano*, 657 F.3d 876, 883, 884 (9th Cir. 2011) (quotation marks omitted; collecting cases). Indeed, this Court has held for nearly 50 years that "[i]nvestigation and regulation of fraud" by a State's attorney general presents "an interest of the magnitude" that implicates *Younger*. *Worldwide Church of God, Inc. v. California*, 623 F.2d 613, 616 (9th Cir.

1980) (per curiam).[4] And this Court has already recognized that Yelp can raise constitutional defenses in a Texas DTPA action. *Twitter*, 56 F.4th 1177. As a result, absent an exception, this is a "textbook case for *Younger* abstention." *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1075 (6th Cir. 1998).

### B. No exception applies here.

To read Yelp's brief, one might think that circumvention of *Younger* is routine. It isn't. "[A]bsent satisfactory proof of . . . *extraordinary* circumstances," *Hicks*, 422 U.S. at 350 (emphasis added), the "normal thing" for a litigant in Yelp's position is to rely upon his defense in state court, *Lara*, 37 F.4th at 594.

As the Fifth Circuit recently put it, that approach "gives way once good faith does." *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1091 (5th Cir. 2023). But as the Fifth Circuit also emphasized, courts are "never eager to find bad faith, particularly of public servants," who enjoy a "longstanding presumption of regularity accorded to prosecutorial decisionmaking." *Id.* (quoting *Hartman*, 547 U.S. at 263). This Court has found that presumption overcome "only when the state proceeding is brought *with no legitimate purpose.*" *Lara*, 37 F.4th at 596 (quoting *McGowan*, 282 F.3d at 200).

---

[4] *See also Bristol-Myers Squibb Co. v. Connors*, 979 F.3d 732, 736 (9th Cir. 2020); *accord* Marty Gould, *The Conflict Between Forum-Selection Clauses and State Consumer Protection Laws: Why Illinois Got It Right in* Jane Doe v. Match.com, 90 Chi.-Kent L. Rev. 671, 686 (2015) (explaining the significant state interests in consumer protection laws).

27

The district court correctly held that Yelp cannot meet its high burden to overcome the presumption of regularity because it cannot show that the state-court proceeding was "brought without a reasonable expectation of obtaining a valid conviction." *Id.* at 596 (quoting *Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613, 621 (9th Cir. 2003)); *see also Kugler v. Helfant*, 421 U.S. 117, 126 n.6 (1975). This Court should decline Yelp's invitation to expand *Younger*'s bad-faith exception to apply any time a plaintiff alleges that an enforcement action was retaliatory because such an expansion would collapse the abstention question with the ultimate merits of Yelp's claims. Courts do not (and should not) so "trivialize the principles of *Younger*." *Hicks*, 422 U.S. at 350.

1. **The Attorney General has a reasonable expectation of success in his state-court DTPA enforcement action.**

The district court correctly concluded that Yelp has not demonstrated bad faith in accordance with the methodology used by this Court: demonstrating that OAG initiated its state-court proceeding "without hope of obtaining a valid conviction," *Perez*, 401 U.S. at 85, or a finding of liability, *Lara*, 37 F.4th 579, 596. *See* 1-ER-010 (finding that Yelp had not shown the DTPA action to be "facially meritless"). Such a proffer might involve, for example, demonstrating on-point authority foreclosing the Attorney General's theories under the DTPA. *Cf. In re George*, 322 F.3d 586, 591 (9th Cir. 2003) (per curiam) (stating that "[a]n appeal is frivolous if the results are obvious, or the arguments of error are wholly without merit"). Yelp can point to none—notwithstanding the numerous instances in which it accuses OAG of making

28

frivolous arguments. *See* Opening Br. 21, 23, 24, 27, 30, 31. Such accusations are as incorrect as they are inappropriate.

**a.** Yelp cannot show that OAG's claims are flawed, much less facially meritless. Take, for example, *Netflix*, where the Fifth Circuit examined factual findings by a district court that a state prosecutor had brought a child-pornography charge based on the performance of an actress the prosecutor knew to be an adult. 88 F.4th at 1094–95. The Fifth Circuit held that finding demonstrated bad faith because "there was never any remote chance of [the prosecutor] obtaining a valid child-pornography conviction against Netflix for a scene involving an adult." *Id.* at 1095. In other words, the law invoked by the prosecutor in the state-court proceeding was "clearly inapplicable." *Id.* (citation omitted).

Here, by contrast, it is difficult to see how the DTPA would not encompass the conduct Yelp is accused of. It prohibits disparagement of "the goods, services, or business of another by providing a false *or misleading* representation of facts." Tex. Bus. & Com. Code § 17.46(b)(8) (emphasis added). The Texas courts have never defined the exact distinction between a statement that is false and one that is merely misleading within the meaning of the DTPA, but federal courts interpreting the roughly analogous Lanham Act have long understood the Act to bar "claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998) (citing *inter alia Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)).

Often looking to federal law, moreover, Texas courts interpreting similar language in other contexts have "recognized that a statement may be prohibited if it is misleading or deceptive, even if not provably false." *Finder v. Tex. Med. Bd.*, No. 03-10-00004-CV, 2010 WL 4670510, at *10 (Tex. App.—Austin Nov. 18, 2010, pet. denied). Indeed, that is common sense because while "all the statements in a publication may be true when read in isolation, the publication may nevertheless convey a substantially false and defamatory impression by omitting material facts or suggestively juxtaposing true facts." *Turner v. KTRK TV, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000) (collecting cases applying this principle in a defamation case).

The Attorney General is confident that, as the state-court enforcement action proceeds, it will become clear that the original notice was not just generally misleading but false. Even on the evidence available at this preliminary posture, it is at the very least (as the district court concluded) "open to interpretation" whether the notice was true or misleading. ER010. Recall that the notice stated that crisis pregnancy centers "typically provide limited medical services and may not have licensed medical professionals onsite." Yet the record shows that crisis pregnancy centers often provide a range of medical services from licensed medical professionals. ER010; ER628–29. Indeed, "in many instances, crisis pregnancy centers are better positioned than any other facility to deliver those services." ER629–30.

**b.** Yelp is wrong to argue (*e.g.*, at 21–22) that OAG's claims were doomed to fail because the consumer notice was literally true in the abstract. Indeed, its argument would not just render the DTPA's prohibition against misleading statements a nullity in contravention of Texas law, *City of Dallas v. TCI West End, Inc.*, 463

30

S.W.3d 53, 57 (Tex. 2015) (per curiam); it would wreak havoc on numerous areas of federal law. For example, it is well established that "[e]ven if an advertisement is not literally false, relief is available under the Lanham Act § 43(a) if it can be shown that the advertisement has misled, confused, or deceived the consuming public." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1140 (1997). So too with federal securities laws, *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008), the False Claims Act, *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1170–71 (9th Cir. 2006), and various other anti-fraud statutes, *see e.g.*, *Rubio v. Capital One Bank*, 613 F.3d 1195, 1199–1200 (9th Cir. 2010) (interpreting the Truth in Lending Act).

Yelp's authority (at 23) is not to the contrary. In *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472 (Tex. 1995), a group of plaintiffs sued the Boys Club of Dallas under the DTPA for allegedly misrepresenting that a volunteer for the club "seemed to be okay." *Id.* at 480. True, the court did say that, "[a]bsent evidence that the defendant's statement was false, a DTPA action for misrepresentation cannot survive summary judgment." *Id.* But the Court's *holding* was that the factual assertion at issue was neither false *nor* misleading but rather "accurate in context"— namely, the context reflected that club representatives were explaining that they had "not witnessed any misconduct by [the volunteer]." *Id.* The statement Yelp latches onto is thus dicta because it was "not . . . necessarily involved in the case" and thus, under Texas law, "lacks the force of an adjudication." *Seger v. Yorkshire Ins. Co., Ltd.*, 503 S.W.3d 388, 399 (Tex. 2016). Yelp's citation to *Top Rank, Inc. v. Gutierrez*, 236 F.Supp.2d 637 (W.D. Tex. 2001), adds nothing to the analysis because it

31

contains only a drive-by reference to the *Boys Clubs* dicta, which was itself unnecessary to the federal magistrate judge's recommendation. *See id.* at 659.

**c.** Nor can Yelp evade the DTPA by characterizing its original notice (at 24) as "editorial content published by a disinterested information-sharing platform," or (at 26–28) as touching on a "topic of widespread public interest." Yelp's position ignores that "the First Amendment does not shield fraud." *Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612 (2003). "Untruthful speech, commercial or otherwise, has never been protected for its own sake." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 (1976). Thus, the First Amendment is "no obstacle" to state prohibitions regarding "deceptive or misleading" commercial speech because it "does not prohibit the State from insuring that the stream of commercial information flow cleanly as well as freely." *Id.* at 771–72. Simply put, misleading consumers is not protected speech.

Far from being "manifestly frivolous," Opening Br. 27, OAG's reliance on this principle to prosecute the state-court action is consistent with this Court's recognition that "the dissemination of false or misleading statements regarding the pregnancy related services" of crisis pregnancy centers is commercial speech. *First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1273 (9th Cir. 2017).[5] True, *Herrera* involved a different step in the online advertising process: Like many similar online platforms,

---

[5] Although *Herrera* referred to "limited service pregnancy centers" or "LSPCs," 860 F.3d at 1267, the Attorney General is unaware of any reason such a distinction in terms would lead to a difference in constitutional status. Rather than point to one, Yelp ignores *Herrera* entirely.

Yelp makes its money by selling eyeballs to advertisers. *Compare* Yelp, Inc. Form 10-K at 1 (Feb. 2023), *with* Megan Graham & Jennifer Elias, *How Google's $150 Billion Advertising Business Works*, CNBC (May 18, 2021), https://tinyurl.com/2n4ew4jj. First Resort, by contrast, "utilized paid-for online advertising services, such as Google Adwords, to reach its intended audience." *Herrera*, 860 F.3d at 1268. Whether one is the buyer or the seller of advertising does not, however, alter the constitutional calculus of whether the *speech* "does no more than propose a commercial transaction." *Id.* at 1272 (quoting *Hunt v. City of Los Angeles*, 638 F.3d 703, 715 (9th Cir. 2011)).

Admittedly, commercial speech more commonly *encourages* commercial transactions, whereas Yelp's notice *discourages* giving one's business to a crisis pregnancy center. 3-ER-374. But that is a distinction without a constitutional difference. Negative product advertising is, for one, common. *See* Gorkem Bostanci & Pinar Yildrium, *Does Negative Advertising Pay Off for Consumer Brands?*, Wall Street J. (Jan. 24, 2024), https://tinyurl.com/2jfc3apa. And, more fundamentally, while the fact that speech is an advertisement provides "strong support" for treating it as commercial speech for purposes of the First Amendment, that "characteristic need not 'necessarily be present in order for speech to be commercial.'" *Herrera*, 860 F.3d at 1272 (citations omitted). Nor is it dispositive that Yelp may not have been profit-motivated in discouraging its users from obtaining services from crisis pregnancy centers. *See Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 960 (9th Cir. 2012). Instead, as the federal courts have repeatedly emphasized, the commercial-speech analysis "is fact-driven, due to the inherent 'difficulty of drawing bright lines that

will clearly cabin commercial speech into a distinct category.'" *Herrera*, 860 F.3d at 1272 (quoting *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 284 (4th Cir. 2013)); *see also City of Cincinnati v. Discovery Network*, 507 U.S. 410, 419 (1993). Texas state court is, however, the appropriate forum to resolve such questions in the first instance.

*Bose Corporation v. Consumers Union of United States*, 466 U.S. 485 (1984), and *Lowe v. SEC*, 472 U.S. 181 (1985), do not support Yelp's position that OAG's state-court position is frivolous. *Contra* Opening Br. 26. *Bose Corporation* involved a product-disparagement claim arising from a review of a particular Bose loudspeaker. 466 U.S. at 487–88. Far from delving into the distinction between commercial and non-commercial speech, the court expressly declined to address the substantive First Amendment test. *Id.* at 513. Instead, the Court focused on the procedural question of whether the court of appeals applied the appropriate standard of review to a finding of actual malice. *Id.* at 493. *Lowe* similarly did not reach the distinction between commercial and noncommercial speech because the issue in that case—which addressed questions about the publication of "nonpersonalized" investment advice—was resolved on purely statutory grounds. 472 U.S. at 183, 211. As neither case addresses the line between commercial and noncommercial speech, neither can show that OAG's efforts to regulate Yelp's notice as commercial speech were "without hope of obtaining a valid" judgment. *Perez*, 401 U.S. at 85.

**d.** Indeed, even if Yelp's original consumer notice were noncommercial speech, that still would not demonstrate bad faith because it would not foreclose DTPA liability. After all, the Supreme Court—which does not take frivolous

34

questions—is actively deliberating not just the general framework to apply to a First Amendment claim's application to internet platforms hosting user-generated content generally, *NetChoice, LLC v. Paxton*, 144 S. Ct. 477 (2023), but also the specific question of how a State can regulate a platform's own addendums to user speech, *Moody v. Netchoice, LLC*, 144 S. Ct. 478 (2023). And apart from the complications associated with internet speech, it is well established that the First Amendment does not protect, for example, false statements made with malice—whether made in a commercial context, *cf. Bose Corp.*, 466 U.S. at 502, or otherwise, *New York Times v. Sullivan*, 376 U.S. 254, 279–80 (1964). Particularly when combined with the public statements issued by Yelp's CEO, Yelp's decision to continue publishing its consumer notice on the pages of crisis pregnancy centers *after* it was offered evidence that those centers employ licensed medical professionals and offer medical services, *see supra* p. 5, may meet even that high standard. At the very least, such an argument would not be frivolous, and thus Yelp has failed to show bad faith sufficient to escape *Younger* under this Court's test.

### 2. Yelp has not alleged any facts supporting its conclusory allegations about the Attorney General's subjective intent.

Perhaps recognizing no way forward under established avenues for proving bad faith, Yelp next asks this Court (at 19–29, 31–36) to adopt a *new* standard and permit a defendant to sidestep even a legally viable state-court proceeding based on allegations that the state-court litigation was brought "to retaliate for or deter the exercise of constitutionally protected rights." *Netflix*, 88 F.4th at 1091 (citation omitted). The Court should decline that invitation for two separate reasons.

35

**a.** The court should reject this argument at the outset because it improperly expands what the Supreme Court has recognized to be a narrow exception to *Younger*. As both Yelp and the district court observed, the Ninth Circuit has not recognized a *Younger* exception based on "retaliation for exercising constitutional rights." 1-ER-007; *see also* Opening Br. 19 (conceding that "[t]his Court has not decided in a published opinion whether retaliatory bad faith is exempt from *Younger*"); *Lara*, 37 F.4th at 596. The Court should resist Yelp's inducements to expand the bad-faith exception because "*Younger* and its progeny make it obvious that the 'bad faith' exception is narrow and should be granted parsimoniously." *Hefner v. Alexander*, 779 F.2d 277, 280 (5th Cir. 1985).

**b.** Even if the Court were inclined to recognize a new exception to *Younger*, the district court correctly concluded that "Yelp has not pointed to concrete evidence" of retaliatory motive. 1-ER-011. It has instead relied on speculation and inuendo based on little more than different enforcement priorities among different law-enforcement personnel. "[E]ntrenched in American law" is the notion that "the executive cannot address every violation of the laws," and thus the decision who and what to prosecute "is a vital aspect of the executive power." *Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122, 1136 (D.C. Cir. 2023) (quoting *McClesky v. Kemp*, 481 U.S. 279, 311–12 (1987)); *id.* at 1137–39 (summarizing the law regarding retaliatory prosecution). Although it is equally well established that "the executive's choice of prosecution targets" may not "infringe[] on constitutional rights," *id.* at 1137, "[i]t is generally to be assumed that state courts and prosecutors will observe constitutional limits," *Dombrowski v. Pfister*, 380 U.S. 479, 484–85

36

(1965). To "strike[] the proper balance between executive discretion and judicial enforcement of constitutional rights," *Frederick Douglass Found.*, 82 F.4th at 1137, the first—and sometimes the only—thing courts examine is whether "others similarly situated have not been prosecuted," *Seven Star, Inc. v. United States*, 933 F.2d 791, 793 (9th Cir. 1991) (per curiam).

Yelp concedes (at 34) that such traditional indicators of retaliatory animus "such as a series of prosecutions[,] are not present here." Indeed, the closest Yelp comes to providing a comparator is to cite (at 23) the fact that a different Attorney General successfully prosecuted a crisis pregnancy center for deceptively holding itself out as an abortion provider. *See Mother & Unborn Baby Care of N. Tex., Inc. v. Texas*, 749 S.W.2d 533 (Tex. App.—Fort Worth 1988, writ denied). But the gravamen of a retaliatory-prosecution claim is that the Attorney General's "decision turns on 'unlawful favoritism,' rather than lawful prosecutorial considerations." *Frederick Douglass Found.*, 82 F.4th at 1137 (quoting *Thomas v. Chi. Park Dist.*, 534 U.S. 316, 325 (2002)). It is hard to see how decisions that Texas Attorney General Maddox made before Attorney General Paxton graduated law school could be relevant to that question. But assuming they can, they tend to disprove any favoritism because both Texas Attorneys General prosecuted behavior that tended to mislead Texas consumers about the availability of reproductive health services—whether that prosecution helped or hurt pro-life crisis pregnancy centers.

Similar issues preclude any inference of bad faith that Yelp tries (at 31) to draw by noting that none of the other Attorneys General who joined in the effort to have the misleading consumer notice removed have opted to sue. *See also* 4-ER-626–32.

The entire point of *Younger* is that our federalist system functions "best if the States are left free to perform their separate functions in their separate ways." *Younger*, 401 U.S. at 44. Although the First Amendment does not allow an elected prosecutor to perform those functions in a way that retaliates against those who make statements with which he disagrees, it also does not require courts to be blind to the fact that different Attorneys General from different States who were elected by different constituencies to enforce different laws will often set different enforcement priorities. *Cf. Elrod v. Burns*, 427 U.S. 347, 367–68 (1976); *Stegmaier v. Trammell*, 597 F.2d 1027, 1040 (5th Cir. 1979). In other words, whether the Attorney General of Kentucky decided to bring an enforcement action under Kentucky law in Kentucky says nothing about whether the Attorney General of Texas acted for an improper purpose by bringing an enforcement action under Texas law in Texas.

Yelp similarly cannot overcome *Younger* by repeatedly invoking (*e.g.*, at 31–32, 35) the timing of the litigation. Specifically, Yelp asks the Court to infer malfeasance from the fact that after two Interim Attorneys General effectively placed a preexisting investigation on ice during the summer of 2023 while the Texas Legislature was considering charges of impeachment, Attorney General Paxton's "first public action" after being acquitted was to sue Yelp. By its nature, however, the appointment of an *Interim* Attorney General is short in duration and comes at a period of considerable instability—as Yelp seems to recognize, or at least not to dispute. *See* 2-ER-089 (at ¶ 10). One would expect a responsible public servant in that position to prioritize existing cases over new enforcement initiatives, and that upon acquittal, the duly elected Attorney General would return to his existing priorities. That is the case

in Texas. Since the Attorney General returned, he has announced dozens of major lawsuits or investigations—not counting other, less prominent efforts. *See generally* News Releases, Ken Paxton: Attorney General of Texas, https://tinyurl.com/4xww6z39 (last accessed April 11, 2024). As, by definition, only one could be first, there is nothing inherently suspect about the fact that it was the case against Yelp.

Yelp cannot bridge that gap by pointing (at 33) to the Attorney General's press release announcing the DTPA action. 2-ER-207. Issued as part of the Office's efforts to keep the public informed, the press release accurately conveyed that the Attorney General alleges that Yelp "violated Texas's Deceptive Trade Practices Act by appending inaccurate and misleading language to listings on pregnancy resource centers appearing in the search results on Yelp's app and website" and outlined the Attorney General's theory of the case, 2-ER-207—as does this brief, *see supra* pp. 29–35. True, the press release—which is not, after all, a legal brief—hypothesized that Yelp's unlawful behavior arose from its institutional animus against crisis pregnancy centers. 2-ER-207. But it issued a full-throated endorsement of Yelp's First Amendment rights, stating: "Yelp's CEO is entitled to his views on abortion." 2-ER-207. What he is not entitled to is to "use the Yelp platform to deceptively disparage facilities" because he disagrees with their mission. 2-ER-207. Because the First Amendment is not a license to publish misleading commercial speech, this accurate statement of the law hardly portrays a retaliatory animus. *Cent. Hudson Gas & Elec. Corp. v. Pub. Service Comm'n*, 447 U.S. 557, 566 (1980).

39

## C.  Neither discovery nor an evidentiary hearing was warranted.

Given the paucity of facts to support Yelp's innuendo and speculation, the district court was also right to reject Yelp's demand for a fishing expedition into the Attorney General's subjective motivation, *contra* Opening Br. 36–40, including a potential apex deposition of the Attorney General himself, *see id.* at 37. "Even in the criminal-law field, a selective prosecution claim is a *rara avis*" and requires the defendant "to introduce 'clear evidence' displacing the presumption that a prosecutor has acted lawfully." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 489–90 (1999) (citation omitted). Yelp is demanding discovery regarding the merits of that, which after all requires it "to prove the elements of retaliatory animus as the cause of the injury"—here the initiation of a state-law enforcement action. *Lacey v. Maricopa County*, 693 F.3d 896, 917 (9th Cir. 2012) (en banc). Moreover, it seeks to do so by conducting discovery at the highest level of the Executive Department of a sovereign State. Such a notion is antithetical to the principles of comity and federalism that *Younger* and its progeny were designed to protect. *See supra* p. 25.

Yelp's own authority demonstrates why the district court acted appropriately. For example, in *Kern v. Clark*, 331 F.3d 9 (2d Cir. 2003) (per curiam), an evidentiary hearing was warranted because the plaintiff backed up its allegations with supporting evidence in the form of an affidavit and "documentary corroboration." *Id.* at 12 n.3. *Kern* criticized the district court for not addressing the plaintiff's "evidence supporting [the] contention[] that the defendants have repeatedly and vigorously prosecuted weak cases against him at the behest of politically-connected complainants." *Id.* at

40

12. That corroborating evidence is what the district court found lacking here. 1-ER-011.

*Netflix* is perhaps more off point. True, the district court permitted discovery and an evidentiary hearing into the good faith of the Tyler County district attorney, who charged Netflix for violating Texas's child-obscenity laws for promoting *Cuties*, a controversial French film. *Netflix*, 88 F.4th at 1088. But Yelp neglects to mention that those proceedings took place only after facts suggesting bad faith came out after "[t]he district attorney moved for summary judgment" on numerous grounds. *See In re Babin*, No. 22-40306, 2022 WL 1658701, at *1–2 (5th Cir. May 25, 2022) (per curiam). The district attorney argued that the grand jury's intervening indictment broke the chain of causation for any potential constitutional violation arising from his initiation of criminal charges. *Id*. "In an attempt to respond to the motion's [merits] arguments, Netflix sought emergency discovery," *id.*, "on the basis that such information was needed due to Babin's invocation of the independent intermediary theory," *id.* at *2. The Fifth Circuit also permitted discovery on the merits before deciding the *Younger* issue because the district attorney failed to object on *Younger* grounds in his "initial opposition to Netflix's motion to compel grand jury discovery." *Id*. at *3. By contrast, the Attorney General promptly raised abstention, and Yelp offered only a single paragraph to justify its request for discovery and an evidentiary hearing. *See* 2-ER-116; *see also* 2-ER-165. Netflix thus in no way supports the notion that the district court abused its discretion in finding Yelp's discovery request unwarranted.

*Netflix* is also particularly off-point because the Fifth Circuit authorized the delay in resolving the *Younger* issue, in part, "because of the limits of what [discovery] has been ordered so far." 2022 WL 1658701, at *4. By contrast, Yelp seeks (at 37) to depose the Attorney General of Texas, the State's chief law enforcement officer who oversees approximately 4,000 employees, 750 attorneys, and 30,000 cases annually. *See https:// www.texasattorneygeneral.gov/about-office*. To ensure that such officials can do their jobs free from the "constant distraction" of deposition requests like Yelp's, courts—including this one—"have required that defendants show a special need or situation compelling such testimony." *In re U.S. Dep't of Educ.*, 25 F.4th 692, 701 (9th Cir. 2022) (quoting *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993)). As recounted above, Yelp has offered nothing more than its own speculation about why OAG might have chosen to pursue civil penalties arising from Yelp's unlawful consumer notice. *See supra* pp. 36–39. Such speculation does not establish a route around *Younger*, let alone entitle Yelp to an apex deposition.

## III. Yelp Is Not Entitled to a Preliminary Injunction.

Finally, even if Yelp *had* pleaded sufficient facts to establish jurisdiction and proper venue, the district court did not abuse its discretion in concluding Yelp has not established that it "is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20). *See also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (noting that any cases suggesting a lesser standard are no longer good law). This

Court considers all four factors on a sliding scale: "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

Yelp has failed to meet its burden to demonstrate a likelihood of proving that this lawsuit was initiated for an improper motive. For the reasons already stated, the First Amendment is not offended by the imposition of a civil penalty for misleading commercial speech. *See supra* Part II.A. Moreover, Yelp has failed to grapple with the complicated questions of causation presented by its theory. Specifically, by suing Attorney General Paxton in his official capacity, Yelp has sued the Office of the Attorney General. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *cf. Trump v. Hawaii*, 585 U.S. 667, 702 (2018) (distinguishing "the statements of a particular President" from "the authority of the Presidency"). But the statute authorizing the state-court action empowers "the consumer protection division," not OAG as a whole. Tex. Bus. & Com. Code § 17.61(a). "Thus, the causal connection required here is not merely between the retaliatory animus of one person and that person's own injurious action, but between the retaliatory animus of one person and the action of another." *Hartman*, 547 U.S. at 262. To survive a motion to dismiss—let alone be entitled to a preliminary injunction—Yelp must do more than note the Attorney General of Texas is pro-life, and that its CEO is publicly pro-choice. It must allege and ultimately prove that OAG instituted an enforcement action *because* of retaliatory animus on the part of the Attorney General rather than because its investigation of the facts of Yelp's conduct led it to conclude that Yelp had violated Texas law.

Yelp has also failed to show that it is likely to suffer cognizable, irreparable harm. *Younger* itself recognized that "[c]ertain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single" enforcement action, cannot "by themselves be considered 'irreparable' in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution." 401 U.S. at 46. Here, Yelp has already changed its notice to a message that the Attorney General has acknowledged is accurate. 2-ER-019; 2-ER-076; 3-ER-514. As a result, he is seeking monetary penalties only for false statements in the past and an injunction to prevent any that are materially similar to those of its original consumer notice. 3-ER-526. Whether the First Amendment permits him to obtain such relief must be litigated somewhere—whether it be here or in Texas. Although such litigation will impose costs, "litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 746 (2023) (quoting *FTC v. Standard Oil Co.,* 449 U.S. 232, 244 (1980)); *see also In re Marino*, 949 F.3d 483, 488 (9th Cir. 2020).

The remaining injunction factors also weigh against a preliminary injunction. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, J., in chambers) (quoting *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)); *see also, e.g.*, *Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997). And the interests of the public merge with that of the State. *See Nken v. Holder*, 556 U.S. 418, 435

44

45

(2009). Those interests are strong here, as OAG is trying to remedy the harm caused by deceptive trade practices perpetrated against potentially vulnerable individuals who were seeking accurate information regarding the availability of medical services.

## Conclusion

The Court should affirm the district court's judgment.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Aaron L. Nielson
Solicitor General

Brent Webster
First Assistant Attorney General

/s/ Lanora C. Pettit
Lanora C. Pettit
Principal Deputy Solicitor General
Lanora.Pettit@oag.texas.gov

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

J. Andrew Mackenzie
Assistant Attorney General

Counsel for Defendant-Appellee

### C ERTIFICATE OF S ERVICE

I hereby certify that on April 12, 2024, I electronically filed this response with the Clerk of the United States Court of Appeals for the Ninth Circuit served via this Court's CM/ECF system. Counsel in this case are registered CM/ECF users, and service will be accomplished through the CM/ECF system.

/s/ Lanora C. Pettit
L ANORA C. P ETTIT

### C ERTIFICATE OF C OMPLIANCE

I hereby certify that this response complies with (1) the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32-1(a) because it contains 12,285 words, excluding the parts of the response exempted by Rule 32(f); and (2) the typeface and style requirements of Rule 32(a)(5)(A) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same word program used to calculate the word count).

/s/ Lanora C. Pettit
L ANORA C. P ETTIT