No. 24-581

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

YELP INC.,

*Plaintiff-Appellant*,

v.

KEN PAXTON, ATTORNEY GENERAL OF THE STATE OF TEXAS,
in his official capacity,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of California
Case No. 3:23-cv-04977-TLT
The Honorable Trina L. Thompson

### YELP INC.'S REPLY BRIEF

| | |
|---|---|
| Adam S. Sieff | Ambika Kumar |
| DAVIS WRIGHT TREMAINE LLP | Sara A. Fairchild |
| 865 South Figueroa Street, 24th Floor | DAVIS WRIGHT TREMAINE LLP |
| Los Angeles, California 90017 | 920 Fifth Avenue, Suite 3300 |
| (213) 633-6800 | Seattle, Washington 98104 |
| adamsieff@dwt.com | (206) 757-8030 |
| | ambikakumar@dwt.com |
| Thomas R. Burke | sarafairchild@dwt.com |
| DAVIS WRIGHT TREMAINE LLP | |
| 50 California Street, 23rd Floor | Eric Feder |
| San Francisco, California 94111 | DAVIS WRIGHT TREMAINE LLP |
| (415) 276-6500 | 1301 K Street NW, Suite 500 East |
| thomasburke@dwt.com | Washington, D.C., 20005 |
| | (202) 973-4200 |
| | ericfeder@dwt.com |

*Attorneys for Plaintiff-Appellant Yelp Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................. ii

INTRODUCTION ...........................................................................................1

ARGUMENT ..................................................................................................3

I.  Paxton's Manifest Bad Faith Precludes *Younger* Abstention. ........................3

    A.  Paxton's Claim Against Yelp Is Knowingly Specious. ........................3

    B.  Paxton Targeted Yelp In Retaliation For Expressing Dissent. .............8

II.  The District Court Should Have At Minimum Given Yelp The Opportunity To Further Develop The Factual Record. ...............................12

III.  Yelp Properly Sued Paxton In California. ......................................................16

    A.  The District Court Had Personal Jurisdiction. ...................................16

        1.  Paxton purposefully directed his actions toward California. ...............................................................................17

        2.  Yelp's claims arise from Paxton's California-directed conduct. ...............................................................................21

        3.  No "compelling case" makes jurisdiction unreasonable. .........22

    B.  Venue is proper in the Northern District of California. ......................25

IV.  The District Court Should Have Granted The Preliminary Injunction. ........26

CONCLUSION ..............................................................................................28

FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS .............................29

CERTIFICATE OF SERVICE .........................................................................30

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*303 Creative LLC v. Elenis*,
  600 U.S. 570 (2023)......................................................................6

*Affinity Labs of Tex. v. Apple, Inc.*,
  2011 WL 1753982 (N.D. Cal. May 9, 2011).....................................14

*Applied Underwriters, Inc. v. Lara*,
  37 F.4th 579 (9th Cir. 2022) .........................................................9

*Ballard v. Savage*,
  65 F.3d 1495 (9th Cir. 1995) ....................................................22, 24

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
  223 F.3d 1082 (9th Cir. 2000) ......................................................17

*Banh v. Am. Honda Motor Co.*,
  2020 WL 4390371 (C.D. Cal. July 28, 2020).....................................24

*Bartnicki v. Vopper*,
  532 U.S. 514 (2001)......................................................................4

*Bose Corp. v. Consumers Union of U.S., Inc.*,
  466 U.S. 485 (1984)......................................................................5

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)......................................................................23

*Calder v. Jones*,
  465 U.S. 783 (1984)............................................................17, 18, 19

*Cmty. House, Inc. v. City of Boise*,
  490 F.3d 1041 (9th Cir. 2007) .......................................................27

*CTS, Inc. v. CFTC*,
  149 F.3d 679 (7th Cir. 1998) .........................................................5

*Dajani v. Dell Inc.*,
  2009 WL 815352 (N.D. Cal. Mar. 26, 2009) .....................................24

ii

*Def. Distributed v. Grewal*,
971 F.3d 485 (5th Cir. 2020) ........................................................18, 19, 20, 23

*Desert Palace, Inc. v. Costa*,
539 U.S. 90 (2003)......................................................................................15

*Dex Media W., Inc. v. City of Seattle*,
696 F.3d 952 (9th Cir. 2012) ........................................................................6

*DIRECTV, Inc. v. EQ Stuff, Inc.*,
207 F. Supp. 2d 1077 (C.D. Cal. 2002) .......................................................24

*Edward Lewis Tobinick, MD v. Novella*,
848 F.3d 935 (11th Cir. 2017) ......................................................................5

*El Paso Water Utils. Pub. Serv. Bd. v. Kenney*,
2023 WL 4612549 (W.D. Tex. July 18, 2023)...............................................19

*Elrod v. Burns*,
427 U.S. 347 (1976)...............................................................................12, 27

*First Resort, Inc. v. Herrera*,
860 F.3d 1263 (9th Cir. 2017) ...................................................................1, 7

*In re Ford*,
492 F.3d 1148 (10th Cir. 2007) ....................................................................8

*Frederick Douglass Found., Inc. v. District of Columbia*,
82 F.4th 1122 (D.C. Cir. 2023)......................................................................9

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*,
905 F.3d 597 (9th Cir. 2018) ..........................................................20, 21, 22

*Fund Tex. Choice v. Paxton*,
2023 WL 2558143 (W.D. Tex. Feb. 24, 2023) ..............................................18

*Grand River Enters. Six Nations, Ltd. v. Pryor*,
425 F.3d 158 (2d Cir. 2005) .......................................................................19

*Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*,
700 F. App'x 251 (4th Cir. 2017) ..................................................................5

iii

*U.S. ex rel. Hendow v. Univ. of Phoenix*,
    461 F.3d 1166 (9th Cir. 2006) .................................................................4

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
    72 F.4th 1085 (9th Cir. 2023) ...............................................................17

*Huffman v. Pursue, Ltd.*,
    420 U.S. 592 (1975).................................................................................8

*Ins. Co. of N. Am. v. Marina Salina Cruz*,
    649 F.2d 1266 (9th Cir. 1981) ...............................................................23

*Kalman v. Cortes*,
    646 F. Supp. 2d 738 (E.D. Pa. 2009)....................................................25

*Kentucky v. Graham*,
    473 U.S. 159 (1985)...............................................................................23

*Kern v. Clark*,
    331 F.3d 9 (2d Cir. 2003) ......................................................................13

*Khachatryan v. Blinken*,
    4 F.4th 841 (9th Cir. 2021) .....................................................................3

*Laub v. U.S. Dep't of Interior*,
    342 F.3d 1080 (9th Cir. 2003) ...............................................................13

*Leroy v. Great W. United Corp.*,
    443 U.S. 173 (1979)..........................................................................25, 26

*Lowe v. SEC*,
    472 U.S. 181 (1985)..................................................................................5

*Media Matters for Am. v. Paxton*,
    -- F. Supp. 3d ----, 2024 WL 1773197 (D.D.C. Apr. 12, 2024).............10, 16, 19

*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012) .................................................................27

*Miller v. Thane Int'l, Inc.*,
    519 F.3d 879 (9th Cir. 2008) ...................................................................4

iv

*Morill v. Scott Fin. Corp.*,
  873 F.3d 1136 (9th Cir. 2017) ...................................................................21

*Morningside Church, Inc. v. Rutledge*,
  2020 WL 5077255 (W.D. Mo. Aug. 27, 2020) ...................................................19

*Morningside Church, Inc. v. Rutledge*,
  9 F.4th 615 (8th Cir. 2021) ...................................................................19

*Myers v. Bennett Law Offs.*,
  238 F.3d 1068 (9th Cir. 2001) ...................................................................25

*NAACP v. Claiborne Hardware Co.*,
  458 U.S. 886 (1982)...................................................................6

*Netflix, Inc. v. Babin*,
  88 F.4th 1080 (5th Cir. 2023) ...................................................3, 13, 15

*Newton v. Thomason*,
  22 F.3d 1455 (9th Cir. 1994) ...................................................................26

*Org. for a Better Austin v. Keefe*,
  402 U.S. 415 (1971)...................................................................6

*Panavision Int'l, L.P. v. Toeppen*,
  141 F.3d 1316 (9th Cir. 1998) ...................................................21, 22

*In re Paxton*,
  60 F.4th 252 (5th Cir. 2023) ...................................................................14

*Reynolds v. Murphy*,
  188 S.W.3d 252 (Tex. App. 2006)...................................................................5

*Rubio v. Cap. One Bank*,
  613 F.3d 1195 (9th Cir. 2010) ...................................................................4

*Seattle-First Nat'l Bank v. NLRB*,
  638 F.2d 1221 (9th Cir. 1981) ...................................................................15

*Serv. Women's Action Network v. Mattis*,
  320 F. Supp. 3d 1082 (N.D. Cal. 2018)...................................................................25

v

*Seven Star, Inc. v. United States*,
   933 F.2d 791 (9th Cir. 1991) ...................................................................9

*Sierra Pac. Airlines v. Dallas Aerospace*,
   6 F. App'x 606 (9th Cir. 2001) ..............................................................24

*Smith v. Hightower*,
   693 F.2d 359 (5th Cir. 1982) ...................................................................9

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (1997)...............................................................................4

*Stegmaier v. Trammell*,
   597 F.2d 1027 (5th Cir. 1979) ...............................................................12

*Stroman Realty, Inc. v. Wercinski*,
   513 F.3d 476 (5th Cir. 2008) .................................................................20

*Twitter, Inc. v. Paxton*,
   2021 WL 1893140 (N.D. Cal. May 11, 2021), *aff'd on other grounds*,
   56 F.4th 1170 (9th Cir. 2022) ..............................................2, 3, 16, 19

*In re U.S. Dep't of Educ.*,
   25 F.4th 692 (9th Cir. 2022) ..................................................................14

*Vos v. City of Newport Beach*,
   892 F.3d 1024 (9th Cir. 2018) ...............................................................16

*W. Va. State Bd. of Educ. v. Barnette*,
   319 U.S. 624 (1943)................................................................................12

*Walden v. Fiore*,
   571 U.S. 277 (2014)................................................................................18

*Warmenhoven v. NetApp, Inc.*,
   13 F.4th 717 (9th Cir. 2021) ..................................................................16

*Warsoldier v. Woodford*,
   418 F.3d 989 (9th Cir. 2005) .................................................................27

*Where Do We Go Berkeley v. Cal. Dep't of Transp.*,
   32 F.4th 852 (9th Cir. 2022) ..................................................................26

vi

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
   433 F.3d 1199 (9th Cir. 2006) .......................................................17, 20

*Ex parte Young*,
   209 U.S. 123 (1908)..................................................................23

*Younger v. Harris*,
   401 U.S. 37 (1971).................................................................*passim*

**Statutes**

28 U.S.C. § 1391 .......................................................................25

Cal. Code Civ. Proc. § 425.16 ................................................23

Tex. Bus. & Com. Code
   § 17.45(6)...........................................................................7
   § 17.46(a) .......................................................................1, 7

**Constitutional Provisions**

U.S. Const., amend. I .............................................................*passim*

**Other Authorities**

C. Wright & A. Miller, 14D Fed. Prac. & Proc. Juris. § 3802 (4th ed.)..................26

Elena Kagan, *A Libel Story: Sullivan Then and Now*, 18 LAW & SOC.
   INQUIRY 197 (1993) ............................................................27

**INTRODUCTION**

Attorney General Paxton does not deny what the district court considered the "strong" evidence of his bad faith. Among other things, Paxton intended to and did attack Yelp for publishing a "literally true" advisory that crisis pregnancy centers "typically provide limited medical services and may not have licensed medical professionals onsite." He did so without evidence Yelp's advisory misled any consumer—the sine qua non of an action under the Texas Deceptive Trade Practices Act (DTPA)—and sued Yelp in Texas many months after a cursory "investigation," still longer after Yelp amended the advisory to his satisfaction, and just days after Paxton was reinstated from impeachment. Despite this and other evidence, Paxton asks the Court to deny Yelp a federal forum to vindicate its First Amendment rights. The Court should refuse.

*First*, the district court erred by "reluctantly" abstaining under *Younger v. Harris*, 401 U.S. 37 (1971). Paxton agrees *Younger* abstention is improper where the government pursues objectively specious claims. *See* Paxton Br. 21. Yet he sued Yelp under the DTPA—which applies only to the "conduct of any *trade* or *commerce*," Tex. Bus. & Com. Code § 17.46(a) (emphasis added)—to punish admittedly true noncommercial speech. Paxton did this without legal precedent and knowing none exists, as he has correctly argued in other cases that the First Amendment absolutely protects such speech. He continues to pursue this baseless

1

theory in Texas state courts, where he has appealed a trial court's order dismissing the action. *Younger* also does not apply because Paxton's suit retaliates against Yelp for exercising its First Amendment rights. Paxton urges the Court to reject this independent exception to *Younger* abstention, despite uniform national authority, and fails to meaningfully dispute Yelp's evidence of retaliation, none of which he can deny. The district court found that evidence "strong," "persuasive," and sufficient to conclude Paxton did not act "entirely in good faith." That was enough to exercise jurisdiction.

*Second*, even if Yelp's jurisdictional evidence were somehow inadequate, the district court should have afforded Yelp the opportunity to discover and develop more of it. Paxton speculates that Yelp will want his deposition. But Yelp has not asked for that and may not need it. Yelp has already adduced enough evidence of bad faith to justify not only federal jurisdiction but injunctive relief, so any doubts should be resolved with limited discovery.

*Third,* Paxton's renewed personal jurisdiction and venue challenges lack merit. The Court has personal jurisdiction over the Attorney General because he has (again) "engaged in retaliatory conduct expressly aimed at chilling the speech of a California resident" to a California audience. *Twitter, Inc. v. Paxton*, 2021 WL 1893140, at *2 (N.D. Cal. May 11, 2021), *aff'd on other grounds*, 56 F.4th 1170 (9th Cir. 2022) (en banc). And venue is proper because Yelp has and will continue to

2

suffer injuries in the Northern District of California, where it is headquartered. *Id.*

**Finally**, Yelp has satisfied the remaining injunctive relief factors. On the merits, Yelp showed that the First Amendment protects its speech and bars Paxton's action. It has also shown that Paxton's conduct was motivated by retaliation and undisputedly would deter (and has deterred) the exercise of First Amendment rights. Unrebutted evidence shows Yelp will continue to suffer irreparable injury without an injunction, and that equity and the public interest support such relief.

Federal courts exist in no small part to ensure federal rights are shielded from the predations of malevolent state officials. The Court should reverse, exercise jurisdiction, and enter or direct the district court to enter a preliminary injunction.

## ARGUMENT

### I. Paxton's Manifest Bad Faith Precludes *Younger* Abstention.

Although Paxton claims *Younger* prohibits federal jurisdiction, he concedes that *Younger* "gives way once good faith does." *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1091 (5th Cir. 2023) (quoted Paxton Br. 27). Good faith has given way here.

#### A. Paxton's Claim Against Yelp Is Knowingly Specious.

Paxton does not dispute that prosecutions based on "clearly inapplicable" laws are brought in bad faith that precludes *Younger* abstention. *Netflix*, 88 F.4th at 1095 (Br. 21); *see also Khachatryan v. Blinken*, 4 F.4th 841, 852-53 (9th Cir. 2021) (Br. 21). He also does not dispute that the First Amendment absolutely protects truthful

3

speech on public issues. *See Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) (Br. 23, 41). And he admits that Yelp's notice—stating CPCs "***typically*** provide limited medical services and ***may not*** have licensed medical professionals onsite"—is literally true, Paxton Br. 29-30 (emphasis added). Despite this, Paxton claims the DTPA applies because Yelp's notice is misleading commercial speech. *See* Paxton Br. 30-34. It is neither.

First, the notice is noncommercial speech—and Paxton knows it. Paxton admits that commercial speech "does no more than propose a commercial transaction." Paxton Br. 33 (citation omitted). And the cases he cites all concern advertisements or other solicitations that allegedly deceived consumers. *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1140 (1997) (Paxton Br. 31) (advertisement); *see also Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008) (Paxton Br. 31) (investor prospectus); *Rubio v. Cap. One Bank*, 613 F.3d 1195, 1199-1200 (9th Cir. 2010) (Paxton Br. 31) (solicitation).[1]

Even if Paxton had identified a single misled customer (he has not), Yelp's notice is nothing like the speech in these cases. No one paid Yelp to publish the notice, which does not propose any commercial transaction, or advertise or solicit

---

[1] Paxton's citation to *U.S. ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1170-71 (9th Cir. 2006), is even further afield. *Hendow* holds that deceptive but not literally false statements are actionable under the False Claims Act if used to secure government benefits under false pretenses. Yelp has done nothing of the sort.

anything. *See* Br. 25-28. Instead, it provides information about the services offered by certain businesses listed in its online directory. Like other statements about consumer products and services, the notice expresses the kind of protected noncommercial speech the Supreme Court addressed in *Lowe v. SEC*, 472 U.S. 181, 210 n.58 (1985) and *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 513 (1984) (discussed Br. 25-27).

Although Paxton claims *Lowe* is distinguishable because it was decided on statutory grounds, *see* Paxton Br. 34, *Lowe*'s reasoning and interpretation of *Bose* supports the conclusion that "advice and information about" products and services "does not constitute commercial speech." *Reynolds v. Murphy*, 188 S.W.3d 252, 265 n.19 (Tex. App. 2006) (citations omitted) (First Amendment barred claim against publisher of newsletter containing investment advice). And that is the rule adopted by the majority of appellate and trial courts. *See Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, 700 F. App'x 251, 259 (4th Cir. 2017); *Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 951 (11th Cir. 2017); *CTS, Inc. v. CFTC*, 149 F.3d 679, 686 (7th Cir. 1998) (citing cases).

It is irrelevant whether Yelp's goal was to "discourage[]" users from patronizing CPCs. Paxton Br. 33. Even if that were Yelp's intent—and unrebutted

5

evidence shows it was not[2]—such speech is also noncommercial. *See Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971) (leafletting discouraging dealing with particular real estate broker was protected); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 910-12 (1982) (non-violent commercial boycott protected).

Paxton also suggests Yelp's notice is commercial speech because Yelp "makes its money by selling eyeballs to advertisers." Paxton Br. 32-33. He knows this, too, is wrong. Not only has the Supreme Court resoundingly and repeatedly rejected that argument, *e.g., 303 Creative LLC v. Elenis*, 600 U.S. 570, 600-01 (2023), it has done so *at Paxton's urging*. Just last year, Paxton argued in an amicus brief that "profit motive" did "not transform [such] speech into 'commercial conduct.'" Br. of Tex. et al. as Amici in Supp. of Pet., *303 Creative LLC v. Elenis*, 2021 WL 5053177, at *17 (U.S. filed Oct. 28, 2021). So, too, in *Dex Media West, Inc. v. City of Seattle*, 696 F.3d 952 (9th Cir. 2012) (Br. 27)—a case Paxton does not even attempt to distinguish—this Court held that the "full First Amendment protection of newspapers, magazines, television shows, radio programs, and the like demonstrates that the inclusion of commercial material does not support treating those publications or broadcasts as commercial speech." *Id.* at 963.

---

[2] Yelp's Vice President of User Operations testified the company's goal was to mitigate consumer confusion caused by CPCs that mislead the public about what they offer. 3-ER-335–36.

To support his argument, Paxton misrepresents *First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1273 (9th Cir. 2017), as holding that any false or misleading statement about "pregnancy-related services" is commercial speech. Paxton Br. 32. But Paxton omits the rest of that cited sentence, which confines the holding to CPC's statements about their services "in a marketplace for those services"—i.e., to speech "directed at providing services rather than toward an exchange of ideas." 860 F.3d at 1273 (cleaned up). The opposite is true here: Yelp's notice does not advertise anything and is aimed at an exchange of ideas.

Finally, Paxton argues for the first time that he may prosecute Yelp even for noncommercial speech. Paxton Br. 35. Nonsense. The DTPA is confined to "acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code § 17.46(a), which means "advertising" or other conduct "offering" goods or services for sale, Tex. Bus. & Com. Code § 17.45(6). This tracks the Supreme Court's definition of "commercial speech" that Paxton acknowledges, Paxton Br. 33, and aligns with his admission below that the "commercial speech" inquiry is "highly similar" to the question of whether speech was made "in the conduct of any trade or commerce." 2-ER-282. Even accepting Paxton's new view, the defamation cases he cites necessarily concern "false" statements of fact made with "actual malice," Paxton Br. 34, an irrelevant body of law since—as Paxton admits—Yelp's notice is "literally true." 2-ER-18; 2-ER-20–21; *accord* Paxton Br. 29, 30.

7

Even if Yelp's advisory were commercial speech (it is not), the DTPA claim would still be objectively meritless because the advisory is not misleading. The unrebutted evidence shows that CPCs **do** "typically provide limited medical services" and "**may not** have licensed medical professionals onsite." *See* Br. 1. As Paxton does not dispute—and as his own study shows, 4-ER-629—at most a quarter of CPCs have a registered nurse or doctor onsite, more than two-thirds provided only "limited medical services," and many provide no medical services at all. 3-ER-432; 3-ER-575; 3-ER-578.

Paxton appears to have abandoned his argument to the district court that Yelp should have appended similar notices to pages for abortion providers, even though under California law these providers are required to have medical staff onsite. *See* 3-ER-521–25 ¶¶ 19-24, 28 (discussed Br. 28-30). His "shifting explanations" further "suggests bad faith." *Cf. In re Ford*, 492 F.3d 1148, 1156 (10th Cir. 2007).

## B.    Paxton Targeted Yelp In Retaliation For Expressing Dissent.

Even if Paxton's prosecution were not so objectively meritless as to infer bad faith, *Younger* abstention does not apply because the suit was brought in retaliation for Yelp's protected speech.

Paxton's principal response is to deny that retaliation for the exercise of constitutional rights constitutes an exception to *Younger*. *See* Paxton Br. 36. But *Younger* extends only to the "legitimate activities of the States[]," *Huffman v.*

*Pursue, Ltd.*, 420 U.S. 592, 601 (1975), and the Second, Fifth, Eighth, and Eleventh Circuits (and this Court, in an unpublished opinion) have all recognized that abstention is improper in cases involving retaliation. *See* Br. 18-20; ACLU Br. 10-12; Paxton Br. 9 n.2. Paxton cites no authority from any court rejecting this approach. Recognizing it here would align this Court with circuit courts it already relies upon for "guidance" in "determining what constitutes an allegation of 'bad faith.'" *Applied Underwriters, Inc. v. Lara*, 37 F.4th 579, 596 (9th Cir. 2022).

Paxton appears to claim that even under this approach, Yelp cannot show retaliation unless there is evidence that he displayed "favoritism" through "selective enforcement" by sparing "similarly situated" potential targets. *See* Paxton Br. 36-40. Not so. The cases he cites have nothing to do with *Younger* or First Amendment retaliation. *Frederick Douglass Foundation, Inc. v. District of Columbia*, 82 F.4th 1122 (D.C. Cir. 2023) (Paxton Br. 36-37), concerned selective enforcement of a vandalism ordinance. And *Seven Star, Inc. v. United States*, 933 F.2d 791, 793 (9th Cir. 1991) (Paxton Br. 37), concerned selective enforcement of immigration laws.

Nor does Paxton meaningfully dispute Yelp's "persuasive" allegations and "strong circumstantial evidence," 1-ER-8–11, that "retaliation was a major motivating factor and played a prominent role in the decision to prosecute," *Smith v. Hightower*, 693 F.2d 359, 367 (5th Cir. 1982). Beyond Paxton's pursuit of a meritless claim, Yelp identified seven indicia of retaliation: Paxton (i) sued nine

months after Yelp replaced its notice; (ii) was the only one of 24 state attorneys general who initially complained about the notice to sue Yelp after it was replaced; (iii) conducted minimal (if any) investigation and found no evidence of consumer confusion; (iv) received just one complaint from a single unnamed CPC, with which Paxton may have a personal affiliation (*see* Br. 32 n.6); (v) sued immediately upon reinstatement from impeachment; (vi) justified his suit by making clear its nexus to Yelp's CEO's pro-choice advocacy; and (vii) routinely uses his office to retaliate against companies that express different viewpoints. *See* Br. 31-35. In fact, in April, another federal court enjoined Paxton from pursuing a DTPA action against a non-profit publisher in retaliation for documenting the rise in violent right-wing extremism on the social media platform X. *See Media Matters for Am. v. Paxton*, -- F. Supp. 3d ----, 2024 WL 1773197, at *17-20 (D.D.C. Apr. 12, 2024).

Paxton ignores some of these indicia and tries to minimize the rest. For example, Paxton claims Yelp cannot avoid abstention by "invoking the timing of the litigation" because "[o]ne would expect" the interim Attorneys General to put the investigation "on ice" while Paxton was suspended. Paxton Br. 38. There is no record evidence for this "expectation,"[3] and even if true, it is not even half the story.

---

[3] Yelp's expectation is that the interim Texas Attorneys General would continue without interruption any good faith investigations involving *actual* deceptive trade practices, including to obtain and preserve relevant evidence, and not "ice" them simply because Paxton was not in office.

10

Undisputedly, Paxton did not receive a single consumer complaint or identify a single instance of consumer confusion before deciding to sue Yelp. Nor did he appear to ever look for one. His investigation comprised the review of correspondence about a *single* unidentified CPC—a CPC with whom he does not disavow a personal affiliation—that allegedly complained two months *after* Yelp replaced the at-issue notice. Paxton's own investigator did not know that suit would be filed until—*months* after the "investigation" and days before Paxton's return to office—he "became aware" that the suit was likely. 2-ER-90 ¶ 13. This evidence is alone sufficient to show retaliation, particularly when viewed against Paxton's (also undisputed) pattern of retaliation against other dissenters, Br. 31-35.

Paxton's claim that his press statement was just meant to "keep the public informed," Paxton Br. 39, is similarly incredible. As Paxton admits, the statement discusses Yelp's CEO's views on abortion that are irrelevant to the truth or falsity of Yelp's advisories. The statement appears on a portion of Paxton's website called "Choose Life," and the "related news" concerns *not* alleged violations of the DTPA by other businesses, but Paxton's widespread use of the courts to impose his view of abortion on everyone else—such as by joining efforts to stop Title X funds from subsidizing abortion care, or to block the U.S. Department of Health and Human Services from requiring hospitals to provide stabilizing abortion care to preserve the health of a pregnant person. *See* 3-ER-530–42.

11

As for the fact that Paxton was the only state attorney general to sue Yelp after joining 23 of his peers in a letter that successfully pressured Yelp into replacing its notice, Paxton claims he is allowed to "set different enforcement priorities." Paxton Br. 38. Yelp agrees. But this fact nonetheless corroborates a retaliatory motive. The cases he cites on this point—*Elrod v. Burns*, 427 U.S. 347, 367-68 (1976) and *Stegmaier v. Trammell*, 597 F.2d 1027, 1040 (5th Cir. 1979)—have nothing to do with *Younger*. Instead, they recognize elected officials' limited prerogative to remove dissident staffers as a basis to compel fidelity to a particular governing vision. An elected prosecutor, however, has no comparable power to punish *citizen* dissent. *See W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). Paxton has repeatedly endorsed this basic principle when it aligns with his political views. *See* Br. 30 (citing recent briefs Paxton has filed defending this position). His deviation here indicates knowledge of wrongdoing and confirms his animus.

The district court found all of this circumstantial evidence of Paxton's bad faith "strong," and was unconvinced that Paxton "acted entirely in good faith." 1- ER-11. That was more than enough to exercise jurisdiction consistent with *Younger*.

## II.     The District Court Should Have At Minimum Given Yelp The Opportunity To Further Develop The Factual Record.

Even if the district court had been less convinced, the proper remedy would have been to grant Yelp's request to take limited discovery and hold an evidentiary

12

hearing. By denying the request for a hearing and ignoring the request for discovery, the district court erred.

Paxton does not dispute that a district court abuses its discretion if it fails to permit discovery where, as here, "pertinent facts bearing on the question of jurisdiction are controverted[.]" *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003); *see also* Br. 36-37 (collecting cases). That principle alone mandates reversal of the district court's decision. Paxton pushes two arguments, neither of which compels a different result.

First, Paxton fails to distinguish this case from those where district courts have ordered discovery into bad faith under *Younger* (or were reversed for failing to do so). Paxton Br. 40-42. He claims the plaintiff in *Kern v. Clark*, 331 F.3d 9, 12 n.3 (2d Cir. 2003), had "backed up its allegations" with affidavits and other documentary "supporting evidence," Paxton Br. 40 (quoting that case), but Yelp did the same. *See* 2-ER-117–42; 2-ER-166–257; 2-ER-333–610 (showing Yelp submitted three affidavits from two witnesses and 386 pages of exhibits). Paxton likewise gets lost in the weeds of the procedural history of *Netflix*, 88 F.4th at 1080 (Paxton Br. 41-42), ignoring that the district court there determined the prosecutor's bad faith *after* the court allowed discovery and held an evidentiary hearing. *Id.* at 1091. In any event, even if these cases were distinguishable, neither of them, nor any other authority Paxton cites, supports the wholesale denial of discovery, especially where

13

the court has already found evidence of bad faith "persuasive" and "strong." 1-ER-009, 1-ER-011. Discovery was unnecessary given the strength of that evidence, and at the very least, the district court should have allowed discovery.

Paxton's second gambit attacks a strawman, as he argues that the district court properly ignored Yelp's request for discovery because Yelp had not sufficiently shown a "special need" to conduct a deposition of Paxton himself. Paxton Br. 40, 42. But Yelp never asked for a deposition of Paxton and may not need one. And Paxton cites no authority for the proposition that—before taking *any* discovery—a litigant must satisfy the standard to take a so-called "apex deposition." The jurisprudence—including the authority Paxton invokes—is exactly the opposite: the restriction on taking the deposition of the head of a government agency presumes that the party seeking the deposition has had the opportunity to pursue "other means of discovery" first. *In re U.S. Dep't of Educ.*, 25 F.4th 692, 704 (9th Cir. 2022); *cf. In re Paxton*, 60 F.4th 252, 258 (5th Cir. 2023) (deposition of Paxton was not warranted, but only because discovery was permitted "from other witnesses" first).

This is standard practice. District courts "regularly require interrogatories, requests for admission, and depositions of lower level employees before allowing the deposition of an apex witness." *Affinity Labs of Tex. v. Apple, Inc.*, 2011 WL 1753982, at *6 (N.D. Cal. May 9, 2011) (collecting cases). And that is precisely what Yelp proposed here, including identifying and questioning "the CPC that

14

allegedly contacted Paxton's office" and "cross examin[ing] Paxton's investigator." Br. 37. Even the process of "ask[ing] Paxton why he suddenly pursued this action after months of inaction" (*id.*) would not necessarily require a deposition, since the issue could be explored through written interrogatories, requests for admission, and document discovery. Of course, as in *Netflix*, live testimony from Paxton himself may prove appropriate. But the mere possibility that such a deposition may be necessary does not justify denying Yelp any discovery at all.

Ultimately, Paxton tries to dismiss Yelp's evidence as "nothing more than its own speculation about why OAG might have chosen to pursue civil penalties." Paxton Br. 42. But a litigant cannot avoid a finding of bad faith—or even any inquiry into the question—by pointing to a lack of direct evidence of his subjective intent. *See* Br. 35; *see also* ACLU Br. 14-15. Paxton does not dispute that "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence," or that a litigant's "motive must of necessity be ascertained from circumstantial evidence," given the reality that "it would be extraordinary for a party directly to admit a 'bad faith' intention." Br. 35 (quoting *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) and *Seattle-First Nat'l Bank v. NLRB*, 638 F.2d 1221, 1225 (9th Cir. 1981)). Far from idle "speculation," the district court found that Yelp had presented "strong circumstantial evidence" of

Paxton's bad faith. *See* 1-ER-011. If that evidence did not answer the question, the opportunity for discovery was necessary.

## III. Yelp Properly Sued Paxton In California.

Paxton also attempts to avoid federal review on personal jurisdiction and venue grounds. Although he claims Yelp waived its opposition to these arguments by not preempting them in its opening brief, Paxton Br. 14 & n.3, 22, this Court has repeatedly rejected that "groundless" position. *Warmenhoven v. NetApp, Inc.*, 13 F.4th 717, 728 (9th Cir. 2021) (citation omitted); *see also Vos v. City of Newport Beach*, 892 F.3d 1024, 1035 n.10 (9th Cir. 2018). Paxton's personal jurisdiction and venue arguments are groundless, as well.

### A. The District Court Had Personal Jurisdiction.

Paxton claims the district court lacked personal jurisdiction, Paxton Br. 14, an argument he has made and lost before. At least two other courts have held Paxton subject to personal jurisdiction in lawsuits, like this one, filed to enjoin him from using Texas enforcement actions to retaliate against plaintiffs in other states for protected speech. *See Twitter*, 2021 WL 1893140, at *2 ("retaliatory conduct expressly aimed at chilling the speech of a California resident" subjected Paxton to jurisdiction in California); *Media Matters*, 2024 WL 1773197, at *9-13 (chilling expressive activities of D.C. resident subjected Paxton to personal jurisdiction in D.C.). The same is true here.

16

The parties agree that specific personal jurisdiction exists if (i) Paxton purposefully directed his activities toward the forum, (ii) the claim arises out of or relates to his forum-related activities, and (iii) exercising jurisdiction is reasonable. *See* Paxton Br. 16-17; *accord Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090-91 (9th Cir. 2023) (citation omitted). All three requirements are satisfied.

### 1. Paxton purposefully directed his actions toward California.

Under *Calder v. Jones*, 465 U.S. 783 (1984), a defendant purposefully directs his actions where he (1) commits an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (citation omitted). Paxton's conduct meets this test.

There is no dispute Paxton intentionally initiated an enforcement action against Yelp, knowing Yelp is a California resident, and demanding that Yelp alter its speech—including *speech in California*. *See* 3-ER-373–79 (letter to Yelp); 3-ER-386 (notice of intent to sue unlimited to Texas CPCs); 3-ER-526 ¶ 32 (Texas petition seeking to enjoin Yelp from posting information on CPC listings); 2-ER-169 ¶ 8 (7% of CPC pages on Yelp are for centers in California). California is "the focal point" of Paxton's conduct and the harm suffered. *Calder*, 465 U.S. at 789; *see also, e.g.*, *Yahoo!*, 433 F.3d at 1209 (lawsuit to compel plaintiff to act in California was an "intentional act" "expressly aimed" at California); *Bancroft &*

17

*Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (letter seeking to interfere with California plaintiff's rights established jurisdiction there).

Paxton claims "th[is] lawsuit is limited to Texas-related conduct." Paxton Br. 17, 19. It is not. Paxton's notice of intent to sue concerned all "Yelp business pages of pregnancy resource centers," 3-ER-386, and the Texas petition seeks to enjoin Yelp's "misleading" posts "regarding pregnancy resource centers"—without any geographical limitation. 3-ER-526 ¶ 32. The district court also found that neither Paxton's letter nor his threatened injunction was limited to Texas. 1-ER-005. That the DTPA is a Texas statute, Paxton Br. 19-20, does not change this conclusion. Paxton has never disavowed his effort to enforce the DTPA outside Texas and has attempted just that in trying to enforce Texas's restrictive abortion laws. *Fund Tex. Choice v. Paxton*, 2023 WL 2558143 (W.D. Tex. Feb. 24, 2023). In any event, Paxton's conduct chills Yelp's speech in California and nationwide. 2-ER-217–26 (letter from attorneys general describing harm to national audiences from censoring Yelp); 2-ER-169 ¶ 8 (describing similar effect); *see Walden v. Fiore*, 571 U.S. 277, 287-88 (2014) (cited Paxton Br. 18) ("crux of *Calder*" was that "effects" of libelous article "connected the defendants to California" because it was read by residents).

*Defense Distributed v. Grewal*, 971 F.3d 485, 495 & n.9 (5th Cir. 2020), is directly on point. There, the Fifth Circuit held that a Texas court had personal jurisdiction over the New Jersey Attorney General, who had sent cease-and-desist

letters to a Texas company that distributes information about three-dimensional printing of firearms. *Id.* at 488. By demanding that the plaintiff "cease publication of their materials generally," rather than to New Jersey residents only, the Attorney General "projected himself across state lines and asserted a pseudo-national executive authority." *Id.* at 492-93; *see also, e.g., Media Matters*, 2024 WL 1773197, at *11 (applying *Grewal* to find "national implications" of Paxton's CID conferred personal jurisdiction in D.C. where plaintiff resides). Contrary to Paxton's contention (Paxton Br. 21-22), *Grewal* illustrates that the personal jurisdiction analysis does not change for state officials. 971 F.3d at 488, 491-93; *see also, e.g.*, *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 167 (2d Cir. 2005) (New York could exercise jurisdiction over out-of-state attorneys general because they negotiated agreement that formed the basis of plaintiff's claim there); *El Paso Water Utils. Pub. Serv. Bd. v. Kenney*, 2023 WL 4612549, at *2-6 (W.D. Tex. July 18, 2023) (New Mexico agency subject to personal jurisdiction in Texas under minimum contacts analysis); *Twitter*, 2021 WL 1893140, at *2-3 (Paxton subject to personal jurisdiction in California). None of Paxton's cases holds otherwise.[4]

---

[4] The court in *Morningside Church, Inc. v. Rutledge*, 2020 WL 5077255 (W.D. Mo. Aug. 27, 2020) (cited Paxton Br. 19), considered only purposeful availment, not the *Calder* effects test. Further, the only contacts with the forum in that case were "letters and calls" in which the defendant officials expressly limited their inquiries to their respective jurisdictions. *Morningside Church, Inc. v. Rutledge*, 9 F.4th 615,

To avoid this authority, Paxton claims what matters is whether he "purposefully availed [him]self of the privilege of conducting activities within" California and thus "invok[ed] the benefits and protections" of its laws. Paxton Br. 18-19 (cleaned up). That is wrong. When, as Paxton admits here, a "defendant's conduct takes place *outside* the forum," *id.* at 17 (cleaned up), the question is whether the conduct was "calculated to cause injury to a plaintiff in the forum." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 604 (9th Cir. 2018) (cited Paxton Br. 18). Paxton's retaliatory notice of intent to file suit and subsequent suit qualify. *See, e.g.*, *Yahoo!*, 433 F.3d at 1209 (lawsuit filed in France gave rise to jurisdiction in California). That Paxton served Yelp's registered agent in Texas is not a relevant factor. *Cf.* Paxton Br. 18 (citing no authority for this proposition).

Paxton's remaining authority is distinguishable. The cases concerning sending a letter to a forum resident, Paxton Br. 18-19, are irrelevant where, as here, "the actual *content* of communications with a forum gives rise" to an "intentional tort." *Grewal*, 971 F.3d at 493-94 (distinguishing *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 485-86 (5th Cir. 2008) (emphasis added)). And the cases concerning "contacts required by a collateral litigation," Paxton Br. 18, recognize only that a plaintiff cannot sue defendants twice and claim that contacts created by the first case

617-18 (8th Cir. 2021). Here, Paxton threatened to sue and did sue Yelp, demanding it censor its speech everywhere. *See* 3-ER-386; 3-ER-526 ¶ 32; 2-ER-217–26.

give rise to personal jurisdiction in the second. *Freestream*, 905 F.3d at 606-07 (discussing *Morill v. Scott Fin. Corp.*, 873 F.3d 1136, 1146-48 (9th Cir. 2017)). Here, Paxton launched a campaign to suppress Yelp's speech in California and purposefully directed his actions toward California, and therefore cannot avoid jurisdiction in California.

### 2. Yelp's claims arise from Paxton's California-directed conduct.

The second element of specific jurisdiction is met where, as here, the claim "arises out of or relates to the defendant's forum-related activities." *Freestream*, 905 F.3d at 603. The basis of Yelp's claim is Paxton's retaliatory campaign to suppress its speech, including in California. 4-ER-613–14 ¶¶ 1-6; 4-ER-621 ¶¶ 33-37; *see Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998) (nexus satisfied where but for conduct directed toward forum, injury would not have occurred).

Paxton's arguments rest on the false premise that his contact with California was limited to sending the February 7, 2023, joint letter with 23 other attorneys general. Paxton Br. 19-20. But Yelp does not rely on this letter as a basis for jurisdiction. Rather, jurisdiction exists because Paxton reached out to California when he sent his retaliatory notice of intent to sue and filed his lawsuit against Yelp, demanding that Yelp censor its speech in California to Californians. *See supra* § I.B.1.a. But for these California-directed actions, Yelp would not have been

21

injured. *Id.* Yelp's claim thus "arises out of" and "relates to" Paxton's California-related conduct.

### 3. No "compelling case" makes jurisdiction unreasonable.

Because Yelp's claim satisfies the first two elements of specific jurisdiction, there is a "strong presumption in favor of jurisdiction." *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). To rebut it, Paxton must "present a *compelling case*" that additional considerations make exercising jurisdiction here unreasonable. *Id.* In evaluating this element, courts consider seven factors:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Freestream*, 905 F.3d at 607. The first, third, fourth, fifth, and sixth factors favor jurisdiction, and the remaining ones do not counsel a different result.

First, Paxton has purposefully interjected himself into California's affairs by seeking to prevent a California-based company from publishing truthful information about CPCs to California consumers. *See, e.g.*, *Panavision*, 141 F.3d at 1323 (first factor "strongly" favored jurisdiction where defendant registered plaintiff's trademarks as his domain names "knowing that this would likely injure [plaintiff] in California" and sent demand letter to plaintiff residing in California).

As to the third factor, exercising jurisdiction does not conflict with Texas's sovereignty. Yelp's First Amendment claim turns on federal law—not "[Texas's] statutes," Paxton Br. 22—and it seeks only to enjoin Paxton (not Texas) from abusing his office to suppress speech. Such "official-capacity actions for prospective relief are not treated as actions against the State," *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985), and "do[] not affect[] the state in its sovereign or governmental capacity," *Ex parte Young*, 209 U.S. 123, 159 (1908). *Insurance Co. of North America v. Marina Salina Cruz*, 649 F.2d 1266 (9th Cir. 1981) (cited Paxton Br. 20-21) is inapposite: It found no jurisdiction over a suit against the Mexican Navy in Alaska after a boat negligently repaired in Mexico sank in Alaska—facts far different from Paxton's intentional punishment of speech published in California, by a California resident, and available to all Californians. *See id.* at 1272.

As to the fourth and sixth factors, California has "a 'manifest interest' in providing its residents a convenient forum to redress[] injuries inflicted by out-of-state actors." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473-74 (1985). Paxton's efforts to suppress Yelp's speech not only deprive Yelp of its rights in California, they impact Californians' receipt of accurate information. *See Grewal*, 971 F.3d at 495 & n.9 (censorship "damaging … to surrounding audiences"); *see also* Cal. Code Civ. Proc. § 425.16 (California anti-SLAPP statute); 2-ER-217–26 (discussing audiences' injuries). Yelp has a strong interest in litigating in California,

23

where it can obtain convenient and effective relief.

The fifth factor, efficiency, favors jurisdiction because the parties have briefed the relevant issues here. *See DIRECTV, Inc. v. EQ Stuff, Inc.*, 207 F. Supp. 2d 1077, 1082 (C.D. Cal. 2002) (efficiency "achieved by a court that is already 'familiar with the facts and procedural history of the litigation'"). Relitigating the merits of Paxton's claim in Texas—where Paxton recently appealed a dismissal on jurisdictional grounds—will not occur for some time and would waste resources. The district court is the better forum because the First Amendment bars Paxton's action against Yelp's speech. Moreover, California federal courts can, and routinely do, interpret the DTPA, which is just one of the deceptive acts and practices statutes on the books in every state. *See, e.g., Dajani v. Dell Inc.*, 2009 WL 815352, at *3 (N.D. Cal. Mar. 26, 2009) (applying Texas DTPA); *Banh v. Am. Honda Motor Co.*, 2020 WL 4390371, at *13-14 (C.D. Cal. July 28, 2020) (same).

The remaining factors—burden on the defendant and existence of an alternative forum—do not tip the scale. The "inconvenience" of defending in a foreign state does "not overcome clear justifications for the exercise of jurisdiction" unless the burden "is so great as to constitute a deprivation of due process." *Ballard*, 65 F.3d at 1501. Paxton makes no such showing here. The existence of an alternative forum "becomes an issue only when the forum state is shown to be unreasonable," which Paxton has also failed to demonstrate. *Sierra Pac. Airlines v.*

24

*Dallas Aerospace*, 6 F. App'x 606, 610 (9th Cir. 2001). Paxton's actions thus subject him to jurisdiction in California and this Court's review.

### B. Venue is proper in the Northern District of California.

Venue is proper under 28 U.S.C. § 1391(b)(2) where the plaintiff's "harms" were "felt." *See Myers v. Bennett Law Offs.*, 238 F.3d 1068, 1075-76 (9th Cir. 2001). Here, that is the Northern District of California, where Yelp is headquartered. *See* 4-ER-339–41 ¶¶ 19-23. Indeed, in cases "brought on First Amendment grounds, impact becomes the *most important part* of the case," *Serv. Women's Action Network v. Mattis*, 320 F. Supp. 3d 1082, 1088 (N.D. Cal. 2018) (quoting *Kalman v. Cortes*, 646 F. Supp. 2d 738, 742 (E.D. Pa. 2009)) (emphasis added), because "[t]he suppression [of speech] is a more 'substantial' event than the decision to suppress." *Kalman*, 646 F. Supp. 2d at 742.

Paxton relies heavily on *Leroy v. Great Western United Corp.*, 443 U.S. 173 (1979). Paxton Br. 23-24. But in that case, a Texas plaintiff challenged the constitutionality of an Idaho statute. 443 U.S. at 175. Here, Yelp does not claim Texas law is invalid. Rather, Yelp argues that Paxton has misused his office to punish First Amendment-protected speech and to prevent residents in California (and elsewhere) from receiving that speech. 4-ER-613–14 ¶¶ 1-6; 4-ER-621 ¶¶ 33-37; *supra* § I.B.1.a. In any event, as Paxton acknowledges, *Leroy* interprets a prior version of the venue statute, 443 U.S. at 178 n.8, 183-85, so his arguments that Texas

is the "one obvious locus," Paxton Br. 23, are no longer relevant. *See Newton v. Thomason*, 22 F.3d 1455, 1463-64 & n.8 (9th Cir. 1994) (venue no longer limited to "most convenient forum," so factors *Leroy* considered not controlling); C. Wright & A. Miller, 14D Fed. Prac. & Proc. Juris. § 3802 (4th ed.) ("*Leroy* is of limited, if any, significance now."). Venue is proper here.

## IV. The District Court Should Have Granted The Preliminary Injunction.

Had the district court refused to abstain from hearing this dispute, it undoubtedly would have found the preliminary injunction factors satisfied.

The answering brief leaves no doubt that Yelp has shown at least "serious questions" on the merits of its claims. *See Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 859 (9th Cir. 2022). Paxton is wrong that the First Amendment does not protect Yelp's speech, *see supra* Part I.A, so Yelp is entitled to declaratory and injunctive relief. Yelp is also likely to prevail on its retaliation claim. Paxton does not dispute that his actions would chill or silence a person of ordinary firmness from future First Amendment activities. *See also* 2-ER-167–69 ¶¶ 2-7 (describing Yelp's self-censorship). And his causation arguments—that the OAG's decision to prosecute was made independently from its chief officer—are belied by the evidence. *See supra* Part I.B; *see also* 2-ER-207, 3-ER-521–22 ¶¶ 17-19, 2-ER-266 (statements from Paxton making clear Yelp and its CEO's political opinions motivated his actions).

26

Yelp has also shown irreparable harm. Yelp's injuries are not, as Paxton suggests, limited to "litigation expense," Paxton Br. 44. Unrebutted evidence shows Yelp is self-censoring as a result of Paxton's continued prosecution (and now appeal) of his meritless DTPA claim, 3-ER-339–41 ¶¶ 19-23; 2-ER-167–69 ¶¶ 2-7, and will continue to do so absent an injunction halting any actions by Paxton or his office "to penalize its publication of truthful speech about CPC's." 3-ER-332. Paxton does not dispute that this chilling effect "unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373; *see also Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (Br. 43).

Finally, Yelp demonstrated that equity and the public interest—merged because Yelp seeks to enjoin the government—support an injunction. Paxton suggests Texas has a general interest in enforcing its laws. *See* Paxton Br. 44-45. But Texas has no valid interest in violating constitutional rights. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). The existence of "serious First Amendment questions" establishes that equity "tips sharply" in Yelp's favor. *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007).

For good reason. Censors like Paxton have long understood that threatening speech with unfounded litigation is enough to drive it out of discourse. *See, e.g.,* Elena Kagan, *A Libel Story: Sullivan Then and Now*, 18 LAW & SOC. INQUIRY 197, 199-201 (1993). Paxton's campaigns to punish dissenting views—including on

27

issues where Yelp publishes consumer notices—are legion. *See, e.g.*, 3-ER-600–10; *supra* Part I.B. An injunction is necessary to prevent irreparable injury not just to Yelp, but those who rely on Yelp's speech to make informed choices.

## CONCLUSION

The Court should reverse the order denying Yelp's motion for a preliminary injunction and dismissing the case, and instead enter the requested preliminary injunction, or remand to the district court with instruction to do so.

Respectfully submitted,

| | |
|---|---|
| Adam S. Sieff | s/ *Ambika Kumar* |
| DAVIS WRIGHT TREMAINE LLP | Ambika Kumar |
| 865 South Figueroa Street, 24th Floor | Sara A. Fairchild |
| Los Angeles, California 90017 | DAVIS WRIGHT TREMAINE LLP |
| (213) 633-6800 | 920 Fifth Avenue, Suite 3300 |
| adamsieff@dwt.com | Seattle, Washington 98104 |
| | (206) 757-8030 |
| Thomas R. Burke | ambikakumar@dwt.com |
| DAVIS WRIGHT TREMAINE LLP | sarafairchild@dwt.com |
| 50 California Street, 23rd Floor | |
| San Francisco, California 94111 | Eric Feder |
| (415) 276-6500 | DAVIS WRIGHT TREMAINE LLP |
| thomasburke@dwt.com | 1301 K Street NW, Suite 500 East |
| | Washington, D.C., 20005 |
| | (202) 973-4200 |
| | ericfeder@dwt.com |

*Attorneys for Plaintiff-Appellant Yelp Inc.*

Dated: May 3, 2024

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s): 24-581**

I am the attorney or self-represented party.

**This brief contains 6,698 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** __s/ *Ambika Kumar*__      **Date** May 3, 2024
            Ambika Kumar

29

## CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2024, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: May 3, 2024

s/ *Ambika Kumar*
Ambika Kumar

30