**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| YELP INC., | No. 24-581 |
| *Plaintiff - Appellant*, | D.C. No. 3:23-cv-04977-TLT |
| v. | |
| KEN PAXTON, in his official capacity as Attorney General of Texas, | OPINION |
| *Defendant - Appellee*. | |

Appeal from the United States District Court
for the Northern District of California
Trina L. Thompson, District Judge, Presiding

Argued and Submitted December 4, 2024
San Francisco, California

Filed May 15, 2025

Before: Mark J. Bennett, Daniel A. Bress, and Danielle J.
Forrest, Circuit Judges.

Opinion by Judge Bress

## SUMMARY[*]

### *Younger* Abstention

The panel affirmed the district court's dismissal pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), of an action brought by Yelp, a company that publishes consumer reviews of businesses, seeking to enjoin the Texas Attorney General's civil enforcement action against it in Texas state court concerning Yelp's since-withdrawn consumer notice for crisis pregnancy centers (CPCs).

In 2022, Yelp introduced a new notification on Yelp business pages for CPCs that informed consumers that the businesses typically offer limited medical services. After objections from a number of state Attorney Generals that the notification was misleadingly overbroad and discriminatory, Yelp replaced this notice with a second notice that stated that CPCs did not offer abortions or abortion referrals. Two months later, Texas Attorney General Paxton initiated an investigation of Yelp pertaining to the first notice and subsequently sent Yelp a notice of intent to file suit on the grounds that the first notice violated the Texas Deceptive Trade Practices – Consumer Protection Act (DTPA). Yelp then filed the instant lawsuit pursuant to 42 U.S.C. § 1983 against Paxton, alleging First Amendment retaliation. The next day Paxton filed a state court action against Yelp for violations of the DTPA. Yelp moved for a preliminary injunction in the federal litigation to enjoin Paxton from further action, while Paxton sought to dismiss the federal

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

case.  The district court dismissed the federal case based on the *Younger* abstention doctrine, which reflects a national policy forbidding federal courts from interfering with pending state judicial proceedings.

The parties do not dispute that the requirements for *Younger* abstention were met in this case:  the state proceedings were ongoing, involved quasi-criminal enforcement, implicated an important state interest, and permitted federal constitutional defenses, and the federal action would have the effect of the enjoining the proceedings.  Rather, Yelp alleges that abstention was not warranted because the bad faith exception to *Younger* applied.

The panel held that *Younger*'s narrow bad faith exception did not apply.  Yelp had not sufficiently established that the Texas civil enforcement action was brought without a reasonable expectation of obtaining a valid judgment or was facially meritless.  Nor was it clear or obvious that applying the DTPA to Yelp's first notice would violate Yelp's First Amendment rights.

Yelp also failed to show that Paxton's enforcement action was motivated by a desire to harass Yelp or was pursued in retaliation for Yelp's support of abortion rights.  Given the obligation of the federal courts to respect the domain of the state courts, any retaliatory motive or harassment must be sufficiently severe or pervasive to legitimize the halt of state court proceedings in which these same constitutional objections could be raised.  Here, Yelp did not allege any bias by the tribunal, nor did it identify a serial pattern of litigation against it or a history of personal conflict or animus that would raise an inference of vindictive retaliation.  Although Paxton's enforcement action may

implicate a sensitive matter on which people disagree, that does not mean his pursuit of Yelp is retaliatory within the meaning of *Younger*'s bad faith exception, especially when the enforcement action itself was not facially meritless.

Because Yelp was unable to make the high showing that *Younger*'s bad faith exception applied, the district court did not err by denying Yelp's request for discovery and an evidentiary hearing.

---

## COUNSEL

James Sigel (argued) and Thomas R. Burke, Davis Wright Tremaine LLP, San Francisco, California; Ambika Kumar and Sara A. Fairchild, Davis Wright Tremaine LLP, Seattle, Washington; Adam Sieff, Davis Wright Tremaine LLP, Los Angeles, California; Eric Feder, Davis Wright Tremaine LLP, Washington, D.C.; for Plaintiff-Appellant.

Lanora C. Pettit (argued), Principal Deputy Solicitor General; J. Andrew Mackenzie and Alyssa Bixby-Lawson, Assistant Attorneys General; Aaron L. Nielson, Solicitor General; Brent Webster, First Assistant Attorney General; Ken Paxton, Texas Attorney General; Office of the Texas Attorney General, Austin, Texas; Abigail E. Smith and Ryan Baasch, Assistant Attorneys General, Consumer Protection Division, Office of the Texas Attorney General, Dallas, Texas; Eric Grant, Hicks Thomas LLP, Sacramento, California; for Defendant-Appellee.

Michael L. Charlson and Robert H. Wu, Vinson & Elkins LLP, San Francisco, California, for Amici Curiae First Amendment Clinics and Scholars.

Bruce D. Brown, Katie Townsend, Gabe Rottman, Grayson Clary, and Emily Hockett, Reporters Committee for Freedom of the Press, Washington, D.C., for Amicus Curiae Reporters Committee for Freedom of the Press.

Neil Sawhney and Shilpi Agarwal, American Civil Liberties Union Foundation of Northern California, San Francisco, California; Jennifer Dalven and Brian Hauss, American Civil Liberties Union Foundation, New York, New York; for Amici Curiae American Civil Liberties Union and American Civil Liberties Union of Northern California.

## OPINION

BRESS, Circuit Judge:

This case concerns whether a federal court may enjoin ongoing state court proceedings. Yelp, a company that publishes consumer reviews of businesses, asked a federal district court in California to halt the Texas Attorney General's civil enforcement action against Yelp in Texas state court concerning Yelp's since-withdrawn consumer notice for crisis pregnancy centers. The Texas Attorney General maintains that Yelp's consumer notice was misleading. Yelp maintains that the Texas Attorney General is pursuing Yelp in retaliation for the company's expressed views about abortion. Because Yelp wanted a federal court to enjoin ongoing state court proceedings, the district court dismissed the case under *Younger v. Harris*, 401 U.S. 37 (1971), finding that *Younger*'s narrow bad faith exception did not apply. We agree and affirm.

I

Yelp owns and operates websites and mobile apps that allow users to read and write reviews about local businesses and services. Since 2012, Yelp has maintained a "Consumer Alert" program that warns users when Yelp detects fake reviews or other attempts to mislead customers. In 2018, Yelp claims it learned that "crisis pregnancy centers," or CPCs, were diverting women seeking abortions away from abortion providers. CPCs do not provide abortions or make referrals to abortion providers. Yelp evaluated nationwide listings for entities providing pregnancy-related services, and if an entity did not offer abortion services or referrals, Yelp categorized it as a CPC.

In August 2022, Yelp released a blog post in response to the Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), which overruled *Roe v. Wade*, 410 U.S. 113 (1973). In the post, Yelp touted its "consistent track record of supporting access to reproductive healthcare for our employees, underserved communities and our users." "To further demonstrate this commitment," Yelp announced that it was "introducing a new notification on Yelp business pages for Crisis Pregnancy Centers that informs consumers these businesses typically offer limited medical services." The notification, which we will refer to as the "First Notice," was placed at the top of the Yelp pages for CPCs across the country. The First Notice stated in full: "This is a Crisis Pregnancy Center. Crisis Pregnancy Centers typically provide limited medical services and may not have licensed medical professionals onsite."

Six months later, on February 7, 2023, the Attorneys General of twenty-four states, including Texas Attorney

General Ken Paxton, sent Yelp a letter demanding that it rescind the First Notice. The letter claimed that the First Notice was misleadingly overbroad and discriminated against CPCs because Yelp failed to issue comparable notices for Planned Parenthood and similar facilities that offer abortions.

Yelp responded the next day, maintaining that the First Notice was "accurate and not misleading." Nevertheless, Yelp agreed to replace the First Notice with a new notice, which we will refer to as the "Second Notice." The Second Notice states in full: "This is a Crisis Pregnancy Center. Crisis Pregnancy Centers do not offer abortions or referrals to abortion providers."

The day after Yelp sent its response, the Attorney General of Kentucky, the lead author of the Attorneys' General letter to Yelp, issued a statement thanking Yelp for its "timely response in addressing our concerns." A few days later, Attorney General Paxton issued a press release noting that "Yelp has agreed to remove its misleading labeling of crisis pregnancy centers and replace it with an accurate description." The Second Notice is not at issue in this case.

Two months later, in April 2023, the Texas Office of the Attorney General (OAG) began investigating Yelp's now-replaced First Notice. The OAG initiated its investigation after a CPC in Texas contacted the OAG and attached the CPC's earlier correspondence with Yelp about the First Notice. In the correspondence, the CPC requested that Yelp remove the First Notice from the CPC's Yelp page because the CPC employed licensed medical professionals onsite. The CPC provided Yelp with the names of its licensed staff

members, but Yelp responded that "[t]he consumer notice is applicable to all [CPCs] and cannot be removed at this time."

Meanwhile, in May 2023, the Texas House of Representatives impeached Attorney General Paxton. Under state law, Attorney General Paxton was automatically suspended from office during his impeachment. Two provisional Attorney Generals served Texas until September 2023, when the Texas Senate voted to acquit Paxton, allowing him to resume his duties as Attorney General.

On September 22, 2023, in what Yelp alleges was Attorney General Paxton's first public action after being acquitted, Paxton sent Yelp a "Notice of Intent to File Suit." Paxton alleged that the First Notice was false and misleading and violated the Texas Deceptive Trade Practices – Consumer Protection Act (DTPA), such as by "disparaging the goods, services, or business of another by false or misleading representation of facts." Tex. Bus. & Com. Code § 17.46(b)(8). Paxton's letter notified Yelp that the OAG could seek damages and an injunction to stop Yelp's allegedly deceptive trade practices.

Five days later, Yelp filed this lawsuit under 42 U.S.C. § 1983 against Attorney General Paxton and the OAG (collectively, Paxton), alleging that Paxton "violated the First Amendment by retaliating against Yelp for Yelp's exercise of its First Amendment rights." Yelp sought an injunction to stop Attorney General Paxton "from taking any action to prosecute, fine, or in any way penalize Yelp, including under Texas Business & Commerce Code § 17.46, for publishing the challenged consumer notices."

The next day, Paxton filed a civil enforcement action against Yelp in Texas state court, alleging that Yelp's First Notice had violated the DTPA. Paxton sought to enjoin Yelp

from "[m]isrepresenting the status or amount of licensed medical professionals onsite in [CPCs]," "[m]isrepresenting the services offered by [CPCs]," and "[p]osting any further false and/or misleading disclaimers or representations regarding [CPCs]." Paxton also sought civil penalties for each alleged violation of the DTPA. In a press release, Paxton referenced Yelp's CEO's post-*Dobbs* efforts "to rally the business community behind the pro-abortion cause." The press release acknowledged that "Yelp's CEO is entitled to his views on abortion," but asserted that Yelp "was not entitled to use the Yelp platform to deceptively disparage facilities that counsel pregnant women instead of providing abortions."

Yelp then moved for a preliminary injunction in the federal litigation, seeking to enjoin Paxton from taking any further actions "designed to deter Yelp from publishing truthful speech related to CPCs." Paxton opposed the motion and moved to dismiss the federal case. Among other things, Paxton contended that *Younger* abstention required dismissal.

The district court dismissed the case based on *Younger*. The court first found that the requirements for *Younger* abstention were met, which Yelp did not contest. The district court then concluded that *Younger*'s limited bad faith exception did not apply. From this judgment of dismissal, Yelp appeals. Our review is de novo. *Betschart v. Oregon*, 103 F.4th 607, 616 (9th Cir. 2024).[1]

---

[1] Soon after the district court dismissed this case, the Texas trial court dismissed the civil enforcement action against Yelp for lack of personal jurisdiction. The OAG has appealed that decision.

## II

Federal courts have a presumptive, or what is sometimes said to be "virtually unflagging," obligation to decide cases within their jurisdiction. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). *Younger* abstention is an exception to that rule, reflecting a "national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." *Younger*, 401 U.S. at 41. This doctrine is based on "a strong federal policy against federal-court interference with pending state judicial proceedings," *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982), and on the recognition that "[c]ourts have long had discretion not to exercise equity jurisdiction when alternatives are available." *Gilbertson v. Albright*, 381 F.3d 965, 970 (9th Cir. 2004) (en banc) (discussing *Younger*).

In *Younger*, a federal plaintiff sought to enjoin a state criminal prosecution because the state's criminal syndicalism law under which he was charged allegedly violated the First Amendment. 401 U.S. at 40. The Supreme Court "held that equitable relief was unwarranted because a proceeding was pending in state court when the federal plaintiff sought to enjoin it, this proceeding afforded the claimant an opportunity to raise his constitutional claims, and there was no showing that the state prosecution was brought in bad faith." *Gilbertson*, 381 F.3d at 970. Although originating in the criminal context, *Younger* has been extended to prevent federal court injunctions of certain ongoing state civil proceedings. *See Sprint Commc'ns*, 571 U.S. at 77–78; *New Orleans Pub. Serv., Inc. v. Council of*

*City of New Orleans*, 491 U.S. 350, 368 (1989); *Applied Underwriters, Inc. v. Lara*, 37 F.4th 579, 588 (9th Cir. 2022).

For civil cases, "*Younger* abstention is appropriate only when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014). If these requirements are met, "we then consider whether the federal action would have the practical effect of enjoining the state proceedings and whether an exception to *Younger* applies." *Id.* (citing *Gilbertson*, 381 F.3d at 978, 983–84).

The parties do not dispute that the requirements for *Younger* abstention are met, so we address them only briefly. As to *Younger*'s first required element, state court proceedings are ongoing. Although Yelp sued Attorney General Paxton in federal court one day before Paxton sued Yelp in state court, *Younger* abstention applies "when state court proceedings are initiated 'before any proceedings of substance on the merits have taken place in the federal court,'" which is the case here. *Haw. Housing Auth. v. Midkiff*, 467 U.S. 229, 238 (1984) (quoting *Hicks v. Miranda*, 422 U.S. 332, 349 (1975)). The Texas trial court's subsequent dismissal of the enforcement action is irrelevant, both because we "conduct the *Younger* analysis 'in light of the facts and circumstances existing at the time the federal action was filed,'" *Duke v. Gastelo*, 64 F.4th 1088, 1093 (9th Cir. 2023) (quoting *Rynearson v. Ferguson*, 903 F.3d 920, 924 (9th Cir. 2018)), and because Paxton "has not exhausted his state appellate remedies." *Dubinka v. Judges of Superior*

*Ct. of State of Cal.*, 23 F.3d 218, 223 (9th Cir. 1994) (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 607–11 (1975)).

The remaining *Younger* requirements are likewise satisfied. Paxton's civil enforcement action under the DTPA is a quasi-criminal enforcement action, to which *Younger* applies. *See Sprint Commc'ns*, 571 U.S. at 79. The Texas action implicates an important state interest. *See Potrero Hills Landfill, Inc. v. Cnty. of Solano*, 657 F.3d 876, 883–84 (9th Cir. 2011) ("Where the state is in an enforcement posture in the state proceedings, the 'important state interest' requirement is easily satisfied, as the state's vital interest in carrying out its executive functions is presumptively at stake."). And there is no dispute that Yelp may raise any federal constitutional defenses to the Texas action, including First Amendment defenses, in Texas state court. Finally, Yelp's "federal action would have the practical effect of enjoining the state proceedings." *ReadyLink*, 754 F.3d at 759. Indeed, the whole objective of Yelp's federal lawsuit is to enjoin Paxton's civil enforcement action.

## III

The question in this case is whether *Younger*'s bad faith exception applies. *Younger* indicated that abstention would not be warranted upon a "showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief." *Younger*, 401 U.S. at 54; *see also Trump v. Vance*, 591 U.S. 786, 806 (2020); *Bean v. Matteucci*, 986 F.3d 1128, 1133 (9th Cir. 2021); *Gilbertson*, 381 F.3d at 983. These exceptions to *Younger* are "narrow." *Huffman*, 420 U.S. at 602. We hold that in this case, *Younger*'s narrow bad faith exception does not apply.

A

We have said that "[i]n the *Younger* abstention context, bad faith 'generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction.'" *Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613, 621 (9th Cir. 2003) (quoting *Kugler v. Helfant*, 421 U.S. 117, 126 n.6 (1975)). Picking up on this case law, Yelp spends much of its briefing maintaining that Attorney General Paxton's DTPA action is objectively meritless and barred by the First Amendment.

This effort to avoid *Younger* fails. A core premise of *Younger*, we must remember, is that defenses to the state court action, including constitutional defenses, may be raised in state court. *See Younger*, 401 U.S. at 49; *Gilbertson*, 381 F.3d at 972. And "[m]inimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights." *Middlesex Cnty.*, 457 U.S. at 431. To maintain that Attorney General Paxton's state enforcement action is weak, meritless, or even unconstitutional, as Yelp does, is largely to reprise the presumption that if Yelp's defenses have merit, they may be raised and vindicated in state court. *See Huffman*, 420 U.S. at 604. It is one thing to say that Paxton's Texas lawsuit should fail, or even that it should fail as a matter of law. It is quite another to put federal courts in the vocation of making these determinations on behalf of state courts, while taking the significant step of enjoining state court proceedings. Indeed, in *Younger* itself, the Supreme Court recognized that even "the possible unconstitutionality of a statute 'on its face' does not in itself justify an injunction against good-faith attempts to enforce it." 401 U.S. at 54. Exacting federal court review of the merits of a state court lawsuit, followed by an injunction whenever we conclude

the state court suit is meritless, would invite the very interference with state court proceedings that *Younger* seeks to prevent.

To warrant enjoining state court proceedings because the state lawsuit is lacking in merit, that lack of merit must thus be so palpable and overwhelming as to fairly demonstrate bad faith. We have thus found "helpful" the Second Circuit's observation that "'it is only when the state proceeding is brought *with no legitimate purpose* that the state interest in correcting its own mistakes dissipates' and the 'bad faith' exception to *Younger* applies." *Applied Underwriters*, 37 F.4th at 596 (brackets omitted) (quoting *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 200 (2d Cir. 2002)). Or as the Fifth Circuit recently concluded, the exception applies when the state court action is based on a "clearly inapplicable" law, for which "there was never any remote chance" that it could be enforced against the state court defendant. *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1095 (5th Cir. 2023). The standard must be elevated in this manner or else every state court defendant could become a federal court plaintiff seeking an injunction of the state proceedings in which its defenses could properly be interposed.

In this case, we conclude that Yelp has not sufficiently established that the OAG's Texas civil enforcement action was brought without a reasonable expectation of obtaining a valid judgment against Yelp. Even assuming Attorney General Paxton could not prove that the First Notice was false (we do not agree that Paxton has conceded this), Paxton is suing Yelp for "disparaging the goods, services, or business of another by false *or misleading* representation of facts." Tex. Bus. & Com. Code § 17.46(b)(8) (emphasis added). We agree with the district court that "[w]hether the

First Notice is true or misleading under this provision is open to interpretation." The letter from the twenty-four state Attorneys General maintained that Yelp's First Notice was overbroad because it characterized CPCs as "typically provid[ing] limited medical services" and because it stated that CPCs "may not have licensed medical professionals onsite," without regard to the individual services and staffing at each CPC. As the district court noted, "Yelp's own exhibits show that 26% of CPCs have a registered nurse, that 16% have a registered doctor, and that 66% provide limited medical services." Yelp, meanwhile, points to no authority that would clearly foreclose its liability under the DTPA. Although we emphasize that we do not decide the merits of the Texas action, we cannot conclude that it is so facially meritless as to connote bad faith.

Yelp also maintains that applying the DTPA to Yelp's First Notice would violate Yelp's First Amendment rights. Although Yelp is free to raise a First Amendment objection in the Texas case, any claimed First Amendment violation is not so clearly or obviously suggestive of bad faith that we would be justified in enjoining the state court proceedings— here, ones that have yet to even broach the constitutional question. In *Huffman*, the Supreme Court acknowledged that if a state statute is "flagrantly and patently violative of express constitutional prohibitions," then *Younger* may not apply. 420 U.S. at 612 (quoting *Younger*, 401 U.S. at 53). A standard such as that is not remotely met here as to the DTPA's claimed application. *See, e.g.*, *Dubinka*, 23 F.3d at 225 ("But even if appellants are correct that some applications of [the state ballot initiative] are unconstitutional, the discovery provisions are not so 'flagrantly and patently' unconstitutional as to invoke federal jurisdiction."). Many cases applying *Younger*—and

*Younger* itself—abstained from enjoining state court proceedings in the face of arguments that applying a state statute would be unconstitutional, including under the First Amendment. *See Younger*, 401 U.S. at 40, 54; *Huffman*, 420 U.S. at 611–12; *Juidice v. Vail*, 430 U.S. 327, 338 (1977); *Trainor v. Hernandez*, 431 U.S. 434, 446–47 (1977); *Moore v. Sims*, 442 U.S. 415, 432 (1979); *Worldwide Church of God, Inc. v. California*, 623 F.2d 613, 616 (9th Cir. 1980) (per curiam). Yelp has not demonstrated that a different approach should apply here.

## B

This leaves Yelp arguing that even if the Texas enforcement action has facial merit and is not patently unconstitutional, the bad faith exception should still apply because Attorney General Paxton is pursuing Yelp based on a retaliatory motive. *Younger* allowed that enjoining state court proceedings could be appropriate if "the District Court properly finds that the state proceeding is motivated by a desire to harass." *Huffman*, 420 U.S. at 611 (discussing *Younger*); *see also Baffert*, 332 F.3d at 621 (indicating that bad faith could include "bias against Plaintiff" or "a harassing motive"). And we can accept that the harassment indicative of bad faith could include filing state court litigation in retaliation for the exercise of constitutionally protected rights. *See, e.g.*, *Cullen v. Fliegner*, 18 F.3d 96, 103–04 (2d Cir. 1994); *Lewellen v. Raff*, 843 F.2d 1103, 1109–10 (8th Cir. 1988); *see also Am.-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1058 (9th Cir. 1995) (citing *Lewellen*).

But just as "an allegation of 'bad faith' is not a talisman sufficient to overcome an otherwise proper exercise of abstention," *Applied Underwriters*, 37 F.4th at 597, the same

must be true of an allegation of retaliatory motive based on the exercise of constitutional rights, lest *Younger*'s bad faith exception overtake *Younger* altogether. It is all too natural for state court defendants to infer some degree of selectivity from state enforcement actions or prosecutions, especially when state attorneys general have limited resources and can focus only on certain priorities. But state enforcement arms will not be able to pursue every false or misleading statement or other law violation, and it would read too much into their enforcement decisions invariably to presume bias, selective retaliation, or unconstitutional harassment, so as to justify routine federal court injunctions of state court proceedings. Simply because a state court defendant may advance a retaliation-based defense to a state court lawsuit does not mean it has established bad faith sufficient for a federal court to enjoin a state court action. *See Phelps v. Hamilton*, 59 F.3d 1058, 1064 (10th Cir. 1995) ("[F]ederalism concerns counsel against federal court intervention into state prosecutions so that the state judiciary will have the opportunity to correct any prosecutorial violations of an individual's constitutional rights."). Our obligation to respect the domain of our state judicial counterparts, *see Younger*, 401 U.S. at 43, requires that any retaliatory motive or harassment be sufficiently severe or pervasive to legitimize our halt of state court proceedings in which these same constitutional objections could be raised.

The few cases applying this aspect of *Younger*'s bad faith exception bear this out. For example, in *Krahm v. Graham*, 461 F.2d 703 (9th Cir. 1972), city officials brought "over 100 criminal charges for the sale of allegedly obscene books and magazines" against plaintiff owners and clerks of newsstands and bookstores. *Id.* at 705. "Eleven of the cases came to trial," and "[n]one resulted in convictions." *Id.* The

mayor then circulated anti-obscenity petitions to 50,000 city residents and "stated publicly that the purpose of the petitions was to influence the tenor of the community so that jurors would be more likely to convict than they had been in the cases already tried." *Id.* The mayor also made baseless statements to the media about the bookstore owners being involved in the Mafia and selling obscene items to minors, and police officers repeatedly conducted illegal searches of the plaintiffs "in spite of a state court order that the method they were using to seize material was illegal." *Id.* at 705–06.

Prior to the Supreme Court's decision in *Younger*, the district court in *Krahm* found that "there was 'bad faith law enforcement'" and enjoined "further prosecution of any pending criminal action against any of the plaintiffs." *Id.* at 706. By the time we decided the appeal, the Supreme Court had decided *Younger*. *Id.* We affirmed in relevant part, citing the fact that the plaintiffs were facing over one hundred state court prosecutions and that their successful defense of the prosecutions had led to a flurry of even further charges. *Id.* at 707. As we explained, the prosecutions could "put the plaintiffs out of business without ever convicting any of them of anything," and the "threat to plaintiffs' [F]irst [A]mendment rights" could not "be eliminated by defense against the state prosecutions," for the plaintiffs' successful defense of eleven such cases had spawned "the filing of fourteen more, and later of an additional nineteen." *Id.* In this "exceptional type of case," *Younger* did not apply. *Id.* at 709.

Another example is *Lewellen v. Raff*, 843 F.2d 1103 (8th Cir. 1988). Lewellen, a Black criminal defense attorney, sued to enjoin his Arkansas state prosecution for witness bribery. *Id.* at 1106, 1108. Lewellen represented a Black

minister against charges that he had raped an eleven-year-old girl. *Id*. at 1105–06. Before trial, the victim's family agreed to drop the charges if, among other things, the family was reimbursed $500 for their attorney's fees. *Id.* at 1106–07, 1107 n.4. Based on this reimbursement agreement, state prosecutors charged Lewellen with witness bribery. *Id.* at 1107–08.

In upholding the district court's injunction of the state proceedings, the Eighth Circuit cited the "pervasive racism and discriminatory treatment of blacks in the Lee County court system," in which Lewellen, "as a black attorney, had received disparate treatment from that accorded white attorneys by both the prosecutors and the closely-aligned circuit court judges." *Id.* at 1110. The Eighth Circuit also relied on the evidence that the state prosecutor had initiated the bribery charges because Lewellen "had vigorously attempted to defend his client," a Black minister, and because the prosecution was brought to "thwart Lewellen's campaign for state office against a political ally" of the county sheriff, who had executed an affidavit supporting the bribery charges. *Id.* at 1110–11, 1111 n.8.

Similarly, in *Cullen v. Fliegner*, 18 F.3d 96 (2d Cir. 1994), Cullen, a high school teacher in New York, filed a lawsuit in federal court seeking to enjoin disciplinary proceedings against him for violating a state law "prohibit[ing] electioneering within 100 feet of a polling place during a school board election." 18 F.3d at 99, 101. Cullen's school district had previously filed three disciplinary charges against him, one of which the school district was actively appealing after the disciplinary panel failed to terminate him. *Id.* at 99. During school board elections, Cullen distributed fliers on the steps outside the school that advocated voting against incumbent board

members. *Id.* at 100. The school superintendent repeatedly directed Cullen to relocate in accordance with the state law setting a 100-foot rule, even though it had never before attempted to enforce the law. *Id.* at 100–02. The superintendent eventually called police officers to remove Cullen. *Id.* at 100–01. The Second Circuit upheld the district court's determination that *Younger*'s bad faith exception applied, citing the school district's "'past history of personal conflict' with Cullen," its pursuit of Cullen rising "to the 'level of animus,'" and the fact that the defendants had "pursued" Cullen "in a 'strictly *ad hominem*' manner" under a rarely utilized state law. *Id.* at 104.

In light of cases like *Krahm*, *Lewellen*, and *Cullen*, Yelp has not made a showing of harassment or retaliation sufficient to countenance a federal court enjoining the Texas proceedings. Yelp does not allege any "bias by the tribunal." *Applied Underwriters*, 37 F.4th at 596 (quoting *Partington v. Gedan*, 961 F.2d 852, 862 (9th Cir. 1992)); *see also Wilson v. Thompson*, 593 F.2d 1375, 1379–80 (5th Cir. 1979) (involving these types of circumstances). In fact, Yelp has so far succeeded in achieving a dismissal of the Texas action. Nor has Yelp identified a serial pattern of litigation against the company by Attorney General Paxton, *see Krahm*, 461 F.2d at 706, or "a past history of personal conflict" or "animus" toward Yelp that would raise an inference of vindictive retaliation, *Cullen*, 18 F.3d at 104.

Yelp's principal argument is that Attorney General Paxton's Texas enforcement action is in retaliation for Yelp's support of abortion rights. Yelp points first to Attorney General Paxton's public opposition to abortion and Paxton's press release upon filing the civil enforcement action against Yelp, in which Paxton referenced Yelp's

efforts to drive support for abortion rights in the business community.

Although we appreciate Yelp's argument, these circumstances are not of the same character as those few cases that have applied *Younger*'s bad faith exception. Although Yelp takes issue with Attorney General Paxton's efforts to regulate abortion and abortion-related matters, state Attorneys General and other state officials are entitled to have enforcement priorities and policy positions. If an enforcement action consistent with that policy direction were enough to establish a retaliatory motive, state courts would regularly be stripped of their authority at the hands of federal injunctions—directly contrary to *Younger*'s overarching message of respect for state courts.

The cases are clear that a First Amendment defense is not sufficient, standing alone, to justify *Younger*'s bad faith exception. *See, e.g.*, *Younger*, 401 U.S. at 50–51, 54; *Worldwide Church of God*, 623 F.2d at 616. *Younger*'s bad faith exception likewise cannot apply as a matter of course based on the subject matter of the state court action, for those actions do not become automatically retaliatory whenever they touch on hot-button issues. Although Attorney General Paxton's enforcement action may implicate a sensitive matter on which people disagree, that does not mean his pursuit of Yelp is retaliatory within the meaning of *Younger*'s bad faith exception, especially when the enforcement action itself is not facially meritless.

Attorney General Paxton's press release announcing the lawsuit, even if it used strong rhetoric, is likewise not self-evidently retaliatory, either. The press release acknowledged that "Yelp's CEO is entitled to his views on abortion." Fairly read, its reference to Yelp's positions on

abortion can be understood as part of the set-up for explaining Yelp's decision to issue what the OAG regarded as a misleading consumer notice. And more broadly, treating the commonplace stridency of prosecutorial press releases as synonymous with *Younger* bad faith would lead to federal courts enjoining state court proceedings with great regularity, contrary to the Supreme Court's direction that *Younger*'s exceptions are narrow. *Huffman*, 420 U.S. at 602.

Yelp's other alleged evidence of retaliatory motive fares no better. Yelp asserts that the OAG conducted only a limited investigation before suing Yelp. Yelp also points to the fact that Attorney General Paxton's enforcement action against Yelp was his first public action after surviving an impeachment challenge and that among the state Attorneys General signatories to the original letter against Yelp, only Paxton pursued a civil enforcement action against the company. Once again, however, these circumstances are far less extreme than those giving rise to findings of retaliatory motive in cases like *Krahm*, *Lewellen*, and *Cullen*. They are not enough to warrant departure from the general principle that state courts should be able "to try state cases free from interference by federal courts." *Younger*, 401 U.S. at 43. Similarly, that a different Texas Attorney General in the 1980s successfully prosecuted a CPC under the DTPA for false advertising about abortion has no bearing on whether Paxton retaliated against Yelp in 2023.

For these various reasons, we hold that *Younger*'s bad faith exception does not apply.

IV

Yelp also challenges the district court's denial of its request for discovery and an evidentiary hearing. We generally review the district court's denials of discovery and

an evidentiary hearing for abuse of discretion. *D'Augusta v. Am. Petroleum Inst.*, 117 F.4th 1094, 1100 (9th Cir. 2024); *Kenneally v. Lungren*, 967 F.2d 329, 335 (9th Cir. 1992). Yelp maintains that our review of its discovery request should be de novo because the district court did not specifically rule on this request. We need not resolve which standard of review applies because we affirm the district court under either standard.

The district court correctly denied Yelp's requests because Yelp did not present allegations of bad faith sufficient to demonstrate that discovery or an evidentiary hearing would change matters. That is especially so considering that intrusive discovery of a state attorney general and his office about a case he filed in state court, as Yelp seeks, would pose comity concerns contrary to the tenor of *Younger* itself. *See Younger*, 401 U.S. at 44. In this case, the record was sufficient for the district court to conclude that Yelp was unable to make the high showing that *Younger*'s bad faith exception requires. No further discovery was necessary or appropriate.

**AFFIRMED.**