No. 24-581

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

YELP INC.,
*Plaintiff-Appellant,*
v.
KEN PAXTON,
Attorney General of the State of Texas,
in his official capacity,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of California
No. 3:23-cv-04977-TLT
Hon. Trina L. Thompson

## BRIEF OF *AMICI CURIAE* AMERICAN CIVIL LIBERTIES
## UNION OF NORTHERN CALIFORNIA AND FIRST
## AMENDMENT COALITION IN SUPPORT OF PETITION FOR
## REHEARING OR REHEARING EN BANC

Neil K. Sawhney
Shilpi Agarwal
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
(415) 621-2493
*nsawhney@aclunc.org*

*Counsel for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rules 26.1 and 29(a)(4)(A) of the Federal Rules of Appellate Procedure, *amici curiae* state that they do not have a parent corporation and that no publicly held corporation owns 10 percent or more of their stock. Pursuant to Federal Rule of Appellate Procedure Rule 29(a)(4)(E), *amici curiae* also certify that no person or entity, other than *amici curiae*, their members, or their counsel, made a monetary contribution to the preparation or submission of this brief or authored this brief in whole or in part.

Date: June 23, 2025

Neil K. Sawhney
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA

*Counsel for Amici Curiae*

i

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ..........................................i

TABLE OF CONTENTS ...........................................................ii

TABLE OF AUTHORITIES ......................................................iii

IDENTITY AND INTEREST OF *AMICI CURIAE* .................................1

INTRODUCTION ..................................................................2

ARGUMENT .......................................................................4

    I.    *Younger*'s comity concerns disappear when the state court proceeding is brought in bad faith or to retaliate against the exercise of constitutional rights. ...............................................4

    II.    When bad faith or retaliation is plausibly alleged, courts must strictly scrutinize the state official's subjective motivations before applying *Younger*. ....................................6

    III.    The panel decision will undermine the exercise of First Amendment rights and create perverse incentives for state officials....................................................................11

CONCLUSION .....................................................................15

CERTIFICATE OF COMPLIANCE.........................................16

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Am.-Arab Anti-Discrimination Comm. v. Reno,*
  70 F.3d 1045 (9th Cir. 1995) .................................................................6

*Aptim Corp. v. McCall,*
  888 F.3d 129 (5th Cir. 2018) .................................................................9

*Bean v. Matteucci,*
  986 F.3d 1128 (9th Cir. 2021) ...............................................................6

*Beck v. City of Upland,*
  527 F.3d 853 (9th Cir. 2008) .................................................................7

*Chicot Cnty. v. Sherwood,*
  148 U.S. 529 (1893) ...............................................................................4

*Cohens v. Virginia,*
  6 Wheat. 264 (1821) ...............................................................................4

*Collins v. Kendall Cnty.,*
  807 F.2d 95 (7th Cir. 1986) .................................................................10

*Dombrowski v. Pfister,*
  380 U.S. 479 (1965) .........................................................................2, 11

*Duke v. Gastelo,*
  64 F.4th 1088 (9th Cir. 2023)................................................................5

*Duty Free Shop, Inc. v. Administracion De Terrenos De Puerto Rico,*
  889 F.2d 1181 (1st Cir. 1989)..............................................................14

*Fitzgerald v. Peek,*
  636 F.2d 943 (5th Cir. 1981) ...............................................................10

*Gilbertson v. Albright,*
  381 F.3d 965 (9th Cir. 2004) .................................................................5

iii

*Hartman v. Moore,*
  547 U.S. 250 (2006) ................................................................. 7

*Health & Hosp. Corp. of Marion Cnty. v. Talevski,*
  599 U.S. 166 (2023) ................................................................. 5

*Huffman v. Pursue, Ltd.,*
  420 U.S. 592 (1975) ................................................................. 5

*Ivy Club v. Edwards,*
  943 F.2d 270 (3d Cir. 1991) ................................................... 4

*Kern v. Clark,*
  331 F.3d 9 (2d Cir. 2003) ................................................... 6, 8

*Kugler v. Helfant,*
  421 U.S. 117 (1975) .......................................................... 5, 6

*Lewellen v. Raff,*
  843 F.2d 1103 (8th Cir. 1988) .......................................... 8, 10

*Mata v. Lynch,*
  576 U.S. 143 (2015) ................................................................. 4

*Media Matters for Am. v. Paxton,*
  138 F.4th 563 (D.C. Cir. 2025) ....................................... 12, 13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
  460 U.S. 1 (1983) ..................................................................... 9

*Netflix, Inc. v. Babin,*
  88 F.4th 1080 (5th Cir. 2023) ................................................ 8

*Reed v. Giarrusso,*
  462 F.2d 706 (5th Cir. 1972) ................................................. 8

*Sheridan v. Garrison,*
  415 F.2d 699 (5th Cir. 1969) ........................................... 12, 14

*Smith v. Hightower,*
  693 F.2d 359 (5th Cir. 1982) ............................................... 10

iv

*Timmerman v. Brown,*
    528 F.2d 811 (4th Cir. 1975) ................................................................. 8

*Twitter, Inc. v. Paxton,*
    56 F.4th 1170 (9th Cir. 2022) ............................................................. 12

*Wight v. BankAmerica Corp.,*
    219 F.3d 79 (2d Cir. 2000) .................................................................. 7

*Wilson v. Thompson,*
    593 F.2d 1375 (5th Cir. 1979) ...................................................... 5, 8, 9

*Diamond "D" Const. Corp. v. McGowan,*
    282 F.3d 191 (2d Cir. 2002) ............................................................ 2, 6

*Phelps v. Hamilton,*
    59 F.3d 1058 (10th Cir. 1995) ....................................................... 8, 10

*Winter v. DC Comics,*
    30 Cal. 4th 881 (2003) ...................................................................... 12

*Younger v. Harris*, 401 U.S. 37 (1971) ........................................... *passim*

## Statutes

42 U.S.C. § 1983 ...................................................................... 4, 11, 12

## Other Authorities

Ruth Colker, *Administrative Prosecutorial Indiscretion,*
    63 Tul. L. Rev. 877 (1989) ................................................................. 7

Charles Alan Wright & Arthur R. Miller, *Federal Practice &*
    *Procedure* (4th ed. 2023) ................................................................... 7

## IDENTITY AND INTEREST OF *AMICI CURIAE*[1]

The American Civil Liberties Union ("ACLU") is a nationwide, non-partisan, non-profit organization with approximately two million members and supporters dedicated to protecting the fundamental liberties and basic civil rights guaranteed by the Constitution and our nation's civil rights laws. The ACLU of Northern California is a regional affiliate of the national ACLU. Since their founding, the ACLU and ACLU NorCal have appeared before this Court in numerous cases, both as direct counsel and amicus curiae.

The First Amendment Coalition ("FAC") is a non-partisan, non-profit organization based in California and dedicated to defending freedom of speech, freedom of the press, and the people's right to know. FAC has regularly appeared before this Court as a party, direct counsel, or amicus curiae.

*Amici* file this brief to explain why the panel's decision sharply undermines the bad-faith exception to *Younger v. Harris*, 401 U.S. 37, 44

---

[1] *Amici* certify that all parties consent to the filing of this brief. *See* Fed. R. App. P. 29(a)(2). No party or party's counsel authored this brief, in whole or in part, or contributed money intended to fund the preparation or submission of the brief, and no one other than *amici*, their members, or their counsel contributed money intended to fund preparation or submission of the brief.

(1971). If upheld, that decision will make it difficult—and, in some cases, impossible—for individuals and organizations to prevent state officials from taking retaliatory action against them simply for engaging in protected speech or other constitutionally protected conduct.

## INTRODUCTION

Nearly sixty years ago, the Supreme Court made clear that "abstention" is "inappropriate" where state officials target someone "for the purpose of discouraging protected activities." *Dombrowski v. Pfister*, 380 U.S. 479, 489–490 (1965). That is because a state has no legitimate "interest in continuing actions brought with malevolent intent." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 200 (2d Cir. 2002). Although comity sometimes requires federal courts to decline jurisdiction in favor of a pending state proceeding, it never does when that proceeding is brought in bad faith or retaliation for exercising constitutional rights.

The retaliatory motive in this case is exceedingly clear. Attorney General Paxton brought this state enforcement action immediately after surviving impeachment, after conducting nearly no investigation. And he expressly linked the action to Yelp's and its CEO's pro-abortion political speech—even highlighting it on the "Choose Life" page of his website. In fact, the district court itself was "not convinced that Paxton acted entirely in good faith in bringing this case against Yelp," finding that "Yelp's allegations of bad faith tell a persuasive story" and acknowledging the company's "strong circumstantial evidence" of retaliation. 1-ER-9–11.

2

Despite all that, the district court concluded that *Younger* required dismissal because Yelp did not offer "enough concrete evidence of [Paxton's] subjective motivations." 1-ER-11. That is exactly backwards. *Younger* is a narrow exception to the default rule that federal courts must exercise federal jurisdiction. When a plaintiff has "persuasive" and "strong" evidence of bad faith or retaliation, the comity concerns animating *Younger* abstention dissipate, and so the district court should maintain jurisdiction. At the very least, the plaintiff should have an opportunity for jurisdictional discovery. Indeed, that is the only way, short of a state official announcing their retaliatory intent, to obtain "concrete evidence" of the official's "subjective motivations."

If left to stand, the panel decision provides a simple template for state officials to violate the First Amendment and other constitutional rights while evading federal jurisdiction: So long as an official can identify *any* possibly valid basis for the state prosecution—no matter how suspect or unlikely the pretext—abstention will be required. The negative consequences will primarily be borne not by the Yelps of the world, but ordinary civil-rights plaintiffs, who will find the federal courthouse doors closed to them. This Court should grant rehearing.

# ARGUMENT

## I.  *Younger*'s comity concerns disappear when the state court proceeding is brought in bad faith or to retaliate against the exercise of constitutional rights.

For more than two centuries, the Supreme Court has been clear: "[W]hen a federal court has jurisdiction, it also has a virtually unflagging obligation . . . to exercise that authority." *Mata v. Lynch*, 576 U.S. 143, 150 (2015); *see, e.g.*, *Cohens v. Virginia*, 6 Wheat. 264, 404 (1821); *Chicot Cnty. v. Sherwood*, 148 U.S. 529, 534 (1893) ("[T]he courts of the United States . . . cannot abdicate their authority or duty in any case in favor of another jurisdiction.").[2]

The federal courts' obligation to exercise their jurisdiction is especially pronounced in cases, like this one, that challenge state officers' violation of federal constitutional rights under 42 U.S.C. § 1983. That's because section 1983 was "intended to alter significantly the relationship of the federal government to the states," by "purposely interpos[ing] the federal courts between the States and the people to protect the people from unconstitutional action under color of state law." *Ivy Club v.*

---

[2] Unless otherwise indicated, all internal citations and quotation marks are omitted.

*Edwards*, 943 F.2d 270, 277 (3d Cir. 1991); *see Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 176–77 (2023).

*Younger* abstention "is an extraordinary and narrow exception to the general rule." *Duke v. Gastelo*, 64 F.4th 1088, 1093 (9th Cir. 2023). And "comity is the main reason for federal court restraint in the face of ongoing state judicial proceedings." *Gilbertson v. Albright*, 381 F.3d 965, 975 (9th Cir. 2004) (en banc). The doctrine, in other words, is "founded on the premise that ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights." *Kugler v. Helfant*, 421 U.S. 117, 124 (1975); *see Huffman v. Pursue, Ltd.*, 420 U.S. 592, 601 (1975) (recognizing that *Younger* ensures federal courts do "not unduly interfere with the *legitimate* activities of the States" (emphasis added)).

As a corollary, however, the comity concerns underpinning *Younger* "disappear" when the state prosecution is brought in bad faith or to retaliate against the plaintiff's exercise of constitutional rights. *See Wilson v. Thompson*, 593 F.2d 1375, 1383 (5th Cir. 1979). This principle was obvious to the Supreme Court in *Younger* itself: The doctrine's fundamental interests in promoting federalism and comity, the Court

5

repeatedly noted, are served only when the state prosecution is brought in "good faith." 401 U.S. at 46–48. Accordingly, "even where the *Younger* factors are satisfied, federal courts do not invoke it if there is a showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Bean v. Matteucci*, 986 F.3d 1128, 1133 (9th Cir. 2021).

## II. When bad faith or retaliation is plausibly alleged, courts must strictly scrutinize the state official's subjective motivations before applying *Younger*.

"Bad faith," for purposes of *Younger*, generally means that the prosecution "has little expectation of a valid conviction or is initiated to retaliate for or discourage the exercise of constitutional rights." *Am.-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1058 (9th Cir. 1995); *see, e.g.*, *Kugler*, 421 U.S. at 126 n.6. Where a state proceeding was "initiated with and is animated by a retaliatory, harassing, or other illegitimate motive, . . . th[e] state interest in correcting its own mistakes dissipates, and along with it, the compelling need for federal deference." *McGowan*, 282 F.3d at 199–200. So "the subjective motivation of the state authority in bringing the proceeding is critical to, if not determinative of, this inquiry." *Id.* at 199; *see, e.g.*, *Kern v. Clark*, 331 F.3d 9, 12 (2d Cir.

2003) ("Generally, the subjective bad faith of the prosecuting authority is the gravamen of the exception to *Younger* abstention."); Ruth Colker, *Administrative Prosecutorial Indiscretion*, 63 Tul. L. Rev. 877, 903 (1989) (explaining that the bad-faith exception's "underlying theory" is that "there must have been an impermissible motive behind the prosecution").

Crucially, plaintiffs have little ability to conduct "a subjective inquiry into the prosecutor's state of mind," because in most cases "ascertaining that state of mind is likely to be exceedingly difficult." *Beck v. City of Upland*, 527 F.3d 853, 869 (9th Cir. 2008); *see Hartman v. Moore*, 547 U.S. 250, 264 (2006) (observing that it would be "rare" and "unrealistic" for a prosecutor to disclose their "retaliatory thinking"). For similar reasons, of course, the federal pleading rules allow for "conditions of a person's mind [to] be alleged generally." Fed. R. Civ. P. 9(B); *see Wight v. BankAmerica Corp.*, 219 F.3d 79, 91 (2d Cir. 2000) ("[A] plaintiff realistically cannot be expected to plead a defendant's actual state of mind."). Any other rule "would be unworkable because of the difficulty inherent in ascertaining and describing another person's state of mind with any degree of exactitude prior to discovery." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1301 (4th ed. 2023).

What all these authorities make clear is that, when a federal court considering whether to abstain under *Younger* is presented with plausible and specific allegations that the state prosecution was motivated by bad faith or retaliatory intent, it must seriously scrutinize the defendants' subjective motivations. It cannot just take the state officials at their word: The court must find that the officials had "legitimate" and "objective" reasons to initiate the proceeding. *See Phelps v. Hamilton*, 59 F.3d 1058, 1066 (10th Cir. 1995). Accordingly, where plaintiffs have plausibly alleged bad faith or retaliation, and there are factual disputes about the defendant's subjective motivations, the plaintiffs are "entitled" to discovery and an evidentiary hearing. *See Reed v. Giarrusso*, 462 F.2d 706, 711 (5th Cir. 1972).[3]

---

[3] *See also, e.g.*, *Kern*, 331 F.3d at 12 (holding that district court erred "by concluding, without holding an evidentiary hearing, that Kern failed to demonstrate that Defendants have proceeded under anything other than a good faith belief"); *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1091 (5th Cir. 2023) (noting that district court made findings of bad faith "follow[ing] discovery and a seven-hour evidentiary hearing at which [the state official] testified"); *Lewellen v. Raff*, 843 F.2d 1103, 1110 (8th Cir. 1988) (district court "hear[d] testimony and receiv[ed] documentary evidence over a six-day period" on bad faith and retaliatory intent); *Wilson*, 593 F.2d at 1377; *Timmerman v. Brown*, 528 F.2d 811, 816 (4th Cir. 1975).

The panel decision gave all this short shrift. Instead of closely scrutinizing the "strong circumstantial evidence" of Paxton's retaliatory motive, the panel repeatedly interpreted the allegations in a light most favorable to the state official and drew factual inferences in his favor. But courts should always "begin[] with a heavy thumb on the scale *in favor* of exercising federal jurisdiction." *Aptim Corp. v. McCall*, 888 F.3d 129, 135 (5th Cir. 2018) (emphasis added); *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983) (abstention analysis should be "heavily weighted in favor of the exercise of jurisdiction"). The panel apparently feared that "intrusive discovery of a state attorney general and his office about a case he filed in state court . . . would pose comity concerns contrary to the tenor of *Younger* itself." Op. 23. Again, however, that gets things backward—when a state prosecutor brings an action in bad faith or to retaliate, there *are no* comity concerns. *See Wilson*, 593 F.2d at 1383. At the very least, a plaintiff who has plausibly established retaliatory motive—as the district court found Yelp did here—should be afforded the opportunity for discovery to substantiate those allegations.

To be sure, not any conclusory claim of bad faith or retaliation is enough to trigger scrutiny of the state actor's subjective motivation. A

9

plaintiff must "allege *specific facts* to support an inference of bad faith," *Collins v. Kendall Cnty.*, 807 F.2d 95, 98 (7th Cir. 1986) (emphasis added), or that "retaliation was a major motivating factor and played a prominent role in the decision to prosecute." *Smith v. Hightower*, 693 F.2d 359, 367 (5th Cir. 1982). But once the plaintiff "make[s] an initial showing of retaliatory animus" or other bad faith, "the burden then shifts to [the defendant] to rebut the presumption of bad faith by offering 'legitimate, articulable, objective reasons' to justify [its] decision to initiate the[] prosecution," *Phelps*, 59 F.3d at 1066, and those assertions must be subject to testing in discovery and an evidentiary hearing.

In short, if a prosecution "would not have been brought but for" the prosecutor's "improper" motivation, *Younger* does not apply. *See Fitzgerald v. Peek*, 636 F.2d 943, 945 (5th Cir. 1981); *Lewellen*, 843 F.2d at 1110 (noting that the state "does not have any legitimate interest in pursuing such a prosecution"). Where a plaintiff specifically and plausibly alleges retaliatory motive, the district court must allow the plaintiff the opportunity to back up those allegations of improper motive with evidence. In holding otherwise, the panel decision endorsed an overly broad notion of comity at odds to *Younger*'s central purpose.

10

### III. The panel decision will undermine the exercise of First Amendment rights and create perverse incentives for state officials.

If left to stand, the panel's holding could seriously erode section 1983's protections and the exercise of First Amendment rights. In the panel's view, *Younger*'s bad-faith exception applies *only* to "extreme" cases, such as when the state action's lack of merit is "palpable and overwhelming," or when there was "serial litigation" by the state official against the plaintiff. Op. 14, 20, 22. That leaves the doors wide open for state officials to bring slightly less "extreme"—but still pretextual—state enforcement actions to target or harass individuals for exercising their constitutional rights. Despite an obviously improper motivation, federal courts would be powerless to act so long as the state official could show even a bare chance of success on the merits.

These concerns are especially acute in the First Amendment context, where even the threat of state enforcement is likely to chill and deter constitutionally protected speech. In litigation, the process can be the punishment, chilling speech regardless of the merits. *See Dombrowski*, 380 U.S. at 487, 494 ("The chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution,

11

unaffected by the prospects of its success or failure. . . . Even the prospect of ultimate failure of such prosecutions by no means dispels their chilling effect on protected expression."); *Winter v. DC Comics*, 30 Cal. 4th 881, 891 (2003) (recognizing "chilling effect upon the exercise of First Amendment rights" resulting from "unnecessarily protracted litigation").

More than fifty years ago, the Fifth Circuit warned that an overly broad application of *Younger* could undermine First Amendment protections: "[S]tate officials disposed to suppress speech could easily do so by bringing oppressive criminal [or civil] actions pursuant to valid statutes rather than by enacting invalid statutes or using other parts of the state legal machinery, and § 1983 would give no effective relief." *Sheridan v. Garrison*, 415 F.2d 699, 706 (5th Cir. 1969).

Nor are these concerns antiquated or hypothetical: In fact, this retaliatory action against Yelp is part of a broad campaign of retaliatory prosecutions that Paxton has undertaken to target speech and advocacy that he disfavors. *See, e.g.*, *Media Matters for Am. v. Paxton*, 138 F.4th 563, 580–82 (D.C. Cir. 2025) (describing "ample evidence of the harm caused by [Paxton's] retaliatory investigation" against media group and journalist for their purportedly "radical left-wing" views); *Twitter, Inc.*

*v. Paxton*, 56 F.4th 1170, 1172 (9th Cir. 2022) (detailing alleged retaliatory action by Paxton against Twitter for banning former President Trump's account). The panel decision, if upheld, would embolden other state officials to undertake similar retaliatory campaigns—whether they seek to target pro-abortion advocacy, or speech in favor of Second Amendment rights.

The panel's holding also creates perverse incentives for state officials. Federal courts have held that state officials, including Paxton himself, violated the First Amendment when they launched retaliatory *investigations* against a plaintiff based on their speech—and that federal courts have the power to halt those investigations. *See Media Matters*, 138 F.4th at 584–85 (affirming preliminary injunction barring enforcement of Paxton's civil investigative demand). But, under the panel's decision, a federal court loses the power to act when the official files an unfounded action against the plaintiff in state court. The consequences of that logic are clear: An official intent on retaliating against a person's exercise of First Amendment rights should abandon any pretense of meaningful investigation and simply get to court as soon as possible, regardless of the merits of the official's case. But that is

13

precisely the opposite of what *Younger* contemplates. *See Duty Free Shop, Inc. v. Administracion De Terrenos De Puerto Rico*, 889 F.2d 1181, 1182 (1st Cir. 1989) (*Younger* "arises out of the federal courts' hesitance to interfere with a state's *good faith* efforts to enforce its own law in its own courts" (emphasis added)).

There is an obvious solution to this problem: Federal courts should exercise federal jurisdiction when a plaintiff has established that the state prosecution was motivated by retaliation. At a minimum, federal courts must allow discovery and an evidentiary hearing on that issue when the plaintiff has established a specific and plausible basis that the plaintiff is acting in bad faith. Again, the Fifth Circuit got it right more than a half-century ago: Where "an injunction suit is based [on the fact] that the state proceeding *itself* creates a chilling effect on speech because the state's legal machinery is being used in bad faith, . . . [t]he justification for comity disappears." *Sheridan*, 415 F.2d at 707 (emphasis added).

In sum, when there are specific and identifiable allegations that a state official is acting in bad faith to chill protected speech, federal courts should decline to abstain—or at least allow discovery and an evidentiary

14

hearing to test the official's assertions. To hold otherwise threatens to leave First Amendment freedoms at the whim of state officials with political axes to grind.

## CONCLUSION

For the reasons above, *amici* urge this Court to grant rehearing or rehearing en banc.

Date: June 23, 2025

Neil K. Sawhney
Shilpi Agarwal
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
(415) 621-2493
*nsawhney@aclunc.org*

*Counsel for Amici Curiae*

15

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with Rule 29(a)(5) and Ninth Circuit Rule 29-2(c)(2), because it contains 2,993 words, excluding the items exempted by Rule 32(f). The brief's type size and typeface comply with Rule 32(a)(5) and (6).

Date: June 23, 2025

Neil K. Sawhney